ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| JAAAT Technical Services, LLC | ) ASBCA Nos. 61792, 61793, 61794 |
| | )                61795, 61796, 61797 |
| | )                61798, 61799, 61800 |
| | ) |
| Under Contract No. W912HN-10-D-0063 | ) |

APPEARANCES FOR THE APPELLANT:    Mr. Rickey B. Barnhill[1]
                                    Director of Finance
                                  Andrew T. Bodoh, Esq.[2]
                                    Thomas H. Roberts & Associates, P.C.
                                    Richmond, VA


APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                    Engineer Chief Trial Attorney
                                  Justin P. McCorcle, Esq.
                                  Aaron A. Bloemsma, Esq.
                                    Engineer Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE CATES-HARMAN

Pending before the Board is the government's motion for summary judgment, or in the alternative, a motion to dismiss for lack of jurisdiction in all but one of the nine appeals. The Board sua sponte raised questions relating to the subject matter jurisdiction of the ninth and largest appeal (ASBCA No. 61792). During the period of 2014 to 2015, appellant, JAAAT Technical Services, LLC (JAAAT, appellant) submitted nine Requests for Equitable Adjustment (REA) to the contracting officer; the form and substance of the CO's responses will be discussed below. On September 11, 2018, appellant filed a Notice of Appeal for each of the nine REAs based upon a deemed denial. The government maintains that the Board lacks subject matter jurisdiction over eight of the nine appeals because the REAs were never converted to a claim, that each failed to request a contracting officer's final decision, and for those REAs exceeding $100,000, lacked a certification as required by the Contract Disputes

---

[1] By Order dated October 3, 2018, the Board accepted Mr. Rickey B. Barnhill as appellant's representative. In support of these appeals, he has filed pleadings, briefs, and an affidavit under the name of either "Rickey" or "Rick" Barnhill. For purposes of this decision, he will be referred to as "Rickey" Barnhill.

[2] Mr. Bodoh has entered an appearance on June 30, 2020, to represent appellant in ASBCA No. 61799 only.

Act (CDA), 41 U.S.C. §§ 7101-7109. In one appeal, the government asserts that a written claim was never submitted to the contracting officer. Where the appeals have similar issues, they will be grouped together for decision.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION[3]

1. Contract No. W912HN-10-D-0063 (contract), was awarded to JAAAT on September 30, 2010, by the U.S. Army Corps of Engineers, Savannah District (USACE). This was a multiple award contract (MATOC) for the design/build or construction type task orders (R4, tab 4a at 2030). The contract recited FAR 52.233-1, DISPUTES (JUL 2002) and FAR 52.243-4, CHANGES (JUN 2007) (R4, tab 4a at 2141, 2151-52).

2. On September 17, 2012, USACE issued task order DQ01 (task order) to JAAAT for the design and construction of PN 69758 Special Operation Forces Brigade Headquarters Facility at Fort Bragg, North Carolina. The task order was awarded for the firm-fixed price of $15,649,974. The appellant was required to:

> Design/Construct a Brigade Headquarters facility for the 95th Civil Affairs Brigade to include administrative space, conference rooms, classrooms, sensitive compartmented information facility, group operations center, logistics, network operation center, headquarters company, enlarged arms room vault, secure storage, unit storage, lockers, toilets, showers, and required mechanical, electrical and communication rooms, protected distribution system (PDS), intrusion detection, surveillance, and electronic access control.

(R4, tab 4b at 2213-15, 2220)

3. The contract also required JAAAT to furnish both performance and payment bonds, each with good and "sufficient surety or sureties acceptable to the Government" (R4, tab 4a at 2121). On September 21, 2012, Safeco Insurance Company of America (Safeco) issued the Performance and Payment Bond No. 024048098, on behalf of JAAAT, as Bond Principal, and in favor of the United States of America as Bond Obligee in the amount of $15,649,741, on the task order (referred to in the September 21, 2012 document as the "SOF Brigade Headquarters Contract"). (Gov't mot., ex. G-2 at 1-2, ¶¶ 1.2 - 1.3)

---

[3] This decision is comprised of nine appeals, ASBCA Nos. 61792-61800. Each appeal will have a separate statement of facts for purposes of the government's motion.

4. The task order includes FAR 52.228-15(b)(3), PERFORMANCE AND PAYMENT BONDS--CONSTRUCTION (NOV 2006), which provides for additional bond protection and states that "[t]he Government may require additional performance and payment bond protection if the contract price is increased. The increase in protection generally will equal 100 percent of the increase in contract price." (R4, tab 4a at 2126-27)

5. FAR 52.243-4, CHANGES (JUN 2007), provides—

(a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes—

(1) In the specifications (including drawings and designs);

(2) In the method or manner of performance of the work;

(3) In the Government-furnished property or services; or

(4) Directing acceleration in the performance of the work.

. . . .

(d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing. However, except for an adjustment based on defective specifications, no adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required. In the case of defective specifications for which the Government is responsible, the equitable adjustment shall include any increased cost reasonably incurred by the Contractor in attempting to comply with the defective specifications.

(e) The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a

3

written change order . . . or (2) the furnishing of a written
notice under paragraph (b) . . .

. . . .

(R4, tab 4a at 2151-52)

6. On September 11, 2018, JAAAT filed nine appeals based on USACE denial
of eight (8) Requests for Equitable Adjustments (REAs), ASBCA Nos. 61792, 61794,
61795, 61796, 61797, 61798, 61799, 61800; and one (1) deemed denial assigned
ASBCA No. 61793, where the government had no records. The nine REAs are dated
between September 30, 2014, and April 5, 2017, and requested an increase to the task
order totaling $10,217,851[4] and a time extension of 847 days.[5] (R4, tab 3a at 3; gov't
mot. at 1; app. resp. at 1-2)

ASBCA NO. 61792 (STORMWATER)[6] SOF

7. On April 17, 2014, the contracting officer issued Modification No. 4
addressing work associated with the CS003 Stormwater requirements. The
modification provided for a decrease to the contract price in the amount of $75,973.61
and an extension of 156 calendar days, extending the contract to October 11, 2014
(R4, tab 4f at 2232).

8. By letter dated May 20, 2014, JAAAT submitted a request for equitable
adjustment (REA alleging a defective USACE Master Plan and a "defective
[RFP/]Specification" that did not identify the installation of roadways and stormwater
features, and estimating the cost impact to be at least $5,300,000 and a time impact of
at least 376 calendar days (R4, tab 7m at 2353, 2360, 2366, 2378, 2393, 2397, 2401).

9. In response to the Board's April 11, 2019 Order, to address the parties'
positions on jurisdiction in Appeal No. 61792, the government responded by

---

[4] The dollar amount of the individual requests for equitable adjustments do not total
the requested demand in the pleadings of $10,217,851. Instead, the total
calculates to $9,493,269.68. For purposes of this motion we are using the
$10,217,851 number.

[5] The number of days requested in the individual appeals do not total the demand of
847 days. Instead, the number of days requested total 664 days. For purposes
of this motion we are using the requested 847 days.

[6] The contract refers to "storm water" requirements while JAAAT refers to these
requirements as "stormwater." For purposes of clarity, we will refer to
JAAAT's equitable adjustment documents as "stormwater REA."

supplementing the Rule 4 and provided documents with additional communications between JAAAT and the contracting officer (R4, tabs 69-76).

10. By letter dated September 30, 2014, from its representative, Mr. Eddie Cummings, JAAAT submitted a revised REA to the contracting officer increasing the claimed damages to $8,596,261 and reducing the alleged days of delay to 336 (R4, tab 3a at 3-4, 71). Attached to the letter was a signed certification with the text, "Request for Equitable Adjustment" that reads:

> I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the JAAAT believes the Government is liable; and that I am duly authorized to certify the Request for Equitable Adjustment on behalf of the JAAAT.

(R4, tab 3a at 82)

11. On July 7, 2015, JAAAT questioned the status of the Stormwater REA, and stated that while they were amenable to further discussion and potential resolution, "please accept this correspondence as JAAAT's formal request for a Contracting Officer's final decision" (R4, tab 69 at 10528).

12. Having received no response, JAAAT forwarded an email to the contracting officer on August 14, 2017, invoking the claim certification from its original Stormwater REA converting the REA into a certified claim (R4, tab 76 at 10566).

ASBCA NO. 61793 (RELOCATE PROJECTOR SCREEN) SOF

13. On November 8, 2016, JAAAT sent a letter to the contracting officer requesting an "equitable adjustment" of $1,753 to relocate a previously installed

5

projector screen (compl.[7] at tab 2 at 2028).[8]  The letter does not request a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause under the contract (compl. at tab 2).  The letter's subject line is titled, "Request for Equitable Adjustment" and JAAAT stated:

> [W]e believe we should not bear the costs of this last minute relocation, and are submitting this request for equitable adjustment to recoup these costs.  To this end, please find attached a summary of these costs totaling $1,753.00.  We ask that a contract modification be created to cover this amount.

(*Id.* at 2028)  Attached to the letter was an "estimate for contract modification" providing the direct costs associated with the "REA Relocate Projector Screen" (*id.* at 2029-30).

## ASBCA NO. 61794 (WEATHER DELAYS) SOF

14. By letter dated February 24, 2017, to the contracting officer, JAAAT stated "[it] became aware that there was never a settlement for adverse weather delays. . . . [We therefore ask that 50 days to be added to our contract" (R4, tab 9a at 2584).  The letter does not request a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause under the contract.  Attached to

---

[7] Attached to appellant's complaint, and referenced throughout, are documents appellant identified as being tabs 1-12.  By Order dated November 14, 2018, the Board advised JAAAT that exhibits to a complaint are not automatically considered part of the record upon which the Board's decision will be rendered, and that in their current format, they would not be accepted to supplement the Rule 4 file.  The government objects to the use of these supplemental documents and argues since they never received the documents they could not adequately respond.  The government seeks sanctions under Board Rule 16.  Over the government's objection, the Board will accept the documents for purposes of the motion to dismiss only, and they will be referenced as "compl. at tab ___".  The Board declines to assess sanctions, under Rule 16, against JAAAT.

[8] For the tabs attached to appellant's complaint we will use the documents' pdf page numbers; appellant failed to properly paginate them as required under our Rules.

the letter was a breakdown of the requested adverse weather days (R4, tab 9a at 2585-86).

15. By letter dated March 13, 2017, the contracting officer responded to JAAAT's request, stating "that actual adverse weather delay days must prevent work . . . for 50 percent or more of the Contractor's scheduled workday.  The documentation you have provided . . . only indicates the total days you are requesting for each month . . . . [It] does not indicate the . . . activity . . . was delayed more than 50 percent during your scheduled workday . . . ." (R4, tab 9b at 2587).  The contracting officer requested that JAAAT provide any "additional documentation on the topics" that were addressed in this correspondence (R4, tab 9b at 2588).

## ASBCA NO. 61795 (COMMAND CARPET) SOF

16. On February 28, 2017, JAAAT submitted a "request for equitable adjustment" to the contracting officer for the replacement of the command suite carpet in PN 69758 Brigade Headquarters facility.  JAAAT requested $201,799 and a project extension of 84 days (R4, tab 10c at 2591, 2593).  The letter does not request a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause under the contract.  The letter's subject line is titled, "**Command Suite Carpet Replacement Request for Equitable Adjustment**" (R4, tab 10c at 2591) (emphasis in the original), and JAAAT stated it "believes it is due a fair and equitable adjustment . . . ."  (R4, tab 10c at 2593).  There is no claim $100,000.  Attached to the letter is a cost sheet dated February 28, 2017, titled "ESTIMATE FOR CONTRACT MODIFICATION" and described as being the "Command Suite Carpet Replacement REA."  (R4, tab 10c at 2614-15)

17. By letter dated June 20, 2017, the contracting officer denied JAAAT's "REA 'Command Suite Carpet Replacement Request for Equitable Adjustment'" (R4, tab 10d at 2616).

## ASBCA NO. 61796 (COMMUNICATION GROUNDING) SOF

18. On March 23, 2016, JAAAT submitted a response to RFP-0019, "Revised OSP Copper/Fiber" seeking costs in the amount of $5,339 (R4, tab 11b at 2639).  The letter attached a document titled, "ESTIMATE FOR CONTRACT MODIFICATION" which provided a breakdown of direct and indirect costs associated with RFP-0019 (R4, tab 11b at 2640-47).

19. On February 28, 2017, JAAAT requested an "equitable adjustment" for changes made to the telecommunications grounding system in the amount of $5,936 (R4, tab 11a at 2618).  The letter does not request a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause

under the contract. The letter's subject line is titled, "**Communications Grounding Request for Equitable Adjustment**" (R4, tab 11a at 2618) (emphasis in original) and JAAAT stated it "believes it should be compensated for these changes and receive an equitable adjustment. . . ." The REA also provided cost breakdowns. (*Id.* at 2619, 2626, 2636-47) (Emphasis in original)

20. By letter dated June 6, 2017, the contracting officer issued its decision denying JAAAT's "Communications Grounding Request for Equitable Adjustment" and emphasized that there was no backup information provided with the REA that could explain how the original design meets code (R4, tab 11c at 2648).

### ASBCA NO. 61797 (NEC SWITCH DELAY) SOF

21. By letter dated February 28, 2017, to the contracting officer, JAAAT requested an "equitable adjustment" for delays in rescheduling the installation of a communication switch. JAAAT sought costs in the amount of $65,605 and requested 22 days to be added to the contract completion date. (R4, tab 12a at 2651) The letter does not request a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause under the contract. The letter's subject line is titled, "**NEC Switch Delay Request for Equitable Adjustment**" (*id.*)(emphasis in original). Attached to the letter was an "REA Cost Sheet" for the "NEC Switch Delay REA" containing direct and indirect costs (*id.* at 2664-66).

22. By letter dated June 6, 2017, the contracting officer responded to the NEC Switch Delay REA and stated that the "[g]overnment review is not possible due to lack of critical information," and asked JAAAT to "[p]rovide a time impact justification as required by specification section 01 32 01.00 10 paragraph 3.7 REQUESTS FOR TIME EXTENSIONS for the requested 22 calendar day time extension" (R4, tab 12b at 2667).

### ASBCA NO. 61798 (PERIMETER WALL) SOF

23. On March 24, 2017, JAAAT submitted a "request for equitable adjustment" in the amount of $112,831 for the construction of an exterior perimeter wall, and requested an extension of 55 days to the contract completion date (R4, tab 13a at 2668). The letter does not request a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause under the contract. The letter's subject line is titled, "**SCIF Perimeter Wall Request for Equitable Adjustment**" (*id.*)(emphasis in original). The letter does not include a claim certification, as required by the CDA, 41 U.S.C. § 7103(b)(1), for claims over $100,000.

8

24. By letter dated June 6, 2017, the contracting officer found JAAAT's "SCIF Perimeter Wall Request for Equitable Adjustment" to be without merit and directed that if JAAAT had certain specific documentation in its possession, it should provide that supplemental documentation as soon as possible but not later than May 12, 2017[9] (R4, tab 13 at 2687-88).

ASBCA NO. 61799 (PUNCH LIST) SOF

25. By correspondence dated November 30, 2016, the contracting officer informed JAAAT that the government was exercising the Changes clause (FAR 52.243-4) of the contract for "CS019-Credit for Remaining Work-Building X-4647 and site" and sought an itemized proposal due no later than December 2, 2016 as required by DFARS 252.236-7000, "[y]our proposal must contain a complete itemized breakdown, in sufficient detail, to permit an analysis of all **material, labor, equipment, subcontract, overhead costs,** (including extended overhead costs) **and profit . . .**" (emphasis in original)  (R4, tab 14a at 2694).

26. By email dated December 1, 2016, Mr. Eddie Cummings, JAAAT's Director of Projects, responded with a current update of the final punch list for the itemized proposal credit, but stated JAAAT could not respond to the proposal by December 2 and requested a meeting to discuss the items (*id.* at 2699).

27. The government's Project Engineer emailed JAAAT on December 6, 2016, providing a list of 83 outstanding punch list items, for work not performed adequately, stating, in part: "missing knock box at gate"; "repair/replace –cracked [electrical] box"; "repair grade around the SE parking lot flume to allow drainage"; "replace sign and pole"; "Main Lobby-Corridor Double Doors to Hallways (2 sets)-Not smoke sealed"; "Door hardware not complete"; "Close large gaps between ceiling grid & walls"; "Left lavatory does not have any hotwater coming out"; "Protection plate around refrigerator water connection missing – Inadequate workmanship"; "Hole in door transition – Chipped tile"; "Corner guards missing"; "All Window Pan Flashing – Not sealed to window frame @ interior window sills"; "Interior Doors – Viewing windows – edges not finished on STC rated hollow metal doors with veneer"; "Corner guards missing".  (Compl. ex. A-1 at 2137-40)

28. By email dated December 8, 2016, JAAAT sent an updated punch list to the government for a conference call scheduled later that day (R4, tab 14a at 2701). JAAAT proposed a credit of $9,880 for work not completed under the contract (*id.* at 2691; R4, tab 14b at 2717).

---

[9] The date given by the contracting officer for JAAAT to respond with further documentation was earlier than the correspondence date.  We find this discrepancy to be immaterial.

9

29. On December 8, 2016, the teleconference occurred in two stages – in the initial call the government reviewed the punch list and the associated construction credits provided by JAAAT; and then in the second call, the government advised that a construction credit of $257,896 was reasonable, and if JAAAT did not concur, a unilateral contract modification would be immediately issued" (R4, tab 14a at 2691).

30. By correspondence identified as Serial Letter C-0132 dated December 9, 2016, the contracting officer issued Modification No. R00015 (CS019 Complete Punch List Building X-4647) (*id.* at 2706). The correspondence further stated: "Although circumstances surrounding this change have not resulted in a bilateral agreement, I consider the modification to be fair and reasonable and to reflect an equitable adjustment. *This modification will be effective upon the date of my signature in block 16C.*" (*Id.*) (Emphasis in original). It included an enclosed SF 30.[10] Box 16C is dated for December 12, 2016. (*id.* at 2707)

31. On December 6, 2016, an updated punch list was provided by the government project engineer to the parties. By document dated December 9, 2016, the contracting officer provided a letter enclosing Modification No. 7, including the complete punch list building X-4647, including the outstanding interior, exterior and site items. Modification No. 7 is dated December 12, 2016, reducing the contract price by $257,896 as a result of outstanding punch list items. (*Id.* at 2701-04, 2706, 2707-09) Box 13D states the type of modification and the authority for the change, "FAR 52.243-4 UNILATERAL PURUANT [sic] TO THE CHANGES CLAUSE" (*id.* at 2707). The CLOSING STATEMENT specified that:

> It is understood that pursuant to the above, the contract time is not affected, and the contract price is decreased as stated above, which reflects all credits due the Government and all debits due the Contractor. It is further understood that this Modification is being issued on a unilateral basis due to failure to agree on the costs to complete final punch list items.

(*Id.* at 2709)

Modification No. 07 does not state that it was a final decision or provide customary notice of appeal rights as provided for in Federal Acquistion Regulation (FAR) 33.211.

---

[10] Box 2 of the SF 30 identifies the document as "Amendment/Modification No. 07." Hereinafter, we will refer to this document as Modification No. 07 or Mod. No. 07.

An executed copy of Modification No. 07 was delivered to Mr. Cummings and Mr. Barnhill on December 12, 2016, via email (gov't br. dtd. June 30, 2020, ex. A).

32. By email dated December 13, 2016, to the contracting officer, Mr. Barnhill acknowledged receipt of Modification No. 07 and sent a reply email requesting a copy of "[t]he complete punch list for Bldg X-4647 identified in Section G-Contract Administration Data, Item A-Scope of work. . . . Please send the itemized and detailed cost list of items that are included in the $257,896 contract reduction." (*Id.*)

33. In response to JAAAT's request, on the same day, the government provided the final list as referenced in Modification No. 07 (R4, tab 14a at 2712).

34. The same day, Mr. Barnhill acknowledged receipt of the final list and continued to dispute the calculation of the contract reduction amount of $257,896:

> Thank you for providing the Final List of items. The attachment JAAAT received does not have the costs of the individual line items. Please provide the USACE costing for each of the 84 interior building items on interior pages 1-4; the 41 exterior building line items on exterior pages 1-2; and the 40 site line items on site pages 1-2 which per paragraph CS019 of the SF30 are included in the $257,896 contract reduction.

(*Id.* at 2711-12)

35. The government responded the same day, stating: "we are not required to provide the Government IGE. If you are in disagreement with the unilateral and the negotiations attempted on 12/8/16, there are processes outlined in your contract and the FAR for you to follow." (*Id.* at 2711)

36. On March 24, 2017, JAAAT submitted a "Request for Equitable Adjustment" seeking an adjustment to the contract reduction established by the contracting officer in unilateral Modification No. 07. JAAAT sought "an equitable adjustment in the amount of $236,286.68" and stated that the "total project construction credit [should be] $21,609.32," not $257,896 as determined in Modification No. 07 (*id.* at 2691-92). The letter does not assert any affirmative defense(s) to the government's unilateral Modification No. 07 to reduce the contract price; rather, JAAAT asserts that it disagrees with the calculation of the credit amount:

> JAAAT had agreed to provide a contract credit . . . for punchlist work which JAAAT would not complete, and attempted to negotiate a fair credit with USACE. USACE

11

did not entertain any negotiation, and issued an
unreasonable unilateral contract modification with no
justification for the contract reduction amount. As a result,
JAAAT believes it should be compensated and receive an
equitable adjustment in the amount of $236,286.68.

(*Id.* at 2691-92)

37. In correspondence dated June 6, 2017, the contracting officer found
JAAAT's "Request for Equitable Adjustment" to be without merit. The contracting
officer pointed out that it was "JAAAT's failure to promptly address the deficiency
items the Government acted under its contractual rights described in FAR 52.246-
12(g)(1) [Inspection of Construction Clause] to replace or correct the identified
deficient work and charge the costs to the Contractor. The value deducted under
unilateral modification is being utilized to contract out replacement and correction of
the listed scope." (R4, tab 14b at 2717) The contracting officer also identified the
noncompliance with "the cost estimate provided by JAAAT . . . JAAAT's original
offering of $9,880 was determined noncompliant with the RFP." (*Id.*)

38. After receiving the government's motion to dismiss for lack of subject
matter jurisdiction for ASBCA No. 61799, and, in the alternative, motion for summary
judgment, the Board began reviewing the parties' briefs. Following this review, the
Board raised the question whether Modification No. 07 was a government claim
asserted against JAAAT in the amount of $257,896. Since Modification No. 07 being
construed as a government claim had not been previously raised by the Board or
addressed by either party in its briefs, by Order dated June 10, 2020, the Board
requested that the parties brief the following questions:

> 1) Is Modification No. 07 dated December 12, 2016, which
> reduced the contract price by $257,896, a government
> claim and a final decision?
>
> 2) When did the government provide the contractor a copy
> of Modification No. 07?
>
> 3) If so, did the lack of appeal rights prejudice the
> contractor to timely appeal?
>
> 4) Did the contracting officer's June 6, 2017, letter in
> response to appellant's March 24, 2017, "Credit for
> remaining work request for equitable adjustment" vacate
> Modification No. 07?

12

5) For the dispute surrounding the punch list items, did the contractor timely appeal to this Board?

39. By letter dated June 30, 2020, a notice of appearance for Andrew T. Bodoh, Esq., was entered for JAAAT counsel for the appeal of ASBCA No. 61799. Attached to the notice of appearance was JAAAT's brief and a Declaration of Mr. Rickey Barnhill, in response to the Board's June 10 Order. Appellant's brief responded to each of the Board's questions and it generally argues that Modification No. 07 is a government claim, citing FAR 52.233-1(c), but was equivocal whether it was a final decision, stating, "[t]he facts of this case may support either 'yes' or 'no'" (app. br. dtd. June 30, 2020 at 1).

40. On June 30, 2020, the government filed its brief in response to the Board's Order dated June 20, 2020. The government generally argues that the contracting officer's actions were contract administration actions that fall under the Changes clause (FAR 52.243-4), which provides the government the unilateral right to order changes in work within the scope of the contract, and provides for an equitable adjustment if the changes increases or decrease the cost or time of performance (gov't br. dtd. June 30, 2020 at 4-5). The government argues that "FAR 52.243-4(e) further requires the contractor to assert its right to an adjustment in contract price within 30 days of receipt of a written change order," which JAAAT failed to do. (Id. at 5) In addition, the government argues that JAAAT filed a request for equitable adjustment for the punch list items on March 24, 2017, which was never presented as a claim or certified as required for disputes in excess of $100,000 (id. at 6).

41. The parties submitted simultaneous response briefs on July 10, 2020.

ASBCA NO. 61800 (ELEVATOR) SOF

42. JAAAT submitted two documents dated April 5, 2017, and April 7, 2017, to the contracting officer requesting an "equitable adjustment" for additional construction costs in the amount of $272,798 associated with the government's elevator inspection process, to include an additional 117 days to the contract completion date. The April 5 document requested an "Equitable Adjustment (REA)" in the amount of $272,798 (R4, tab 15a at 2718). The April 7 document provides for an increase of the "Request for Equitable Adjustment (REA) requesting $348,898." While this document is not found in the government's Rule 4 file, it was attached to JAAAT's pleading as "Tab 9: 61800 Elevator REA, submitted 5 Apr 2017." (Compl. at tab 9) Neither letter requests a final decision or indicate that JAAAT views its request as a claim under 41 U.S.C. § 7103 or the Disputes clause under the contract. The subject line contained in each letter are titled, "**Elevator Inspection Delay Request for Equitable Adjustment**." JAAAT requested that 117 days should be added to the contract, and "an equitable adjustment" in the amount $272,798. (R4, tab 15a at 2718, 2722; compl.

13

at tab 9)(Emphasis in original)  The letters do not include a claim certification, as required by the CDA, 41 U.S.C. § 7103(b)(1), for claims over $100,000.  Attached to the letters are supporting documents, titled "Elevator Delay REA" (R4, tab 15a at 2723-78; compl. at tab 9).

43. On June 6, 2017, the contracting officer informed JAAAT that it was unable to review the elevator inspection delay request for equitable adjustment due to a lack of critical information and requested that the "missing documentation be provided as soon as possible . . . ." (R4, tab 15b at 2779).

## SETTLEMENT AGREEMENTS SOF

44. During performance of the contract, JAAAT was experiencing financial difficulties on several of its government contracts bonded by Liberty Mutual Insurance Company and Safeco Insurance Company of America (collectively "Safeco") (gov't mot., ex. G-2 at 1-4, G-4).

45. In 2014, Safeco began receiving numerous payment bond claims on JAAAT's Bonded Projects.  Pursuant to its obligations under the bonds, Safeco made payments and incurred expenses on behalf of JAAAT, in the amount of $7,459,124.41. (Gov't mot., ex. G-2 at 2, ¶¶ 1.5, 1.6)

46. Litigation was initiated by Safeco for satisfaction of several surety bonds issued in connection with JAAAT's government contracts.  Suit was filed against JAAAT in the Eastern District of Virginia (Case No. 3:15-cv-00019-JAG) (id. at ¶ 1.6).

47. Litigation was also initiated against Tetra Tech, Inc. ("Tetra Tech") by Safeco for satisfaction of several surety bonds issued in connection with JAAAT's government contracts.  Safeco filed suit on May 6, 2015, in the Central District of California (docketed as 2:15-cv-03386-SJO-JEMx).  In addition to being the defendant in that action, Tetra Tech was also counterclaimant and third party plaintiff against JAAAT (which was a third party defendant to that litigation).  (Gov't mot., ex. G-2 at 2, ¶ 1.6; G-4)

48. The relationships of the parties in the litigation and related disputes are understood as follows:  Safeco (surety) issued payment and performance bonds on behalf of JAAAT, as bond principal.  USACE, the bond obligee, issued five task order/delivery order contracts under various MATOCs for construction work at federal facilities in Georgia and North Carolina (bonded projects) to JAAAT.  Tetra Tech Tesoro, Inc. (Tesoro), was a subcontractor on each of the bonded projects.  (Gov't mot., ex. G-2 at 1-2)  JAAAT and Tetra Tech EC, Inc. (TTEC) had entered into one or more teaming agreements with respect to the contacts issued.  Tesoro and TTEC are

14

subsidiaries of Tetra Tech.[11]  Mr. Cummings and Mr. Barnhill are representatives of JAAAT.  (Gov't mot., ex. G-2; app. resp. at 3)

49. A number of related and unrelated disputes arose during the pendency of the litigation, including disputes under the task order [12] (gov't mot., ex. G-2 at 2-4, ¶¶ 1.5, 1.6, 1.7).

50. The parties involved in the litigation, and the USACE, began negotiations in an attempt to resolve all matters.  With the assistance of a mediator, the parties entered into a memorandum of settlement on August 30, 2017, "in which they agreed to execute a formal agreement of settlement and release containing the material terms of the Memorandum of Settlement . . ." (gov't mot., ex. G-2 at 4, ¶ 1.10).  After months of discussions, an omnibus agreement was reached among the parties in the litigation.  That omnibus agreement ("JAAAT/Safeco/Tetra Tech Settlement") entered into on or about October 30, 2017, included an agreement in principle between JAAAT and USACE ("Brigade Project Settlement") to settle all disputes under the task order.[13]  The Brigade Project Settlement provided for compensation to Safeco consistent with the terms of the JAAAT/Safeco/Tetra Tech Settlement and partially funded from the proceeds of the Brigade Project Settlement.  The signatories to the JAAAT/Safeco/Tetra Tech Settlement, included JAAAT, Safeco Insurance Company of America, Liberty Mutual Insurance Company, Tetra Tech, Tesoro, TTEC, Rickey Burton Barnhill, and Clyde Edward Cummings.  (Gov't mot., ex. G-2 at 1, 10-12)

51. The JAAAT/Safeco/Tetra Tech Settlement incorporates the Brigade Project Settlement reached in principle between appellant and the government.  The Brigade Project Settlement was integral to the JAAAT/Safeco/Tetra Tech Settlement by providing funds to support the overall settlement structure of the larger litigation.  The terms of the Brigade Project Settlement are outlined with specificity in the JAAAT/Safeco/Tetra Tech Settlement and includes the government's agreement to pay $3.2 million to resolve the disputes under the SOF Brigade Headquarters Contract:

> 1.9  Based on a meeting between Safeco, JAAAT
> and Government, including respective counsel, and based

---

[11] Consistent with FRE 201(b)(2), (c)(1) and (d), we take judicial notice of public information identifying the subsidiaries of Tetra Tech as set forth in the SEC Annual Report.  Tetra Tech, Inc., (95-4148514) Form 10-K, Annual Report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, dated October 1, 2017, Exhibit 21, Subsidiaries of the Company.

[12] The settlement agreement refers to this task order as the "SOF Brigade Headquarters Contract" (gov't mot., ex. G-2 at 2, ¶ 1.3.e).

[13] The task order was referred to in the JAAAT/Safeco/Tetra Tech Settlement as the "SOF Brigade Headquarters Contract".

on representations made by Government during that meeting, Safeco and JAAAT have represented, but do not warrant and the Parties assume the risk of all such representations, negotiation of a pending settlement involving Requests for Equitable Adjustment submitted to the Government respecting the SOF Brigade Headquarters Contract which resolves all contract claims, confirms project completion and voids the Bond for the specific contract, and which includes the Government's agreement to pay $3.2 million in resolution of the Request for Equitable Adjustment, from which Safeco is to receive $2.8 million with JAAAT to receive the balance of $400,000.

(Gov't mot., ex. G-2 at 4, ¶ 1.9)

52. The JAAAT/Safeco/Tetra Tech Settlement provided for payment to Safeco from both Tetra Tech and JAAAT but JAAAT's payment to Safeco was to be funded through the Brigade Project Settlement. The payments were to occur in 2017. Tetra Tech was required to make payment to Safeco in the amount of $3,850,000 (gov't mot., ex. G-2 at 5, section 2.4). In addition to making its own payment, Tetra Tech guaranteed JAAAT's payment to Safeco in the amount of $2,800,000 if "Safeco does not receive the $2,800,000 on or before December 31, 2017, from the Government. (*Id.* at 5, ¶¶ 2.1-2.2) Paragraph 2 is recited here, in its entirety, as these terms are germane to the parties' positions:

> 2. **Terms of Settlement**. The Recitals above are true and correct and are made part of this Agreement.
>
> 2.1 Safeco shall receive the sum of Two Million Eight Hundred Thousand Dollars ($2,800,000) from the settlement proceeds of JAAAT's Request for Equitable Adjustment on SOF Brigade Headquarters, Ft. Bragg, NC, Contract No. W912HN-10-D-0063/DQ01. JAAAT shall receive any remaining settlement proceeds. The Parties shall submit all necessary documents to and cooperate with the Government so that the Government can issue the $2,800,000 payment directly to Safeco. In the event that the Government's payment to Safeco exceeds $2,800,000, Safeco shall pay the amount above $2,800,000 to JAAAT within ten (10) business days from its receipt of the payment from the Government and notify the relevant Government offices identified by JAAAT that all future

16

REA payments should be made directly to JAAAT and not to Safeco. If the payment is less than $2.8 million then Safeco shall receive the amount, and Tetra Tech shall make up the difference so that Safeco receives $2.8 million per the guarantee in 2.2, below. Tetra Tech shall receive a corresponding return of any payment advance it has made on the guarantee described in 2.2, below. Since August 30, 2017, JAAAT has continued to press the Government for finalization of the Brigade REA settlement and will continue to maintain contact with the Government to try to facilitate, and to cooperate and not interfere or prevent the consummation of, the SOF Brigade settlement and the payments as contemplated by this Agreement. Safeco will cooperate and will not interfere with or prevent the consummation of the SOF Brigade settlement. Any specific request to Safeco to cooperate in connection with the SOF Brigade settlement and the distribution of those funds as contemplated by this Agreement shall be in writing and presented both to Safeco and its counsel in the Central District Indemnity Action. The Parties acknowledge Safeco's expectation that its costs related to such cooperation efforts would be nominal, and in reliance, Safeco will so cooperate.

2.2 Tetra Tech guarantees payment of the $2,800,000 set forth in Section 2.1 by a Stipulation of Judgment, which is attached hereto as **Exhibit B,** in the amount of Three Million Six Hundred Forty Thousand Dollars ($3,640,000) that may be filed in the Central District of California Indemnity Action on or after January 1, 2018 in the event that Safeco does not receive the $2,800,000 on or before December 30, 2017 from the Government or from Tetra Tech. Once approved by the Central District, Safeco may proceed with execution on the stipulated judgment for itself and for no others, including any other party to this Agreement. Tetra Tech's guarantee is to ensure that Safeco receives the $2,800,000 on or before December 31, 2017, should the Government not make payment before then. In the event that Tetra Tech makes the $2,800,000 payment to Safeco and the Government thereafter makes another payment of $2,800,000 or in another amount to Safeco, Safeco shall return to Tetra Tech the amount it received from the Government up to $2,800,000 and any

17

amount over $2,800,000 shall be paid to JAAAT in accordance with Section 2.1. The Stipulation of Judgment shall be cancelled and returned to Tetra Tech upon the earlier of payment of the $2,800,000 by the Government or Tetra Tech to Safeco, at which time Safeco shall file a dismissal with prejudice of the Central District Indemnity Action if not already filed.

2.3 JAAAT hereby grants to Tetra Tech power of attorney authorizing Tetra Tech to finalize all aspects of the settlement with the Government as set forth in Section 2.1. The power of attorney is attached hereto as **Exhibit C.** Safeco consents to the power of attorney attached as **Exhibit C.** Use of the power of attorney is conditioned upon Tetra Tech making the $2,800,000 payment as permitted in Section 2.2.

2.4 As set forth in the Memorandum of Settlement identified in Section 1.10, and separate and apart from the guaranty obligation set forth in Section 2.2, Tetra Tech has made payment to Safeco of the sum of Three Million Eight Hundred Fifty Thousand Dollars ($3,850,000).

2.5 Within 30 days of the complete execution of this Agreement, the Parties shall file dismissals with prejudice as to the Settled Litigation, with the exception of the Central District of California Indemnity Action and Eastern District of Virginia Indemnity Action. Safeco will dismiss the Central District of California Indemnity Action within 30 days of its receipt of the payments totaling $6,650,000, as set forth in Section 2.1, 2.2 and 2.4. Safeco's judgment in the Eastern District of Virginia Action will be marked as satisfied within ten (10) days once Safeco receives from the Government the $2,800,000 payment discussed in Sections 2.1 and/or 2.2.

2.6 JAAAT shall be responsible and assume all further risks and costs for close out of the Bonded Projects and to the extent JAAAT opts to prosecute at its own cost and expense any non-Brigade or other requests for equitable adjustments that it previously submitted to the Government on the Bonded Projects but which have not yet been resolved at the time of the execution of this Agreement,

18

JAAAT may do so at its own risk and cost and shall be entitled to collect all proceeds from same (subject to Safeco's and/or Tetra Tech's entitlements regarding the Brigade REA discussed in Sections 2.1 through 2.3, above). JAAAT and its principals and affiliated companies, however, agree that they will not submit any new claims or requests for equitable adjustment related to the Bonded Projects that would create any claim against the other Parties, and, specifically, that any new claims or requests for equitable adjustment shall not create any obligation on the part of Safeco under the GAI or any related obligation on the part of Tetra Tech.

2.7 The Parties shall each bear their own attorneys' fees and costs incurred in connection with the Settled Litigation, except as to any future attorneys' fees and costs incurred in enforcing this Agreement.

(*Id.* at 4-6) (Emphasis in original)

53. "Settled Litigation" refers to all litigation mentioned in the JAAAT/Safeco/Tetra Tech Settlement and "any other payment bond or Project Contracts litigation previously or currently filed" (gov't mot., ex. G-2. at 4, ¶ 1.8). The parties, including JAAAT, also represented that they were unaware of any other claims (*id.*).

i. Power of Attorney

54. In exchange for the guarantee made by Tetra Tech to Safeco, JAAAT granted Tetra Tech a Power of Attorney (POA) "to finalize all aspects of the settlement with the Government as set forth in Section 2.1" of the JAAAT/Safeco/Tetra Tech Settlement (gov't mot., ex. G-2 at 5, ¶ 2.3; ex. G-3 (POA)). The POA reaffirmed Tetra Tech's rights "to exercise any or all of the rights and power of attorney if Tetra Tech so makes payment to Safeco. . . .":

R3. JAAAT has agreed, and herein reaffirms, Tetra Tech's right and entitlement to exercise any or all of the rights and powers of this power of attorney if Tetra Tech so makes payment to Safeco as necessary to meet the Guaranty obligation aforesaid ["Tetra Tech Payment Condition"].

(Gov't mot., ex. G-3 at 1, ¶ R3)

55. The POA was executed by JAAAT on November 15, 2017 (gov't mot., ex. G- 3).

56. On December 11, 2017, Safeco provided a Consent of Surety which provided as follows:

> Safeco Insurance Company of America, being the surety respecting the payment and performance bonds posted for the SOF Brigade Project, Contract No. W912HN-10-D-0063 DQ01; designated as Bond No. 02408098, consents to the foregoing Special Power of Attorney.

(*Id.* at 3)

57. The POA was not revocable by JAAAT if the government failed to make payment to Safeco on or before December 31, 2017, triggering the guaranty obligation by Tetra Tech:

> 3. An affidavit executed by Tetra Tech and Safeco, setting forth that Tetra Tech has made payment to Safeco as necessary to satisfy the Guaranty, shall be conclusive proof that the condition for its authority to exercise rights pursuant to this power of attorney. This power of attorney is not revocable by JAAAT, but shall become null and void, only, if payment is made by the Government to Safeco on or before December 31, 2017, such that Tetra Tech has no guaranty obligation to Safeco; otherwise, this power of attorney shall remain valid and binding.

(*Id.* at 2, ¶ 3)

58. Consistent with the POA, Tetra Tech guaranteed a payment of $2,800,000 to Safeco in the event the government did not finalize the settlement and make payment prior to December 31, 2017:

> R2. The Brigade Project Settlement will be divided between Safeco and JAAAT by agreement between them, with Safeco receiving $2,800,000 and with JAAAT receiving the remainder. However, if that $2,800,000 is not received by Safeco on or before December 31, 2017, then, pursuant to the Settlement and Release Agreement of even date herewith entered into by and among the parties, Tetra Tech has agreed to guaranty payment of that amount

20

to Safeco should the Government not make payment before then ["Guaranty"], and in such event Safeco and JAAAT have agreed that any payment by the Government shall first reimburse Tetra Tech for the amount paid to Safeco pursuant to the Guaranty up to the $2,800,000 Guaranty amount.

(*Id.* at 1, ¶ R2)

59. The POA recognized that the Brigade Project Settlement had not yet been finalized with, or the settlement amount paid by, the Government:

R1.  JAAAT and the Brigade Project's surety, Safeco Insurance Company of America ["Safeco"], **have agreed, in principal, to settlement with the Government the Brigade Project adjustment claims submitted previously by JAAAT** to the Government for the total amount of $3,200,000 ["Brigade Project Settlement"]; however, the Brigade Project Settlement documentation has not yet been finalized with, or the settlement amount paid by, the Government.

(*Id.* at 1, ¶ R1) (Emphasis added)

In fact, the JAAAT/Safeco/Tetra Tech Settlement and the POA recognized that Brigade Project Settlement would be delayed and stated in part:

Also, based on representations from the Government, Safeco and JAAAT further represented . . . that finalization of the agreement and payment of the monies by the Government for the SOF Brigade Headquarters Contract **has been delayed pending resolution of a recent Government audit**.

(Gov't mot., ex. G-2 at 4, ¶ 1.9) (Emphasis added)

60. The POA provided for Tetra Tech "to act for and/or on JAAAT's behalf as true and lawful agent and attorney for and in JAAAT's name, place," and to "finalize[] and/or otherwise secur[e] payment" for JAAAT's claims against the government under the Brigade Project:

1.  Tetra Tech is entitled, but not required, to act for and/or on JAAAT's behalf as true and lawful agent and attorney

21

for and in JAAAT's name, place, and stead, either in writing, electronically, or by other authorized means, as needed to make, endorse, sign, and deliver any and all documents or things necessary for finalizing and/or otherwise securing payment respecting JAAAT's settlement of contract adjustments and/or claims respecting that certain federal construction project let to JAAAT by the. . . [government] and identified by the Government as Contract No. W912HN-10-D-0063- DQ01, and relating to the project commonly referred to as the "SOF Brigade Headquarters Facility". . . .

(Gov't mot., ex. G-3 at 1-2, ¶ 1)

61. The POA also recognized that Tetra Tech would be allowed to retain proceeds of the Brigade Project Settlement equal to the amount of payment it made to Safeco with "any balance to be released to JAAAT. . . .":

2. Tetra Tech is further authorized to retain so much of the Brigade Project Settlement monies paid to it pursuant to this power of attorney as necessary to reimburse Tetra Tech for amounts paid by it to Safeco to meet the Guaranty obligation; with any balance to be released by Tetra Tech to JAAAT . . . .

(*Id.* at 2, ¶ 2)

62. The POA was effective only if the Government failed to make payment to Safeco on or before December 31, 2017, triggering the Tetra Tech guaranty to make a $2,800,000 payment to Safeco (gov't mot., ex. G-2 at 5, ¶¶ 2.2-2.3; ex. G-3 at 2, ¶ 3).

63. The Brigade Project Settlement was not consummated in December 2017, and the Government did not make payment to Safeco. Tetra Tech made the Brigade Project Settlement's payment of $2,800,000 in accordance with the terms of the JAAAT/Safeco/Tetra Tech Settlement and the POA, thus, triggering the rights under the non-revocable POA (gov't mot., ex. G-2 at 4-5, ¶¶ 1.10, 2.2, 2.3; ex. G-3 at 1-2, ¶¶ R2, R3, 2, 3; ex. G-4).

64. Appellant admits that "the term claim in the POA and elsewhere clearly refers to claims that might have been made, and/or REAs converted to claims . . . ." (app. resp. at 5).

65. In accordance with the JAAAT/Safeco/Tetra Tech Settlement, JAAAT was responsible for, and assumed all risks and costs necessary to close out the Bonded Projects. The agreement provided:

> [T]o the extent JAAAT opts to prosecute at its own cost[s] and expense **any non-Brigade** or other requests for equitable adjustments that it previously submitted to the Government on the Bonded Projects but which have not yet been resolved at the time of the execution of this Agreement, JAAAT may do so at its own risk and cost and shall be entitled to collect all proceeds from same (subject to Safeco's and/or Tetra Tech's entitlements regarding the Brigade REA discussed in Sections 2.1 through 2.3, above).

(Gov't mot., ex. G-2 at 6, ¶ 2.6)(Emphasis added)

66. The JAAAT/Safeco/Tetra Tech Settlement contains a "Release of Claims" clause, which states, in part, and "Waiver of Statutory Rights" clause, which states:

> 3. **Release of Claims**. Except for the obligations set forth in, created by, arising out of or reserved by this Agreement, the Parties, for themselves, and for all of their heirs, executors, administrators, successors and assigns, do hereby fully and forever release, discharge, and dismiss any and all present and future claims, demands, causes of action, rights, damages, costs, expenses and compensations whatsoever, in law or in equity, in the nature of an administrative proceeding or otherwise (known, unknown, contingent, accrued, inchoate or otherwise), that they have, have had or may have, now or in the future, against one another, and all companies, partnerships, individuals, associated or affiliated or otherwise connected with them, and of their agents, attorneys, servants, successors, heirs, executors, associations or partnerships, **arising out of or relating in any way to the Bonds, the Bonded Projects, the Teaming Agreements, the Subcontracts, and the Settled Litigation.**
>
> . . . .
>
> 4. **Waiver of Statutory Rights**. Except for the obligations set forth in, created by, arising out of or

23

reserved by the Agreement, including those reservations as stated in Sections 3.1 and 3.2, the Parties hereby acknowledge that they are familiar with California Civil Code § 1542, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Except as provided for under the terms of this Agreement, the Parties waive and relinquish any and all rights and benefits which they may have under, or which may be conferred upon them by, the provisions of § 1542 of the California Civil Code and/or by any similar law of any state or territory of the United States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the subject matter of this Agreement. In connection with such waiver and relinquishment, the Parties acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which each of them now knows or believes to exist with respect to the subject matter of, or any part to, this Agreement, but that it is the intention of the Parties to hereby fully, finally and forever waive said claims, whether known or unknown, suspected or unsuspected, which concern, arise out of**, or are in any way connected with the Bonds, the Bonded Projects, the Teaming Agreements, the Subcontracts, and the Settled Litigation.**

(*Id.* at 6-7, ¶¶ 3-4)(Emphasis added)

a. Implementation of Brigade Project Settlement

67. The Brigade Project Settlement continued to be delayed after December 31, 2017, because JAAAT was experiencing issues to a related project. The government ultimately agreed to unencumber the related project from the Brigade Project Settlement to allow the settlement to move forward. In addition, during the audit, the government discovered irregularities in payment estimates resulting in an adjustment to the settlement amount as anticipated by the settlement agreement (*id.*; gov't mot.

24

at 5-7, ¶¶ 7, 11, 13; gov't mot., ex. G-1 at 13; ex. G-2 ¶¶ 1.9, 2.1, 2.2 at 4-5; app. resp. at 4; gov't reply at 8).

68. Consistent with Section 1.9 of the JAAAT/Safeco/Tetra Tech Settlement, and based upon the government's discovery of irregularities in payment estimates for several JAAAT projects, the government reduced the settlement amount from $3.2 million to $3.0 million, and later revised the settlement to $3.1 million. (Gov't mot. at 5, ¶ 7; ex. G-1 at 1, 13; G-2 at 4)

69. In May 2018, Tetra Tech sought to exercise its rights under the POA and provided the government with a settlement agreement. JAAAT objected and Tetra Tech filed an *ex parte* application for emergency relief with the United States District Court, Central District of California, under Case No. 2:15-CV-03386-SJO-JEMx to effectuate the Brigade Project Settlement and give effect to the POA. Tetra Tech requested that the Court enter its Order on or before September 5, 2018, at 2 p.m. Pacific time which is the date that the government extended its offer to settle. (Gov't mot. 5-6, ¶ 8; ex. G-1 at 12-14; ex. G-4, G-6)

70. While waiting for a decision from the Court on Tetra Tech's emergency request, JAAAT's attorney, Wyatt B. Durrette, Jr., in an email dated July 17, 2018, to the government's attorney, Justin P. McCorcle, confirmed JAAAT's agreement to settle "the Brigade REAs for $3.1 million instead of the $3.2 million that had been agreed to at the meeting on August 10, 2017" (gov't mot., ex. G-1 at 1). Mr. Durrette also included Mr. Terry Bates, Tetra Tech's counsel on the email, "so that he receives verification that this is acceptable to USACE, so he will know he needs to do nothing further to receive the sums to which his client is entitled to from this resolution" (*id*.).

71. By email dated August 30, 2018, to Mr. McCorcle, Mr. Durrette raised the issue of three additional claims that JAAAT believed it was entitled to under the contract, rescinded its July 17 acceptance of 3.1 million, and proposed the amount of 3.75 million:

> Justin,
>
> In order to try to bring this to closure quickly and because my schedule is so tight today, I thought it best to send JAAAT's position in an email to see if we can resolve matters:
>
> Based on the modification and Rick's conversation with Sheila Figgins, JAAAT believes it is entitled to the following from the contract:

1. $75,973.51—This is the amount deducted in the unilateral Stormwater modification that was submitted in 2014 by USACE. The deduction was included in the settlement agreement amount of $3.2M.

2. $257,896—This is a JAAAT claim for punch list items that should have been added to the contract but JAAAT gave it up in the 3.2M settlement and now it has been deducted again in the modification.

3. $757,200.92—This deduct is based on Sheila's reporting to Rick that this is the number of days Dennis advised should be deducted for LDs calculated at $1423.31 per day. JAAAT gave up the compensable $ for project day additions in the REA settlement, but it did not agree to give up the additional project days themselves.

Adding these three together equals $1,091,070.43, which JAAAT believes it is entitled to. In order to resolve this and move on, JAAAT will again compromise at $650,000 for a total payment from USACE on Brigade of $3,750,000.

(Gov't mot., ex. G-1 at 5-7)

72. The Government responded the next day by email dated August 31, 2018, to JAAAT's rescinding of its agreement of the $3.1 million settlement amount. Mr. McCorcle rejected the counter offer for $3.75 million and agreed to hold open the settlement offer of $3.1 million until September 5, 2018 at 5 p.m.:

> To be clear, as stated in the attached email, on July 17, 2018, you accepted, on behalf of JAAAT, the Government's offer of final settlement of the Brigade Headquarters contract in the amount of $3.1 million.
>
> . . . .
>
> In reliance on this email, the Wilmington District obtained $3.1M from USSOCOM, at no small difficulty. Some of these funds are cancelling funds, and if not expended by September 30 of this year, simply no longer exist. The District presented JAAAT with a modification, release of claims, and final payment document that would

26

add sufficient days to the contract completion date to allow for us to do exactly what you asked: pay JAAAT, through its surety, the sum of $3.1M.

Your email below, received yesterday, indicates that JAAAT has withdrawn its July 17 acceptance of the Government's offer, and instead counteroffered for the sum of $3.75M. The basis of your counteroffer appears to be additional claims that we did not understand to be separate from your offer to settle "the Brigade REA's" [sic], and the full release of all liquidated damages from the job that JAAAT (almost) completed over 900 days late, discounted to reach the sum of $3.75M. We do not understand this withdrawal and counteroffer to be in keeping with the spirit or substance of our negotiations with you, and I question whether it reflects accurately the value of the claim and settlement that you have disclosed to your surety, its creditors, and applicable Federal courts. Regardless, your counteroffer is rejected.

As I noted above, cancelling funds must be returned to the Secretary of Defense, and from thence to the US treasury, if not expended by September 30. In order to allow the Department of Defense to utilize these funds before they cease to exist, it is our duty to return them if there is any danger that they will not be expended by September 30. That danger exists now. As a result, the Wilmington District will extend its offer to settle the claim for $3.1M, as documented in the modification, release, and final payment application in JAAAT's hands, ONLY until 5PM EDT on Wednesday, September 5, 2018. If we have not received the executed modification by that time, our offer is withdrawn and we will immediately return all funds to USSOCOM. If those funds are returned, I would not expect us to be able to request funds from SOCOM again without a court order.

I trust that you will immediately disclose this communication to your surety and appropriate creditors.

(*Id.* at 4-5)

27

73. Later the same day, Mr. Durrette emailed Mr. McCorcle, and stated that JAAAT would accept the $3.1 million to settle $10 million of Brigade REAs, releasing the government of further responsibility:

> On your suggestion I forwarded this to the surety and to Tetra Tech via their counsel. JAAAT believes that it only settled the REAs for $3.2, now $3.1 million, and is prepared to proceed with that. USACE believes that the final close out of the contract was included in the settlement. Common to both positions is that over $10 million of REAs were settled. It seems it would be in both parties' interest therefore to consummate that. For the $3.1 payment JAAAT is prepared to accept it as full payment for over $10 million of REAs and **release the government of any further responsibility in that regard.**

(*Id.* at 3) (Emphasis added)

74. On September 4, 2018, the Central District of California issued an Order granting Tetra Tech's right to consummate the JAAAT/USACE Brigade Settlement in accordance with the rights provided in the POA. The court provided a single page Order that recites the clear language as set forth in clause 1 of the POA. (Gov't mot., ex. G-3, ex. G-6)

75. In an email dated September 4, 2018, Mr. Bates notified the government of the entry of the Order confirming Tetra Tech's right to act in accordance with the POA and conclude the Brigade Settlement. Mr. Bates requested a copy of the modification for Tetra Tech to sign on behalf of JAAAT to settle the dispute. (Gov't mot., ex. G-1 at 9)

76. By email dated September 5, 2018, at 4:35 p.m., Mr. Durrette, on behalf of JAAAT, stated that its lack of response cannot be construed as an acceptance or agreement of Tetra Tech's position:

> JAAAT and Tetra Tech have stated their positions. At some point litigation via email must stop. That time is now. JAAAT's decision not to further respond cannot be interpreted as agreement with any facts or legal positions taken by Tetra Tech and set forth below. JAAAT chooses to advance its position in other forums.

(*Id.* at 12)

28

b.  Modification DQ0108 (Modification No. 08) and Payment

77.  The government in reliance on the POA, the signed JAAAT/Safeco/Tetra Tech Settlement, and the Central District of California Court's Order, issued Modification DQ0108 (Modification No. 08) which provides an additional 255 calendar days to the contract and $3,100,000 as a full settlement.  Consistent with the POA, Modification No. 08 was bilaterally signed by Tetra Tech's CEO on September 5, 2018, and the contracting officer signed September 6, 2018, having an effective date of August 23, 2018 (gov. mot. at 7-8, ¶¶ 15, 16, 17; ex. G-1 at 9-11, 16-19; ex. G-7).  Modification No. 08, states, in part:

> Provide for the full settlement of the Storm Water Management Claim, dated 1 October 2014, submitted by the contractor on behalf of it and its subcontractors.  This modification adds an additional 255 Calendar Days to the contract with a revised completion date of 23 June 2015.
>
> Provides for the full settlement of Modification 04 issued unilaterally on 17 April 2014.
>
> Provides for the full settlement of Modification 07 issued on 12 December 2017.
>
> . . .
>
> The total cost of this contract was increased by $3,100,000.000  . . .

(Gov't mot. at 7; ex. G-7 at 1-3)

78. Modification No. 08 provides a "Release" clause to release the government from all liability and equitable adjustments under the contract.  The release clause states, in its entirety:

> RELEASE:  In consideration of the modification agreed to herein as complete, equitable adjustments for all existing or potential claims or appeals of the contractor and its subcontractors and suppliers arising under this contract, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances which gave rise to the times outlined above.

29

The Contractor hereby agrees to release, waive and forever abandon all claims arising under the Equal Access to Justice Act to attorney fees and other expenses arising from the above stated contract claims under the contract.

(Gov't mot., ex. G-7 at 12)

79. Safeco signed a consent of surety for Modification No. 08 (gov't mot. at 8, ex. G-1 at 10; R4, tab 43).

80. As provided in the JAAAT/Safeco/Tetra Tech Settlement and the POA, the government issued final payment on or about September 7, 2018, a check in the amount of $3.1 million to Safeco (gov't mot. at 8, ex. G-1 at 19, ex. G-5 at 1, ex. G-8, ex. G-9).  The check was cashed on September 12, 2018 (gov't mot., ex. G-9 at 2).

*Statement of Undisputed Material Facts (SUMF) 1 through 19*

81. SUMF 1:  "JAAAT and Respondent initially agreed to settle the Brigade REAs for $3.2 million" (gov't mot. at 3; SOF ¶¶ 51, 68, 71, 73; gov't mot., ex. G-1 at 1, 13).  Appellant responds that the parties negotiated a settlement for the eight REAs in the amount of $3.2 million that was contingent on JAAAT's acceptance of the government's bilateral contract modification:

> After thirty- five (35) months of sporadic government unresponsiveness and intermittent requests for additional Stormwater REA detailed cost supporting documents, the government's counsel and JAAAT's surety counsel scheduled a negotiation settlement meeting between JAAAT and its'[sic] counsel, the government CO and USACE counsel, and Safeco Insurance Company of America (JAAAT's Surety) and its' [sic] counsel for 10 August 2017. The other eight (8) REAs issued in 2016 and 2017 which USACE had summarily rejected were to be included in the negotiations.  The meeting resulted in a Government and Surety verbally proposed monetary settlement of all contract W912HN-10-D-0063, Task Order DQ01 REAs for $3.2 million contingent upon the imminent government issuance of a bilateral accepted contract modification to JAAAT for the proposed amount.

(App. resp. at 3)

JAAAT does not challenge the fact that the parties reached a settlement in the amount of $3.2 million, contending that the agreement was contingent upon its acceptance of a bilateral contract modification. JAAAT's position is contrary to the settlement terms and the POA. (SOF ¶¶ 51, 52, 54, 57-60, 62, 66)

82. SUMF 2: "On 1 November 2017, JAAAT signed a Settlement and Release Agreement . . . with Tetra Tech . . . Safeco . . . and Liberty . . . to settle ongoing litigation including the litigation related to the SOF Brigade Headquarters Contract" (gov't mot. at 3). Tetra Tech executed Modification No. 08 in accordance with Sections 1.9 and 2.1 of the JAAAT/Safeco/Tetra Tech Settlement (SOF ¶¶ 51-52, 59; gov't mot., ex. G-2 at 4-5; G-7).

83. SUMF 3: "Tetra Tech signed the Settlement and Release Agreement on 31 October 2017 including a release of claims," reciting the release of claims clause in the JAAAT/Safeco/Tetra Tech Settlement (gov't mot. at 4; SOF ¶ 66). Tetra Tech executed Modification No. 08 providing a release of claims in accordance with sections 1.9, 2.1, 2.2, 2.3, 3 and 4 of the JAAAT/Safeco/Tetra Tech Settlement, and section 1 of the POA (SOF ¶¶ 51-52, 54, 59-60, 66; gov't mot., ex. G-2, G-3)

84. SUMF 4: "The Settlement and Release Agreement also included a waiver of statutory rights clause," reciting the statutory rights clause in the JAAAT/Safeco/Tetra Tech Settlement (gov't mot. at 4-5). The JAAAT/Safeco/Tetra Tech Settlement contains a "Waiver of Statutory Rights" in Section 4. (SOF ¶ 66; gov't mot., ex. G-2 at 6-7).

85. SUMF 5: "On 15 November 2017, JAAAT executed a special power of attorney ("POA") which 'irrevocably nominates, constitutes, appoints, and designates Tetra Tech ... , as JAAAT's true and lawful attorney in-fact,' reciting the POA clause 1 (gov't mot. at 5; SOF ¶ 60). Appellant does not challenge the accuracy of the facts set forth in SUMFs 2-5, but instead responds that the government was not a party to the issues between JAAAT and any third party:

> The Respondent's Statement of Undisputed Facts paragraphs 2-5 present in part statements of fact contained in litigation documents between JAAAT, its' [sic] Surety (Safeco) and Tetra Tech, Inc (TTI) the parent company and project bond co-indemnitor of JAAAT's subcontractor Tetra Tech Tesoro which had abandoned the project prior to completion in December 2014. As previously represented by USACE, the Government would not be a party to any private issues concerning JAAAT and any third parties. The litigation settlement was between

31

> JAAAT, TTI, and Safeco, the government was not a party
> to the litigation settlement.

(App. resp. at 3)

An agreement was reached among the Bond Principal (JAAAT), Surety/Bond Insurer (Safeco), and subcontractor (Tetra Tech) concerning the bonded projects – one of them being the SOF Brigade Headquarters Contract (Bond No. 024048098, SOF ¶ 3). Executed copies of the settlement documents showing the parties' terms to the agreement were provided by the government as support for its position on summary judgment. JAAAT did not contest the authenticity of executed JAAAT/Safeco/Tetra Tech Settlement or POA or provided any alternative interpretation of their terms. (SOF ¶¶ 48, 50-51, 55, 60, 66).

86. SUMF 6: "In December 2017, Tetra Tech advanced payment on JAAAT's behalf of the $2.8 million to Safeco" (gov't mot. at 5, *see* ex. G-1 at 13, ex. G-4; SOF ¶ 63). Appellant responds by stating "Paragraph 6 of Respondent's Statement is Denied. As a condition of the Surety's indemnity agreement, TTI was obligated to reimburse 100% of the costs of any bond expense Safeco incurred on the SOF Brigade Headquarters project" (app. resp. at 3). Appellant provides no documentation or other evidence to support its argument, nor an explanation of how the fact, if true, impacts the terms and conditions of the settlement agreement and/or the POA (SOF ¶¶ 51-52, 57- 58, 62-63).

87. SUMF 7: "Based upon the government's discovery of irregularities in payment estimates for several JAAAT projects under contract with USACE, the government reduced its settlement offer in this matter to $3.0 million, and later raised that settlement offer to $3.1 million" (gov't mot. at 5, *see* ex. G-1 at 1, 13, SOF ¶ 68). Appellant responds to SUMF 7 stating, "[b]ased on the government's assertions of alleged cost irregularities in JAAAT's REA submittals on other projects under contract with USACE, the government reduced its' [sic] settlement offer for the SOF Brigade Headquarters REAs to $3.0 million without substantiation. After JAAAT objected the government raised the offer to $3.1 million" (app. resp. at 4). Consistent with SUMF 7 and JAAAT's response, the JAAAT/Safeco/Tetra Tech Settlement at section 1.9 recognized that the finalization of the settlement "has been delayed pending resolution of a recent Government audit" (SOF ¶ 59). The events as described by the parties is consistent with the agreement and other supporting documentation.

88. SUMF 8:

> In May 2018, Tetra Tech sought to exercise its
> rights under the POA and accept the government's

settlement offer; JAAAT objected to such acceptance. Tetra Tech filed a Motion to enforce in the Central District of California on 25 June 2018, to confirm Tetra Tech's rights to accept. The motion was unopposed and the Court took it under submission, indicating it would rule on the submission. Prior to the Court's ruling, JAAAT changed its position and agreed to accept $3.1 million.

(Gov't mot. at 5-6; SOF ¶¶ 69-70)

Appellant responded to SUMF 8 by stating:

Paragraph 8 of the Respondent's statements is corroborated in respect to TTI's filing in the U.S. District Court of the Central District of California (*See* Appellant's paragraph 4). The litigation settlement and sequent [sic] power of attorney (POA) were between JAAAT, TTI, and Safeco. The government was not a party to the litigation.

(App. resp. at 4)

Appellant does not challenge the acceptance of the $3.1 million in its response but only points out that the government was not a party to the litigation between the Surety, Tetra Tech (TTI) and itself. Appellant fails to provide any explanation of how that fact, challenges the veracity of the settlement agreement and/or the POA (SOF ¶¶ 69-70, 73)

89. SUMF 9:

On 17 July 2018, JAAAT's counsel, in an email to the government, "confirm[ed] JAAAT's agreement to settle the Brigade *REAs* [emphasis added] for $3.1 million instead of the $3.2 million that had been agreed to at the meeting on August 10, 2017." Further, JAAAT's counsel stated that:

JAAAT understands that USSOCOM has committed to get the funds to [Respondent] within 15 business days" and "[t]hat then requires [Respondent] need[s] to accept funds and execute a *final payment/release of claims modification* [emphasis added] for JAAAT to sign. With the signed modification and release, [Respondent] will send a final payment package to

33

[Respondent's] Finance Center. The Finance Center asks for 30 (calendar) days to execute final payments, but they will expedite final payments to be made as the result of a settled or adjudicated claim. (Ex. G1 at 0001).

(Gov't mot. at 6)

Appellant responds stating "Paragraph 9 of the Respondent's statements is Denied. Appellant's counsel was outlining the understood government procedure to receive government funds." (App. resp. at 4) Appellant's response ignores the primary focus of SUMF 9. JAAAT agreed to the revised settlement amount of $3.1 million (SOF ¶¶ 70, 73). But, even if it did not, the POA was not revocable by JAAAT once Tetra Tech made its $2.8 million payment to Safeco on JAAAT's behalf (SOF ¶¶ 57-58, 62-63). Tetra Tech "act[ed] for and/or on JAAAT's behalf as true and lawful agent and attorney for and in JAAAT's name, place," and to "finalize[] and/or otherwise secur[e] payment" for JAAAT's claims against the government under the Brigade Project (SOF ¶ 60).

90. SUMF 10: "In reliance on this acceptance, the government obtained funds and issued a bilateral modification, final pay estimate in the amount of $3,101,218.87, and a full release of claims and consent of surety for JAAAT to execute and return" (gov't mot. at 6;.*see* SOF ¶¶ 77-79). Appellant responds, "Paragraph 10 of the Respondent's statements is Denied. On 28 August 2018, twelve (12) months after a proposed settlement Modification was to be imminently submitted to JAAAT, USACE submitted an inadequate Modification [No. 08] . . . with which JAAAT and the Surety immediately took issue." Appellant cites to Rule 4, tabs 28 and 32. (App. resp. at 4). Tab 28 is the email correspondence providing a copy of Modification No. 08 to JAAAT. Tab 32 is an email exchange where JAAAT ultimately agrees to the $3.1 million settlement amount (SOFs ¶¶ 70-71, 73). JAAAT never describes how Modification No. 08 is "inadequate" or contrary to the terms of the JAAAT/Safeco/Tetra Tech Settlement or POA.

91. SUMF 11:

On 30 August 2018, JAAAT stated that in addition to the $3.1 million agreed upon that JAAAT believed it was also entitled to $1,091,070.43 of which JAAAT claimed: 1) $75,973.51 "is the amount deducted in the unilateral Stormwater modification that was submitted by 2014 by [Respondent]" and that "[t]he deduction was included in the settlement agreement amount of $3.2M"; 2) $257,896 "is a JAAAT claim for punch list items that should have been added to the contract but JAAAT gave it up in the

34

$3.2M settlement and now it has been deducted again in the modification"; and, 3) $757,200.92 "based on ... the number of days ... [that] should be deducted for LDs ... [because] JAAAT gave up the compensable $ for project day additions in the REA settlement, but it did not agree to give up the additional project days themselves." JAAAT proposed to accept an additional $650,000 in addition to the $3.1 million agreed upon for a total payment of $3,750,000 to settle everything related to the SOF Brigade Bridge contract. (Ex. G-1 at 0006).

(Gov't mot. at 6; *see* SOF ¶ 71). Appellant does not contest SUMF 11 (app. resp. at 4).

92. SUMF 12:

On 31 August 2018, Respondent responded to JAAAT stating that "[o]n July 17, 2018 [JAAAT's counsel] accepted, on behalf of JAAAT, the Government's final settlement on the Brigade Headquarters contract in the amount of $3.1 million." Respondent rejected the $3.75 million counteroffer and extended Respondent's $3.l million offer until 5 PM EDT on Wednesday 5 September 2018.

(Gov't mot. at 7; *see* SOF ¶ 72) Appellant contests SUMF 12 and refers to the position it took in response to SUMF 9: "Appellant's counsel was outlining the understood government procedure to receive government funds" (app. resp. at 4). JAAAT agreed to the revised settlement amount of $3.1 million (SOF ¶¶ 70, 73). But, even if it did not, the POA was not revocable by JAAAT once Tetra Tech made its $2.8 million payment to Safeco on JAAAT's behalf (SOF ¶¶ 57-58, 62-63). Tetra Tech "act[ed] for and/or on JAAAT's behalf as true and lawful agent and attorney for and in JAAAT's name, place," and to "finalize[] and/or otherwise secur[e] payment" for JAAAT's claims against the government under the Brigade Project (SOF ¶ 60, *see* SOF ¶ 73).

93. SUMF 13: "On 31 August 2018, JAAAT confirmed that "[c]ommon to the positions [of Respondent and JAAAT] is that over $10 million of REAs were settled" but countered that still open was the "issue of what, if anything, is owed under the contract" (gov't mot. at 7); *see* SOF ¶ 73). Appellant does not contest SUMF 13 (app. resp. at 4).

94. SUMF 14: "Tetra Tech sought an emergency ex parte application that the District Court enter an Order on the pending Motion to Enforce" (gov't mot. at 7; *see* SOF ¶ 69). Appellant does not contest SUMF 14 (app. resp. at 4).

95. SUMF 15: "On 4 September 2018, the U.S. District Court of the Central District of California issued an 'Order Granting Ex Parte Application for Emergency Relief by Defendant and Counterclaimant Tetra Tech, Inc.,' and continues to recite the District Court's Order (gov't mot. at 7; *see* SOF ¶ 74). Appellant contests SUMF 15, stating:

> JAAAT's position is uncomplicated: a) There is no "JAAAT's settlement" to accept. The Order changes nothing as it merely tracks the language of the POA, which reflects the exact language quoted above. Therefore, the Order gives Tetra Tech no more power than it has under the POA. It merely confirms that power in the form of a court order.
>
> b) What was not discussed in Wilmington according to the paper trail both before and after the Wilmington settlement and therefore not resolved in Wilmington was the unpaid contract amount due JAAAT <u>in addition to the $3.2 million to be paid for the REAs/claims JAAAT had filed with USACE</u>. An unpaid contract amount due is not a claim until USACE refuses to pay it and JAAAT then files a claim for it. The use of the term claim in the POA and elsewhere clearly refers to claims that might have been made, and/or REAs converted to claims, and not to an unknown sum yet to be determined that might be due under the original contract as amended[.]

(App. resp. at 4-5) Support for appellant's position cannot be found within the settlement agreement and POA. (SOF ¶¶ 51-52, 54, 59-60, 66)

96. SUMF 16:

> On 5 September 2018, Tetra Tech executed contract modification DQ0108 [Modification No. 08] which provided equitable adjustment for: 1) "full settlement of the Storm Water Management Claim, dated 1 October 2014, submitted by the contractor on behalf of it and its subcontracts"; 2) "full settlement of Modification 04 issued unilaterally on 17 April 2014"; and 3) "full settlement of

36

Modification 07 issued unilaterally on 12 December 2017". The contract modification stated that it was "[e]xecuted by Tetra Tech per authority of Power of Attorney and per court order confirming the same dated September 4, 2018.

(Gov't mot. at 7; *see* SOF ¶¶ 75, 77) Appellant argues that there was not a settlement for Tetra Tech to accept. Appellant's position is not supported by any documentation or affidavits. Tetra Tech executed Modification No. 08 to finalize the settlement between JAAAT, the surety and the USACE, in the amount of $3.1 million and providing for a release of claims in accordance with sections 1.9, 2.1, 2.2 and 2.3 of the JAAAT/Safeco/Tetra Tech Settlement, and section 1 of the POA (SOF ¶¶ 51-52, 54, 59-60, 66; gov't mot., ex. G-2; G-3).

97. SUMF 17: "Along with the contract modification DQ0108 [Modification No. 08], a release of claims was executed by Tetra Tech on 5 September 2018," which continues to recite the release of claims in Modification No. 08. The release of claims noted it was "[e]xecuted by Tetra Tech per authority of Power of Attorney and per court order confirming the same dated September 4, 2018." (Gov't mot. at 8; *see* SOF ¶ 78)

98. SUMF 18: "On 6 September 2018, Tetra Tech executed a final pay estimate for [the] Contract . . . which notated that it was signed 'PER POA & Court Order'" (gov't mot. at 8; ex. G-8 at 1).

99. Appellant contests SUMFs 16-18, arguing since there was "no JAAAT settlement, the POA to secure payment . . . is not applicable," and that the government "illegitimately recognized" Tetra Tech to settle the disputes with USACE on JAAAT's behalf:

> Paragraphs 16, 17, 18 of the Respondent's statements are contested. For sixty-nine (69) months, the Government repeatedly represented that the USACE SOF Brigade project contract obligations and privity were legally between JAAAT and USACE. In an effort to close out the SOF Brigade project without JAAAT's concurrence, the government abruptly changed its' [sic] position and illegitimately recognized third party (TTI) involvement in August 2018. As there is no JAAAT agreed settlement, the POA to secure payment respecting JAAAT's settlement is not applicable.

(App. resp. at 5)  While appellant argues that there was not a settlement for Tetra Tech to accept, its position is not supported by any documentation or affidavits (SOF ¶¶ 51-52, 54, 59-60, 66; gov't mot., ex. G-2; G-3).

89. SUMF 19:  "In reliance on the Court Order, Tetra Tech's execution of required documents, and Safeco's executed Consent of Surety, Respondent made final payment of $3.l million to Safeco on JAAAT's behalf on 7 September 2018" (gov't mot. at 8; *see* SOF ¶ 80).  Appellant responds, "The government contravened its' [sic] represented legal contractual obligations, misinterpreted and misapplied the California District Court Order, mismanaged the contract modification documents, and exploited JAAAT's contract payments" (app resp. at 5).  JAAAT does not elaborate or provide support for how USACE "misinterpreted and misapplied" the JAAAT/Safeco/Tetra Tech Settlement, POA, or the U.S. District Court of the Central District of California issuance of an "Order Granting Ex Parte Application for Emergency Relief" or how USACE "mismanaged" or "exploited" the contract modification documents and contract payments.

DECISION

*The Parties' Contentions*

The government moves for summary judgment on each of the nine appeals pending before the Board, asserting the defenses of accord and satisfaction and release of claims (gov't mot. at 8-13).  Alternatively, the government seeks dismissal of ASBCA Nos. 61793-61800[14] for lack of subject matter jurisdiction (gov't mot. at 9-16).

The government argues that in each of the appeals currently before the Board, that appellant's agent and attorney-in-fact, Tetra Tech, Inc., executed a bilateral modification on behalf of appellant for the government's payment of $3,100,000 to settle ongoing disputes and to bar all future claims under this contract, following the U.S. District Court of the Central District of California issuance of an "Order Granting Ex Parte Application for Emergency Relief by Tetra Tech, as Defendant and Counterclaimant" (gov't mot. at 7-8).  The government asserts that in reliance on the District Court's Order and appellant's agent and attorney-in-fact, the government made a final payment of $3.1 million on appellant's behalf (gov't mot. at 8, ex. 8-9; SOF ¶¶ 77, 80).  The government argues that the defenses of accord and satisfaction

---

[14] While the government did not challenge the jurisdiction of ASBCA No. 61792, on April 11, 2019, the Board questioned whether it had jurisdiction.  The discussion is addressed below beginning at Section 1, ASBCA No. 61792 (Stormwater).

38

and "release of claims precludes future claims against the [government]" under this contract (gov't mot. at 9).

Appellant argues that "[t]he release signed by [Tetra Tech] was invalid" as the District Court and the government have misinterpreted the special power of attorney (POA) "as there was no JAAAT settlement to accept in order to implement the POA" (app. resp. at 5). JAAAT argues that the California Court Order did nothing other than recite the exact language of the POA and gives Tetra Tech "no more power than it has under the POA" (*id*. at 4) JAAAT continues in its argument by espousing that the agreement reached by the parties did not cover the unpaid balance on the contract due to JAAAT, and there was "no mutual agreement between the parties" since the government and appellant "continued to consider JAAAT's claims after the legal actions, [sic] that conduct demonstrates that the government did not consider the actions to constitute an accord and satisfaction of the claim" (*id*. at 5).

For ASBCA No. 61793, the government argues that the appeal should be dismissed for lack of jurisdiction because no written claim was ever submitted to the contracting officer (gov't mot. at 14). Appellant disagrees and informs the Board that this "REA was submitted to USACE on 8 November 2016," citing one of the 12 documents it submitted along with its complaint[15] (app. resp. at 1).

The government argues further that ASBCA Nos. 61795, 61798, 61799, and 61800 should also be dismissed on jurisdictional grounds because each request exceeds $100,000 and failed to contain any certification as required by the CDA, 41 U.S.C. § 7103(b)(1). The government argues that the complete absence of a certification is not a jurisdictional defect that can be corrected consistent with 41 U.S.C § 7103(b)(3). (Gov't mot. at 13-14) Instead, the facts here require a dismissal by the Board based upon appellant's failure to present a certified claim in accordance with the CDA (*id.*). Appellant counters that the Board has jurisdiction over these appeals as the REAs were "submitted per Federal Acquisition Regulations (FAR) for REA submittals less than $700,000" (app. reply br. at 2).

While ASBCA Nos. 61794, 61796, and 61797, were each under $100,000, and did not require a certification, the government argues that these appeals should likewise be dismissed for lack of jurisdiction because JAAAT submitted requests for equitable adjustment (REA) and never converted those REAs into claims (gov't mot. at 15). Appellant argues that the Board has jurisdiction over these appeals as "ASBCA Nos. 61794, 61796, and 61797 were deemed to have COFDs denied at the settlement

---

[15] That document consisted of a letter dated November 8, 2016 indicating the subject was "Request for Equitable Adjustment: Relocation of Projector Screen, Room 1134" (compl. at tab 2 at 2028-31).

39

meeting of 10 August 2017" (app. resp. at 6). Appellant provides no further explanation or support for its argument.

We will first address the question of jurisdiction over each of the appeals currently pending before the Board, and then proceed to the question of entitlement to summary judgment. We determine jurisdiction at the time the appellant filed its notice of appeal. *See, e.g., Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)) ("'the jurisdiction of the Court depends upon the state of things at the time of the action brought'").

### 1. ASBCA No. 61792 (Stormwater)

By Order dated April 11, 2019, the Board questioned whether JAAAT's May 20, 2014, and September 30, 2014, documents converted its request for equitable adjustment into a CDA claim (SOF ¶ 9). We invited the parties to address "(i) whether the contractor's request for equitable adjustment in ASBCA No. 61792 was converted to a proper claim submitted to the contracting officer before the initiation of this appeal, and (ii) whether the Board has jurisdiction over this appeal." In response, the government stated it does not contest the Board's subject matter jurisdiction in ASBCA No. 61792, and in support of its position supplemented its Rule 4 file with new information contained at government Rule 4, tabs 49-76. The government acknowledges that on July 7, 2015, JAAAT submitted a letter addressing the Stormwater REA stating, "while JAAAT welcomes any additional discussions to achieve a mutually agreed resolution to this REA, please accept this correspondence as JAAAT's formal request for a Contracting Officer's final decision." (Gov't br. dated May 21, 2019 at 2) This document was subsequently added to the government's Rule 4 file as tab 69. The July 7, 2015 document references an earlier CDA certification and undeniably states that JAAAT requests a contracting officer's final decision (SOF ¶ 11). The parties engaged in numerous exchanges since the submission of the REA dated May 20, 2014 and the revised REA dated September 30, 2014 (which included a full CDA claim certification) (SOF ¶¶ 10-12, 50, 54, 67, 70-72).

Certainly, JAAAT's intention to convert its REA into a claim is further clarified by its response to the government's email of August 10, 2017, where the contracting officer asks "Please respond confirming that you are invoking the certification on the original REA from September of 2014, turning the REA into a certified claim. . ." (R4, tab 76 at 10567). JAAAT responded on August 14, 2017, stating, "A[s] requested JAAAT hereby invokes the claim certification . . ." (SOF 12). These newly added documents to the government's Rule 4 file satisfy the Board that it has proper subject matter jurisdiction over ASBCA No. 61792.

2. *ASBCA Nos. 61795 (Command Carpet), 61798 (Perimeter Wall), 61800 (Elevator)*

The three appeals here involve the absence of a certification on claims that exceed $100,000. The government argues that the complete absence of a certification is a jurisdictional defect that cannot be corrected. (Gov't mot. at 13-14) JAAAT argues for each appeal that "The REA was submitted per Federal Acquisition Regulations (FAR) for REA submittals less than $700,000" (app. resp. at 2). JAAAT does not provide any citations for this proposition or elaborate on its position. JAAAT's argument appears to be that since it submitted a request for equitable adjustment to the contracting officer and followed the FAR procedures for submitting a *request for equitable adjustment* that should suffice. (App. resp. at 2, 6) JAAAT takes absolutely no position on its failure to certify the claims in accordance with the CDA, 41 U.S.C. § 7103(b)(1). Nor, does it present evidence that demonstrates any attempt at certification was made on these submissions in accordance with the CDA, 41 U.S.C. § 7103(b)(1) (SOF ¶¶ 16, 23, 42).

The linchpin of the Board's jurisdiction over a contractor's claim is the contractor's submission of a proper claim to the contracting officer for a decision. *Air Services, Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146 at 176,424. A contractor is required to submit a certification to the contracting officer for any claim exceeding $100,000. *WIT Assocs., Inc.*, ASBCA No. 61547, 19-1 BCA ¶ 37,226 at 181,210. Even if we decide that each of the "requests for equitable adjustment" included all the indicia of a proper claim, a determination we do not make here, JAAAT did not submit a certification to the contracting officer as part of "request for equitable adjustment" package (SOF ¶¶ 16, 23, 42). The Board cannot entertain an appeal that exceeds $100,000 if the claim is not certified. *Al Rafideen Co.*, ASBCA No. 59156, 15-1 BCA ¶ 35,983; *Bell Helicopter Textron Inc.& The Boeing Company,* ASBCA No. 59561, 15-1 BCA ¶ 36,111.

The amount in dispute for each of the appeals exceeds $100,000 (for ASBCA No. 61795 the amount in dispute is $201,799; for ASBCA No. 61798 the amount in dispute is $112,831; and, for ASBCA No. 61800 the amount in dispute is $348,898) (SOF ¶¶ 16, 23, 42). It is undisputable that while a defective certification may be remedied, the complete absence of a certification is not considered a defect. *Hamza v. United States*, 31 Fed. Cl. 315, 324 (1994); *Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1553 (Fed. Cir. 1993). A "claim" exceeding $100,000 not accompanied by any certification precludes the Board from exercising jurisdiction and mandates dismissal. *URS Federal Services, Inc.,* ASBCA No. 61443, 19-1 BCA ¶ 37,448 at 181,967.

JAAAT's failure to provide a certification as required by the CDA, 41 U.S.C. § 7103(b)(1), necessitates that we grant the government's motion to dismiss for lack of

jurisdiction for ASBCA Nos. 61795, 61798, and 61800. Having reached a decision based upon certification, there is no need to conduct an examination into appellant's other arguments related to ASBCA Nos. 61795, 61798, and 61800[16].

### 3. ASBCA No. 61799 (Punch List)

The government would also have us resolve this appeal by a similar analysis to ASBCA Nos. 61795, 61798, and 61800, arguing that the Board lacks jurisdiction of ASBCA No. 61799 because it involves an appeal in excess of $100,000 which was not certified as required by the CDA. Unfortunately, this appeal presents more difficult questions that must be resolved in order to determine whether this appeal is properly before the Board for consideration. In the government's motion, it argues that ASBCA No. 61799 should be dismissed for lack of jurisdiction because the request exceeded $100,000 and was not certified and that "the complete absence of a certification is not a jurisdictional defect that can be corrected and therefore dictates dismissal" (gov't mot. at 13-14) (citing *Al Rafideen Company,* 15-1 BCA ¶ 35,983 at 175,808). JAAAT provides the same argument here as it advanced for ASBCA Nos. 61795, 61798, and 61800, that the REA was "submitted per the FAR for REAs less than $700,000" and certification was not required (app. resp. at 2).

After receiving the government's motion to dismiss for lack of subject matter jurisdiction and motion for summary judgment for ASBCA No. 61799, and having reviewed the parties respective briefs, a further review of the record identified an issue not raised or briefed by either party: the possibility that the government's unilateral Modification No. 07 which reduced the contract amount by $257,896 for unfinished and incomplete punch list items is a government claim against JAAAT (SOF ¶¶ 30-31). A determination whether Modification No. 07 is a government claim may influence whether the Board has subject matter jurisdiction over ASBCA No. 61799. The Board ordered the parties to brief this issue (SOF ¶ 38) and we examine their responses here (SOF ¶¶ 39-41).

### a. JAAAT's response to the Board's June 10, 2020 Order

JAAAT's position is that Modification No. 07 is a government claim which reduced the contract price by $257,896. JAAAT provides no other argument other than reciting the Disputes clause, FAR 52.233-1(c), "a . . . written assertion by one of the contracting parties seeking, as a matter of right, the . . . adjustment . . . of contract terms" (app. br. dtd. June 30, 2020 at 1). Yet, whether Modification No. 07 is a contracting officer's final decision, JAAAT is equivocal, stating, "[t]he facts of this case may support either 'yes' or 'no'" (*id.*) JAAAT argues that Modification No. 07

---

[16] In order for the Board to possess jurisdiction JAAAT must meet all the certification requirements of a claim as required by CDA, 41 U.S.C. § 7103(b)(1).

is not a valid final decision and, thus, the 90 day appeal time limitation of CDA does not apply. JAAAT states:

> Modification No. 07, however, did not comply with the protocols of FAR 33.211(a). It does not appear to adequately describe the claim or dispute, state the factual areas of agreement and disagreement, state the contracting officer's decision with supporting rationale, or disclose that it is a final decision with the required advice of rights. Failure to comply with this requirement renders the decision invalid, and the limitations period of 41 U.S.C. § 7104(a) would not apply.

(*Id.* at 2)

Addressing the question whether Modification No. 07 is a final decision by the contracting officer, JAAAT provides five distinct arguments, some of which are irreconcilable of each other (app. br. dtd. June 30, 2020 at 2-3).

In JAAAT's first argument, it appears to be concerned that if Modification No. 07 is deemed a final decision, then the Board will find it did not timely appeal to the Board within 90 days. It argues that Modification No. 07 is not a final decision and was not "satisfied or settled by mutual assent," citing FAR 33.211(a) and 41 U.S.C. § 7103 (App. br. dtd. June 30, 2020 at 2). JAAAT cites to *Uniglobe Gen. Trading & Contracting Co., W.L.L. v. United States*, 115 Fed. Cl. 494 (2014) and concludes that "[f]ailure to comply with this requirement renders the decision invalid, and the limitations period of 41 U.S.C. § 7104(a) would not apply." (App. br. dtd. June 30, 2020 at 2)

In JAAAT's second argument, it backtracks and argues Modification No. 07 is "legally effective" and it is appropriate to determine when the government declined to pay JAAAT the balance due on the contract as a result of the modification. Thus, JAAAT argues the government's refusal to pay is the act which constitutes the final decision, which it timely appealed from and relies upon *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990), in which the Court concluded that the contract officer had "effectively made a final decision on the government claim . . . when he declined to pay Placeway the balance due on the contract." (App. br. dtd. June 30, 2020 at 2-3)

Third, JAAAT argues that it submitted claims on December 13, 2016, or March 24, 2017, and the contracting officer's failure to issue a valid final decision is a deemed denial. Thus, JAAAT argues that its appeal is timely as a deemed denial and

is not subject to the 90-day appeal deadline of 41 U.S.C. 7104(a)[17] (app. br. dtd. June 30, 2020 at 3).

For its last two arguments, JAAAT argues that it was prejudiced by the lack of appeal rights or the misstatement of appeal rights (app. br. dtd. June 30, 2020 at 4-5). In support of its position, a Declaration by Mr. Rickey Barnhill is provided stating that the documents submitted to the contracting officer for the punch list dispute were not submitted as a claim. Rather, it was customary practice for JAAAT to resolve disputes with the contracting officer through the REA process, which for the punch list dispute (ASBCA No. 61799) proceeded as an REA until at least August 2018:

> I do not recall ever seeing a unilateral modification by the government containing the language indicating that it was a final decision imposing appeal deadlines. I and the company had prior experience with disputes concerning unilateral modifications by the government being successfully resolved through the REA process, and I and JAAAT expected that this would be the manner we would have to proceed in this case. Additionally, *we did not file this as a claim.* I and JAAAT previously had regularly been encouraged by government project representatives to pursue REAs as a means of resolving disputes, though our REAs were often converted to claims as part of the process. I and JAAAT understood the statement in the email of December 15, 2016, about "processes outlined in your contract and the FAR" to mean the option of pursuing an REA, and did not understand it to indicate that an appeal within 90 days was necessary. From JAAAT's perspective, the letter of June 6, 2017 was part of the ongoing REA process, and not a conclusion of the REA process, because it did not contain the typical language indicating that it was the contracting officer's final decision as to the REA. From JAAAT's perspective, negotiations in the REA process on this matter continued until August or September 2018.

---

[17] We do not find this argument persuasive that JAAAT appealed from a deemed denial for the contracting officer's failure to issue a final decision to its claim documents dated December 13, 2016, or March 24, 2017. In its brief, JAAAT provided a Declaration by Mr. Rickey Barnhill, discussed below, that these documents were not submitted as claims, rather as requests for equitable adjustment per the company's practice to resolve these types of disputes through the REA process.

(App. br. dtd. June 30 2020, ex. A, Declaration of Rickey Barnhill at 1-2) (emphasis added)

JAAAT argues that lack of appeal rights in Modification No. 07 prejudiced it and that it was not aware that Modification No. 07 could act as a final decision (app. br. dtd. June 30, 2020 at 5-6). In response to question 4, whether the contracting officer's June 6, 2017 letter vacated Modification No. 07, JAAAT argues that the government's June 6 letter does not support that Modification No. 07 was being reconsidered or vacated:

> No. . . . This June 6, 2017 letter asserted that the REA was "without merit." This did not suggest, let alone support a conclusion, that Modification No. 07 was being reconsidered or vacated, as required under the *Sach Sinha*[18] precedent.

(App. br. dtd. June 30, 2020 at 6)

JAAAT characterizes its appeal as timely and argues, through reference to the government's Statement of Undisputed Material Facts (SUMF) and without elaborating, that the government's June 6, 2017 letter was a response to JAAAT's REA and would have no effect on the analysis, but if the Board deems it "to have vacated the finality of Modification 07," then the events of June 25 and September 7, 2018 would constitute a final decision, thus making its appeal timely [19] (app. br. dtd. June 30, 2020 at 7). JAAAT refers to SUMF 8-19 without elaborating how "the

events of June 25 and September 7, 2018, as described in the Respondent's Statement of Undisputed Material Facts ¶¶ 8-19, would constitute an 'effectively . . . final decision'" (app. br. dtd. June 30, 2020 at 6-7 (quoting *Placeway*; 920 F.2d at 906;

---

[18] Appellant does not provide a citation of "Sach Sinha," but we presume it is referring to *Sach Sinha and Associates, Inc.*, ASBCA No. 46916, 95-1 BCA ¶ 27,499 at 137,042, where this Board has repeatedly found the test for vitiation of finality "is whether the contractor presented evidence showing it reasonably or objectively could have concluded the CO's decision was being reconsidered."

[19] As a result of JAAAT's failure to elaborate on its argument, and the complete absence of anything that resembles support, we can only guess at the argument that it makes here. For purposes of this decision, we will not speculate. *See McDonnell Douglas Helicopter Sys.,* ASBCA No. 50341, 99-2 BCA ¶ 30,546; *G & C Enterprises, Inc.*, ASBCA No. 53067, 05-2 BCA ¶ 33,033.

*see* SOF ¶¶ 88-100). SUMFs 8-19 (SOF ¶¶ 88-100) largely deal with the events surrounding the JAAAT/Safeco/Tetra Tech Settlement, Modification No. 08, and the government's payment of $3,100,000 to Safeco on JAAAT's behalf. Interestingly, JAAAT's response brief to the government's motion disputes SUMF 9-10, 12, 15-19 (SOF ¶¶ 89-90, 92, 95-100), while its brief dated June 30, 2020 (SOF ¶ 39) filed by its new representation of counsel, appears to accept SUMF 8-19. (App. br. dtd. June 30, 2020 at 6-7; SOF ¶¶ 88-100).

b.      *Government's response to the Board's June 10, 2020 Order*

The government's arguments can be summarized as: 1) Modification No. 07 is not a government claim but instead an administrative action under FAR 52.243-4; 2) and, JAAAT never filed a claim and a claim certification to the contracting officer for the dispute surrounding the punch list items (SOF ¶¶ 36-37; $257,896 – $21,609.32 = $236,286.68). JAAAT sought "an equitable adjustment in the amount of $236,286.68" and states that the "total project construction credit [should be] $21,609.32," not $257,896 as determined in Modification 7 (SOF ¶ 36).

The government portrays Modification No. 07 as a contract administration action in the form of a reduction in contract price pursuant to the Changes clause (FAR 52.243-4), and, thus is not a government claim:

> [T]his case does not involve excess procurement costs or a demand for payment of an overpayment as in *Highland A1 Hujaz Co., Ltd.*[, ASBCA Nos. 59746, 59818, 15-1 BCA ¶ 36,041.] Instead, this case involves a contract administration action in the form of a reduction in the contract price and is not seeking any payment from the contractor.
>
> Unilateral Modification No. 07 was issued by the Contracting Officer pursuant to the Changes Clause (FAR 52.243-4) (See Block 13D of the SF 30 - R4, tab 14a at 2707). The Changes Clause gives the government the unilateral right to order changes in work within the scope of the contract. The clause also provides for an equitable adjustment if the change increases or decreases the cost or time of performance. *See ThermoCor, Inc. v. United States*, 35 Fed. Cl. 480, 492 (1996).

(Gov't br. dtd. June 30, 2020 at 4-5)

46

The government argues that it needed to find a replacement contractor to finish work JAAAT failed to do pursuant to the contract and the government requested JAAAT to submit a proposal for the value to be deducted from the contract:

> In a correspondence dated November 30, 2016, the Government had requested that JAAAT submit a proposal to address remaining work (R4, tab 14a at 2694). Modification No. 07 was executed by the government on December 12, 2016 after a bilateral agreement was unable to be reached concerning credit to complete the remainder of the punch list for building X-4647. The value deducted under the unilateral modification was to be utilized to pay a replacement contractor to finish that work, pursuant to FAR 52.246-12(g)(1).

(Gov't br. dtd. June 30, 2020 at 5)

The government argues that the contracting officer issued Modification No. 07 through the Changes clause (FAR 52.243(a)(2) which was "work within the general scope of the contract, including changes in the method or manner or performance of the work" as JAAAT failed to complete work that was required in the contract:

> According to the Changes Clause, the Contracting Officer may, at any time, make changes in the work within the general scope of the contract, including changes in the method or manner of performance of the work. FAR 52.243-4(a)(2). In this case, the contract was unilaterally modified to reduce the contract value to account for punch list items that were not completed by JAAAT.

(Gov't br. dtd. June 30, 2020 at 5)

In addition, the government contends the reduction in contract price as set forth in Modification No. 07 was consistent with the Changes clause for work not performed by JAAAT. Pursuant to Section (e) of the Changes clause, JAAAT had 30 days to assert its right to an adjustment in contract price, a timeline which JAAAT did not achieve:

> FAR 52.243-4(e) further requires the contractor to assert its right to an adjustment in contract price within 30 days of receipt of a written change order.

(Gov't br. dtd. June 30, 2020 at 5)

47

JAAAT eventually filed an REA on March 24, 2017, seeking a payment in excess of $100,000, which was approximately 102 days after receiving notice of the contract reduction through Modification No. 07.  The government found the REA to be without merit on June 6, 2017.  (Gov't br. dtd. June 30, 2020 at 6)  The government cites to *Info. Sys. & Networks Corp.*, ASBCA No. 46119, 02-2 BCA ¶ 31,952 for the proposition that "[a] failure to agree to an adjustment shall be a dispute under the Disputes Clause" and "[t]he Disputes Clause in the contract . . . provides all disputes arising under or relating to the contract shall be resolved under that clause," yet JAAAT failed to file a claim or a claim certification (gov't br. dtd. June 30, 2020 at 6). The government reiterates its argument from prior briefing that the Board lacks jurisdiction as JAAAT never provided a claim, never requested a final decision, and never provided a claim certification for the $236,286 which it now seeks. The complete absence of a certification under 41 U.S.C. § 7103(b)(3) is a defect which cannot be corrected.  (Gov't br. dtd. June 30, 2020 at 6-7)

The government states further that "USACE did not consider the unilateral modification to be a government claim, so the absence of the notice of appeal rights was not an accidental oversight.  Thus, Modification No. 07 was not intended by the government to be a final Contracting Officer's decision."  (Gov't resp. br. dtd. July 10, 2020 at 2)  "To the extent the Board finds Modification No. 07 to be a claim, the fact that the Contract Modification may have failed to satisfy certain requirements for final decisions does not necessarily deprive that document of legal effect as a final decision" " (gov't br. dtd. June 30, 2020 at 8 (citing *Uniglobe Gen. Trading & Contr. Co., W.L.L. v. United States*, 115 Fed. Cl. 494 (2014)).  It is JAAAT's burden to demonstrate that the defective notice "'prejudiced its ability to prosecute its timely appeal before the limitation period will be held not to have begun'" (quoting *Decker & Co. v. West*, 76 F.3d 1573, 1579-80 (Fed. Cir. 1996)):

> When the government fails to adequately provide the appeal notice, the *Decker* test is one of detrimental reliance, i.e., whether the CO's decision, by words of commission or omission, actually misled the contractor to its prejudice regarding its appellate rights.

> The record here does not reveal any word or deed of the government that would lead a reasonable contractor to believe that the decision to reduce the contract amount for unfinished work was not a final decision that needed to be appealed.  JAAAT should have known that the Contracting Officer's decision needed to be appealed when the government ceased negotiations and executed Modification No. 07 in order to reduce the contract price.  The finality of the decision should also have been reaffirmed when their

48

untimely and uncertified REA was denied for consistent reasons on June 6, 2017. However, JAAAT did not file a notice of appeal until September 10, 2018 – almost 20 months after the execution of Modification No. 07, and approximately 14 months after the decision on their REA. The appeal was subsequently filed on November 8, 2018.[20] Therefore, this appeal was not timely from either event.

(Gov't br. dtd. June 30, 2020 at 8-9) (footnote and internal citations omitted)

The government agrees with JAAAT that it refused to reopen negotiations on the reduction of contract price and it has no record of any conversations after issuance of Modification No 07 (gov't br. dtd. June 30, 2020 at 9-10). The government argues that even if the Board finds Modification No. 07 to be a government claim, JAAAT has failed to carry its burden of proving that it was prejudiced by the lack of appeal rights:

[T]he record is devoid of facts to satisfy JAAAT's burden of proving that they were prejudiced by the lack of appeal rights. JAAAT acknowledges that they were "informed that no negotiation would be allowed, and if JAAAT did not concur, a unilateral contract modification would be immediately issued." (R4, tab 14a at 2691). The fact that JAAAT chose to delay the filing of this appeal so as to lump it in with 8 other appeals does not provide justification to ignore the statutory deadline for this particular appeal.

(Gov't br. dtd. June 30, 2020 at 10)

Whether the contracting officer's June 6, 2017 letter in response to appellant's March 24, 2017 "Credit for remaining work request for equitable adjustment" vacated Modification No. 07, the government argues that JAAAT has failed to come forward with evidence showing it reasonably could have concluded the contracting officer's decision was being reconsidered (gov't br. dtd. June 30, 2020 at 11). The government points out that JAAAT admits in its REA submitted March 24, 2017, that "USACE did not entertain any negotiation. . ." following instead with what JAAAT labeled as an "unreasonable" Modification No. 07 (gov't br. dtd. June 30, 2020 at 11 (quoting JAAAT's March 24, 2017 submission)), and that "[no] government action could have reasonably led [it] to believe that the subject matter was not yet final, thereby making an appeal to the board unnecessary" (gov't br. dtd. June 30, 2020 at 12). The

---

[20] We note that JAAAT appealed to the Board on September 10, 2018. *See* (SOF ¶ 6).

49

government argues that the Board lacks subject matter jurisdiction over ASBCA No. 61799 as JAAAT failed to provide a claim and claim certification to the contracting officer, Modification No. 07 was not a government claim from which it could directly appeal from, and JAAAT failed to carry its burden that the lack of appeal rights in Modification No. 07 prejudiced it (gov't br. dtd. June 30, 2020 at 5-13).

### c. *Is Unilateral Modification No. 07 a Government Claim?*

The CDA imposes specific prerequisites for the Board to exercise jurisdiction over an appeal, whether it is a government claim against a contractor, or a contractor claim against the government. See 41 U.S.C. §§ 7103-7104. Our examination of jurisdiction here must determine whether USACE's Unilateral Modification No. 07 is a government claim. The government argues that Unilateral Modification No. 07 was not a government claim but merely an administrative action under the Changes Clause, to reduce the contract price by $257,896 (gov't br. dtd. June 30, 2020 at 5-6).

Our review of this action reflects the manifest understanding that a contractor must complete a project as required by the contract, to include all "punch list" items. *See Toombs & Co.*, ASBCA No. 34590, *et al.* 91-1 BCA ¶ 23,403. We agree that the Changes Clause authorizes the contracting officer to unilaterally direct the contractor, by written order, to make a change within the general scope of the contract, including increasing or decreasing the contract price. This right is solely within the government's discretion, not the contractor. FAR 43.201; FAR 2.101 (definition of "change order"). Here, however, the parties went through months of discussions over the punch list work only to find that once the contracting officer requested a proposal pursuant to FAR 52.243-4, Changes Clause; and DFARS 252.236-7000, MODIFICATIONS PROPOSALS-PRICE BREAKDOWN, they were unable to agree on the cost to complete work required by the contract that was performed improperly by JAAAT, or not performed at all. (SOF ¶¶ 25-30) On November 30, 2016, the government informed JAAAT that it was reducing the contract price under the Changes Clause for unfinished work, punch list items, and sought an itemized proposal for all material, labor, equipment, subcontract, overhead costs, and profit due (SOF ¶ 25). On December 12, 2016, the contracting officer issued Unilateral Modification No. 07 decreasing the contract amount by $257,896.00, cited the Changes Clause and identified it as a "Credit to complete remainder of punch list for building X-4647" (SOF ¶ 31).

We questioned whether this action was a government claim. The CDA envisions both contractor claims against the government and government claims against contractors. 41 U.S.C. § 7103(a). Further guidance is provided by FAR 52.233-1, DISPUTES, which provides the following definition of a claim:

"Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.

FAR 52.233-1(c).

Although the CDA does not define a claim, the Federal Circuit has found that the FAR definition "governs." *See Todd Const., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) citing to *H.L. Smith, Inc. v. Dalton,* 49 F.3d 1563, 1564–65 (Fed.Cir.1995). The government may advance a claim against the contractor under several theories including liquidated damages, breach of warranty, defective pricing, excess financing payments, overpayments, defective goods/services, and more. *See* FAR 52.233-1(c)- (d) (recognizing government's right to seek redress through claims process). Here, we think that the USACE may have advanced a claim by the issuance of Unilateral Modification No 07. The first category of a claim, which requires a written demand, was met when the contracting officer issued the modification. Likewise, a reduction of the contract price, the amount of $257,896, indisputably represents the seeking of "the payment of money in a sum certain" over the disputed items of work (SOF ¶ 31).

The Board has recognized that the same operative facts can give rise to claims by either party. *See General Elec. Co.*, ASBCA Nos. 36005 *et al.*, 91-2 BCA ¶ 23,958 (citing *Teton Constr. Co.*, ASBCA Nos. 27700, 28968, 86-2 BCA ¶ 18,971 (Government claim reducing contract price and contractor claim for withheld funds); *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 749-51 (Fed. Cir. 1993) (affirming the Board's decision that it had jurisdiction over Navy's directive to contractor to correct or replace defective engines, constituted "other relief" within the FAR's third category of "claims," and, thus, was within CDA concept of "claim," and on contractor's appeal of decision by Department of Navy on contract was "final," for purpose of conferring jurisdiction to the Board); *Perkins & Will*, ASBCA No. 28335, 84-1 BCA ¶ 16,953 (Government damages claim resulted in withholding of funds sought by contractor); *cf. Martin Marietta Corp.*, ASBCA No. 25828, 84-1 BCA ¶ 17,119 (cost disallowance); *Fruit Growers Express Co.*, ASBCA No. 28951, 84-1 BCA ¶ 17,158 (price reduction under Economic Price Adjustment clause). In such cases, the contractor's failure to submit a monetary claim, certified if for more than $100,000, affects only the running of interest on any amounts ultimately found due the contractor and not the justiciability of the appeal of the Government's claim. *See Martin Marietta Corp.*, 84–1 BCA at 85,257-58 (CDA certification amount was $50,000 during this time period). Here, JAAAT used the same facts to support the REA it filed on March 24, 2017, which if found to be properly appealed would only affect its

interest calculation.[21]

In advocating for a finding that Unilateral Modification No. 07 is not a government claim, the government argues that when JAAAT failed to perform work required under the contract, it issued a unilateral modification consistent with FAR 52.243-4, and deducted $257,000 from the contract price. The government asserts that Unilateral Modification No. 07 was nothing more than a contract administration action to delete work that JAAAT did not perform. What the government has chosen to ignore in this discussion is that the action was a result of a dispute between the parties after deficiencies were found in JAAAT's work pursuant to FAR 52.246-12 (INSPECTION OF CONSTRUCTION) (SOF ¶¶ 25-27, 31, 37). Months of negotiations ensued with the final exchange revealing that the parties differed considerably over the value of the punch list work. Just before the issuance of the unilateral modification, JAAAT proposed a final number of $9,880 as the value of the punch list work. The contracting officer's estimated value was $257,896. Unable to reach a resolution, the contracting officer brought an end to this unproductive discussion by issuing a unilateral modification reducing the contract price by an amount the government determined to be fair and reasonable for the outstanding punch list items. That unilateral modification was issued on December 12, 2016. The contracting officer brought finality through that action.

The government would have us find that the action of reducing the contract price through the Changes clause is an administrative action, and, thus, not a government claim and not an immediately appealable event because the government is not seeking payment from the contractor (gov't br. dtd. June 30, 2020 at 5-6). Certainly, the decision to issue Unilateral Modification No. 07 was the direct result of the issues over JAAAT's performance where, through the Inspection of Construction clause, the government identified several construction issues and unfinished work (SOF ¶¶ 25, 27, 30-31). The government was not satisfied with incomplete and inadequate work, and in some instances the failure to perform work at all. Ultimately, the contracting officer decided to proceed by having a different contractor replace, fix, or perform the items identified on the punch list. The differences between the parties did not end there, and the value to be assessed to the punch list items remained a major hurdle. (SOF ¶¶ 34-37) This scenario is not the *simple* contract administration action as the government suggests. The contracting officer would have us equate the issuance of Modification No. 07 to something analogous to the contracting officer

---

[21] *See* 41 U.S.C. § 7109(a). JAAAT's punch list REA was in excess of $100,000 and was not certified. If we had to consider that issue, JAAAT's March 24, 2016 REA and assigned ASBCA No. 61799 would likewise suffer the same fate as the Appeal Nos. 61795 (Command Carpet), 61798 (Perimeter Wall), and 61800 (Elevator).

deleting a CLIN as merely deleting contract work the contractor had not yet performed. The latter is more akin to a simple contract administration action – one where a contracting officer would not expect a challenge. In this hypothetical example, the reduction in the contract price for the deletion of the work would not be a government claim, and the contractor would have to file a claim with the contracting officer to express its grievance. What we have before us is something distinctly different, a disagreement over the value of the unfinished or poorly performed work required by the contract. Modification No. 07 reducing the contract price for unfinished and poorly performed work, valued at an amount considerably larger than the contractor's estimated value, is a government claim for which the contracting officer effectively issued a final decision.

This Board has dealt with numerous situations analogous to the one here and found the government's correspondence/modification/action was a government claim. *See Greenland Contractors I/S,* ASBCA Nos. 61113, 61248, 19-1 BCA ¶ 37,259 (the government's issuance of a unilateral contract modification to reduce the contract amount found to be a government claim (citing *DynPort Vaccine Co. LLC*, ASBCA No. 59298, 15-1 BCA ¶ 35,860 and *LTV Aerospace & Defense Co., Vought Missiles & Advanced Programs Div.*, ASBCA No. 35674, 89-2 BCA ¶ 21,858 at 109,950-51); *The Boeing Company,* ASBCA No. 37579, 89-3 BCA ¶ 21,992, (finding the government's actions in issuing a unilateral modification to exercise an option subject to applicable contract definitization provisions, to be a government claim); *PX Eng'g*, ASBCA No. 38215, 89-2 BCA ¶ 21,859 (the issuance of a unilateral modification reducing the contract price, while not characterized as a decision, constituted a formal and final action from which the contractor could appeal (citing *Systron Donner, Inertial Div.*, ASBCA No. 31148, 87-3 BCA ¶ 20,066); *Solflores Constr.*, ASBCA No. 31557, 86–1 BCA ¶ 18,617 (a unilateral contract modification establishing the amount of an equitable adjustment and making other unilateral determinations considered an appealable final decision). Having all the indicia of a claim, the unilateral modification reducing the contract price by $257,896, was unquestionably a government claim upon which an appeal can be taken. *See The Boeing Company*, 89- 3 BCA ¶ 21,992; *Building Servs. Unlimited, Inc.*, ASBCA No. 33283, 87-3 BCA ¶ 20,135.

The fact that the unilateral modification did not identify itself as a final decision, or did not contain the appeal rights that are required, is of no consequence. The government argues that the lack of appeal rights contained in Unilateral Modification No. 07 was not an oversight as they did not view this action to reduce the contract price, under the Changes clause, as a government claim against JAAAT (gov't br. dtd. June 30, 2020 at 5-6). The requirements set forth in the CDA and corresponding regulations to advise contractors of their appeal rights are for the "contractors' protection and benefit and the failure to comply with those requirements can prevent the appeal period from running." *Decker & Co. v. West,* 76 F.3d 1573,

1579-80 (Fed. Cir. 1996). *See also North Am. Corp.*, ASBCA No. 28140, 83-2 BCA ¶ 16,801; *W.H. Moseley Co.*, ASBCA No. 27370, 83-1 BCA ¶ 16,272; *Vepco, Inc.*, ASBCA No. 26993, 82-2 BCA ¶ 15,824; *Habitech, Inc.*, ASBCA No. 26388 *et al.*, 82- 1 BCA ¶ 15,794; *R.G. Robbins Co., Inc.*, ASBCA No. 26521, 82-1 BCA ¶ 15,643. In *Placeway Constr. Corp.,* 920 F.2d at 906-07, the court reversed the lower court's dismissal for lack of jurisdiction where the contractor had appealed from the government's assertion of a right of set off. Though there was no "final decision" labeled as such and no notice of appeal rights, the court held that the contracting officer had effectively issued a final decision and granted a government claim in the amount of the set off. *See also KAL M.E.I. Mfg. & Trade, Ltd.*, ASBCA No. 44367 *et al.*, 94-1 BCA ¶ 26,582 at 132,257 (citing *Placeway*, 920 F.2d at 902 for the proposition that the government's withholding constituted "a final decision on a government claim"). More importantly, the failure to include appeal rights, will not render the otherwise valid final decision into an invalid decision. *Alenia N. Am., Inc.*, ASBCA No. 57935, 13 BCA ¶ 35,296. When this occurs, a contractor must demonstrate that it was actually prejudiced by the lack of notice in order to prevent the start of the appeal period. *Decker & Co.* 76 F.3d at 1580 ("A contractor in Decker's position must demonstrate that [incorrect appeal advice] actually prejudiced its ability to prosecute its timely appeal before the limitation period will be held not to have begun."); *Mansoor Int'l Dev. Servs.*, ASBCA No. 59466 *et al.*, 16-1 BCA ¶ 36,376 at 177,337.

The CDA provides that a contractor must take an appeal to this Board within 90 days of receipt of a final decision or within one year of receipt to the Court of Federal Claims. 41 U.S.C. § 7104.[22] These statutory appeal periods may not be waived. *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390 (Fed. Cir. 1982); *Structural Finishing, Inc. v. United States*, 14 Cl. Ct. 447, 450 (1988). Thus, the government argues that JAAAT must have filed its appeal of the government claims with the Board on or before March 13, 2017, or with the Court of Federal Claims on December 12, 2017 for its appeal to be timely. Instead, JAAAT made no attempt to appeal the contracting officer's Unilateral Modification No. 07 for the reduction in contract price. Instead, on March 24, 2017, eleven days after the presumptive deadline to the Board, JAAAT submitted an REA disputing the amount of the contract reduction. The contracting officer responded on June 6, 2017, finding the REA to have no merit (SOF ¶ 37). It was not until approximately fifteen months later that JAAAT filed its notice of appeal to the Board based upon what it classified as a deemed denial to its "Punch List REA" submitted March 24, 2017.

We know that once the contracting officer's decision becomes final (i.e., once

---

[22] JAAAT could have appealed to the United States Court of Federal Claims within one year of the final decision. 41 U.S.C. § 7104(b)(3). However, that deadline had also passed on December 12, 2017.

the appeal period has passed), the contractor cannot challenge the merits of that decision judicially. 41 U.S.C. § 7103(g); *see Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 (Fed. Cir. 1990); *L.A. Constr., Inc.*, ASBCA Nos. 3338, 3372, 95- 1 BCA ¶ 27,291 (holding that the contractor's failure to appeal the final decision in a timely manner deprived the Board of jurisdiction, even though both parties testified on the merits during the hearing). Similarly, the submission of a claim after the final decision will not circumvent the statutory appeal timing requirements. *See Military Aircraft Parts*, ASBCA No. 60139, 17-1 BCA ¶ 36,667 (contractor's claim relating to the contract was in reality a challenge to the earlier propriety of the default termination and the contractor did not timely appeal the default within the CDA's 90-day appeal period); *Midland Maint., Inc.*, ASBCA No. 44563, 93-2 BCA ¶ 25,618 at 127,520 ("A request for the contracting officer to reconsider a decision does not extend the 90-day period in which to appeal to a board of contract appeals. It is the contracting officer's agreement to reconsider the merits of a previously issued decision that serves to extend the 90-day period for an appellant to appeal.") (citing *Cosmopolitan Mfg. Co. v. United States*, 156 Ct. Cl. 142 (1962)). *Cf. Royal Int'l Builders Co..*, ASBCA No. 42637, 92-1 BCA ¶ 24,684 (agreement by contracting officer to meet with contractor in response to request for reconsideration of decision signaled a willingness to reconsider))

To the contrary, where there is a failure to properly advise the contractor of its appeal rights that failing may prevent the "appeal clock" from running. *See Alenia N. Am., Inc.*, 13 BCA ¶ 35,296 at 173,271 (citing *Placeway Constr. Corp.*, 920 F.2d at 907). Where a contracting officer's notice of appeal rights is deficient, the contractor must demonstrate that, but for its detrimental reliance upon the faulty advice, its appeal would have been timely. *Decker & Co.*, 76 F.3d at 1580. It is the contractor's burden to demonstrate that the defective notice "prejudiced its ability to prosecute its timely appeal before the limitation period will be held not to have begun." *Id.*; *see Mansoor Int'l Dev. Servs.*, ASBCA No. 58423, 14-1 BCA ¶ 35,742.

JAAAT states that from the time it received the email from the contracting officer forwarding Modification No. 07, it was understood to mean that JAAAT had the option of resolving its dispute over the value of the punch list items by submitting an REA to the contracting officer. JAAAT supports its position by way of affidavit and explains that it never understood Modification No. 07 to be a final decision that required an appeal to the Board within 90 days. Instead, JAAAT considered the contracting officer's June 6, 2017 communication to be "part of the ongoing REA process," not a conclusion of the REA process. The fact is that there was no indication by the contracting officer that any of the communication related to the punch list items represented a final decision. Instead, JAAAT viewed the negotiations as continuing through August or September 2018. (App. br. dtd. June 30, 2020, ex. A, Declaration of Rickey Barnhill at 1-2) It is apparent from JAAAT's actions, as we draw from its affidavit, that the absence of appeal rights on this government claim was detrimental to

its understanding of the process that needed to be followed if it wanted to challenge the contracting officer's actions under the unilateral modification. We look also to the exchanges that occurred between the parties from the date that the unilateral modification was provided, including the exchanges that occurred on December 13, 2016 where a request was made for the list of final items deducted by the modification, the contracting officer providing that list, to further challenges to the amount, and then the contracting officer advising that if JAAAT had further "disagreements with the unilateral and the negotiations attempted on 12/8/16, there are processes outlined in your contract and the FAR for you to follow." We find that they all support JAAAT's understanding that it was taking the appropriate path. (SOF ¶¶ 30-36) Our review of these same facts leads us to the conclusion that the government was also confused about that effect of the action taken. The government reminds us that the failure to include appeals rights in a unilateral modification deducting $257,896 after invoking the inspection clause, was not an oversight, it was intentional (gov't br. dtd. June 30, 2020 at 5-6). The fact that the government did not understand its action to be a government claim only adds to the confusion and ultimate prejudice to JAAAT. While we recognize that it was not the government's intention, the failure to advise JAAAT of its appeal rights, along with the exchanges between the parties, may have reasonably led JAAAT to believe that the process they were following was compliant. In its affidavit, JAAAT states they pursued the dispute as if this was an REA and did not know that the appeal time clock was ticking. Had they been advised properly "JAAAT would have been able to file an appeal to ABSCA within 90 days. We were unaware of any deadline under the circumstances." (App. br. dtd. June 30, 2020, ex. A, Declaration of Rickey Barnhill at 3)

The government's failure to clearly identify the modification as a final decision, the absence of appeal rights, and the government's responses immediately after the issuance of the modification, fueled JAAAT's misunderstanding and prejudiced its ability to prosecute its timely appeal of this government claim. *CB of Bozeman, Inc., DBA Maintenance Patrol*, ASBCA No. 58533, 13 BCA ¶ 35,452. The Board has "the authority to rule on the validity of a contracting officer's decision as part of the jurisdictional inquiry under [41 U.S.C.] § 7104(b)(3)". *Uniglobe Gen. Trading,* 115 Fed. Cl. at 513 (quoting *Renda Marine Inc. vs United States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (a court "may declare a contracting officer's final decision invalid – for whatever reason")). As part of that jurisdictional inquiry we find that the defects contained in Unilateral Modification No. 07 having caused prejudice to JAAAT, prevented the appeals clock from running and the limitation period of 41 U.S.C. ¶ 7104 does not apply. *Decker & Co.*, 76 F.3d at 1580.

We replicate here what this Board held in *The Boeing Company,* 89-3 BCA ¶ 21,992, finding that Boeing could have appealed directly from the "unilateral option exercise" modification, so they "disregard the necessary exchange of paper engendered by Boeing that requested a contracting officer's final decision, and held

that "Boeing's . . . notice of appeal was properly taken from the contracting officer's decision reflected in unilateral modification P00154." *Id.* at 110,597.  As with our decision in Boeing, JAAAT's filing of the REA, and the contracting officer's decision on that REA are disregarded as unnecessary to establish that its September 2018 Notice of Appeal of the government claim was properly taken from the contracting officer's decision reflected in Unilateral Modification No. 07.[23]

Our determination that JAAAT properly appealed the government claim by the contracting officer, eliminates the need to determine whether JAAAT's subsequent "request for equitable adjustment" to the contracting officer is a proper claim under the CDA.  Since there is no requirement for a certification of a government claim, this eliminates the need to address the government's argument that we lack jurisdiction based upon its failure to submit a certified claim to a contracting officer prior to filing its notice of appeal.  (Gov't br. dtd. June 30, 2020 at 4-7)  Neither party is required to certify a government claim. 41 U.S.C. § 7103(b).  *See Placeway Constr. Corp.*, 920 F.2d at 906.  A contractor, however, must certify its request for interest on monies deducted or withheld by the government.  *General Motors Corp.*, ASBCA No. 35634, 92-3 BCA ¶ 25,149.

We find that Modification No. 07 is a government claim and that JAAAT carried its burden to show that the lack of appeal rights in Modification No. 07, and the circumstances surrounding the punch list items prejudiced its ability to prosecute a timely appeal to the Board.  We find we have jurisdiction over ASBCA No. 61799.

*4. ASBCA NOS. 61793 (Relocate Projector Screen), 61794 (Weather Delays), 61796 (Communication Grounding), 61797 (Nec Switch Delay)*

We address the jurisdictional arguments raised by the government in ASBCA Nos. 61794, 61796, and 61797 and presumably what would be the same argument for 61793.[24]  Each of the requests for equitable adjustment are under $100,000 (SOF

---

[23] The Board declines to adopt the government's argument that JAAAT had 30 days to assert an adjustment under FAR 52.243-4(e) following receipt of a written change order (Modification No. 07) (SOF ¶ 40).  The standard Changes clauses each state that "the Contractor must assert its right to an adjustment . . . within 30 days after receipt of a written [change] order."  The Board does not strictly construe this requirement unless the untimely notice is prejudicial to the government.  *E.W. Jerdon, Inc.*, ASBCA Nos. 32957, 34723, 88-2 BCA ¶ 20,729; *see also Watson, Rice & Co.*, HUD BCA No. 89-4468-C6, 90-1 BCA ¶ 22,499; Sosa y *Barbera Constrs., S.A.*, ENG BCA No. PCC-57, 89-2 BCA ¶ 21,754.  We find no prejudice here.

[24] The government argued that JAAAT failed to provide any document in the form of a request for equitable adjustment or claim to the contracting officer for the

57

¶¶ 13-14, 19, 21).  The government argues that JAAAT failed to convert each of the requests for equitable adjustment into a claim before appealing to the Board, and, thus, we lack jurisdiction to entertain these appeals (gov't mot. at 9, 14-16).  The Board must determine, from limited documentation in each appeal, whether each "Request for Equitable Adjustment" was converted to a claim.  If not, the impact to JAAAT is considerable.

The linchpin of the Board's jurisdiction over a contractor claim is the contractor's submission of a proper claim to the contracting officer for a decision. *Puget Sound Envtl. Corp.*, ASBCA Nos. 58827, 58828, 14-1 BCA ¶ 35,585 at 174,371; *MACH II*, ASBCA No. 56630, 10-1 BCA ¶ 34,357 at 169,673.  If a claim exceeds $100,000 it must be certified in accordance with 41 U.S.C. § 7103(b).  We determine whether a contractor's submission is a CDA claim on a case-by-case basis, applying a common sense analysis.  *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Precision Standard, Inc.*, ASBCA No. 55865, 11-1 BCA ¶ 34,669 at 170,787.  We will examine the totality of the correspondence between the parties in determining the sufficiency of a claim.  *Lael Al Sahab & Co.*, ASBCA Nos. 58344, 59009, 15-1 BCA ¶ 35,809 at 175,129; *Vibration & Sound Solutions Ltd.*, ASBCA No. 56240, 09-2 BCA ¶ 34,257 at 169,270.

It has been said that "there is no bright-line distinction between an REA and a CDA claim."  *Air Servs., Inc.*, 15-1 BCA ¶ 36,146.  As the line between an REA and a CDA claim has been elucidated over the years, it understandably becomes more challenging to distinguish between the two.  A claim need not be submitted in any particular format or use any particular wording; the contractor need only submit "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  *Hejran Hejrat Co. Ltd. v. United States Army Corps of Engineers*, 930 F.3d 1354 (Fed. Cir. 2019) citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987); *Air Servs., Inc.*, 15-1 BCA ¶ 36,146.  Notably, a request for a contracting officer's decision "can be implied from the context of the submission."  *Heyl & Patterson, Inc. v. O'Keefe*, 986 F.2d 480, 483 (Fed. Cir. 1993).  In *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576, 1579 (Fed. Cir. 1992), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995), the court held that a claim need not expressly request a contracting officer's decision, "as long as what the contractor desires by its

appeal of ASBCA 61793.  However, in its reply JAAAT provided a copy of a document dated November 8, 2016, a "request for equitable adjustment," substantiating its submission to the CO (SOF ¶ 13).  As this document is similar to the "request for equitable adjustment" documents in form and function in ASBCA Nos. 61794, 61796, and 61797, the Board presumes that the government would also assert that this document is not a claim and that the Board lacks jurisdiction over ASBCA No. 61793.

submissions is a final decision" and a "common sense" approach should be taken in analyzing a document to determine if it is a claim. An REA can be converted into a claim by the addition of a CDA certification, requesting a contracting officer's final decision, or stating they seek rights under the CDA or Disputes Clause, or "disputing" an ongoing issue that has already gone through the REA process. *See Andrews Contracting Servs., LLC*, ASBCA No. 60808, 17-1 BCA ¶ 36,766; *Air Servs., Inc.*, 15- 1 BCA ¶ 36,146; *Creative Times Dayschool, Inc.*, ASBCA Nos. 59507, 59779, 16- 1 BCA ¶ 36,535; *ECC Centcom Constructors*, LLC, ASBCA No. 60647, 18- 1 BCA ¶ 37,133; *Duncan Aviation, Inc.*, ASBCA No. 58733, 14-1 BCA ¶ 35,471; *Engineered Demolition, Inc.*, ASBCA No. 54924, 06-1 BCA ¶ 33,125; *Madison Lawrence, Inc.*, ASBCA No. 56551, 09-2 BCA ¶ 34,235. The Court of Claims discussed the importance and purpose of the certification requirement in *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 673 F.2d 352, 354 (1982):

> An important objective of Congress was to "discourag[e] the
> submission of unwarranted contractor claims." S.Rep. No.
> 1118, 95th Cong., 2d Sess. 5, *reprinted in* [1978] U.S.C.C.A.N.
> 5235, 5239. One method of accomplishing this purpose was
> provided in section 5 of the Act, 41 U.S.C. § 604, which makes
> a contractor liable for the amount of any portion of its claim that
> it is unable to support because of misrepresentation or fraud.
> Another was the certification requirement.
> This court in *Fidelity Construction Co. v. United States,*
> 700 F.2d 1379, 1384 (Fed.Cir.), *cert. denied,* 464 U.S. 826,
> 104 S.Ct. 97, 78 L.Ed.2d 103 (1983), stated that the certification
> requirement was one of the "most significant provisions of the
> CDA" and that Congress viewed the certification requirement
> "as a mechanism to discourage the submission of unwarranted
> claims and encourage prompt settlements."

*Transamerica Ins. Corp.*, 973 F.2d at 1579, overruled on other grounds by *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). The certification of an REA under FAR 33.207 is evidence that an REA is intended as a claim. *See Southern Automotive Wholesalers*, ASBCA No. 53671, 03-1 BCA ¶ 32,158 at 158,998. On the other hand, the certification of an REA under DFARS 252.243-7002 is evidence that an REA is not intended as a claim. *See Certified Constr. Co. of Kentucky, LLC*, ASBCA No. 58782, 14-1 BCA ¶ 35,662 at 174,572.

We are faced with making a determination whether the REAs submitted by JAAAT seeking costs associated with the relocation of the project screen, or weather delays, or delays associated with the NEC switch, and the problems with the communication system were actually CDA claims. While we acknowledge that the distinctions between an REA submitted under DFARS 252.243-7002, and a claim submission under the CDA have at times been muddied, we believe a discussion of the

historic differences between an REA and a CDA claim are helpful here.  The U.S. government is the largest customer in the world.  It buys many types of products and services — in both large and small quantities, including janitorial services to complex space vehicles.  In short, the government buys just about every category of commodity and service available.  At the center of this are the contractors who support the U.S. government's purchasing requirements.  The parties recognize that issues may arise during performance requiring adjustments to the contract or the delivery schedule.  Those adjustments are typically made through a Request for Equitable Adjustment (REA) as set forth in the FAR and DFARS.  DFARS 252.243-7002 (requests for equitable adjustment); FAR 52.243-4(d)-(e); FAR Subpart 43.2 –Change Orders; DFARS 252.243-7002.  Although the FAR and DFARS do not define a request for equitable adjustment, the term is used throughout the regulation, and the courts have long recognized the importance of an equitable adjustment.  Generally, an equitable adjustment seeks to adjust the contract price or the delivery schedule based upon a change to the contract.  The requests may occur when there are increased direct costs of added work, work is deleted, or not performed, and there are government-caused delays or other changes to the contract.  "Generally, an equitable adjustment is justified by a change contrary to, or materially different from, the nature of the work contemplated by the parties to the contract." *Ralph L. Jones Co. v. United States*, 33 Fed. Cl. 327, 334 (1995) (citing *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 677 (Fed. Cir. 1994)).  The purpose of an equitable adjustment is to keep a contractor whole through reimbursement of increased costs and payment of a fair profit. *See United States v. Callahan Walker Const. Co.*, 317 U.S. 56, 61 (1942); *Bruce Constr. Corp. v. United States*, 163 Ct. Cl. 97, 98 (1963).

An REA allows contractors to submit to the contracting officer a request for compensation that goes beyond the contract documents.  REAs are commonly employed in all types of government contracts as part of the administration of the contract.  For example, in construction contracts, unexpected site conditions, adverse weather delays, and changes in scope may arise during the course of the contract.  These additional tasks completed by the contractor may result in expenses incurred that were not contemplated.  Understandably, the contractor wants to be compensated for these additional expenses.  The request for equitable adjustment allows just that.  At the lowest level, the contracting officer can review the request, make a determination of entitlement and, if appropriate, compensate the contractor.  It was the intention of Congress to have disputes resolved at the lowest possible level. *See Minesen Co. v. McHugh*, 671 F.3d 1332, 1338 (Fed. Cir. 2012) (citing 124 Cong. Rec. 31,645 (1978)); *Pathman Constr. Co. v. United States,* 817 F.2d 1573, 1578 (Fed.Cir.1987) ("A major purpose of the [Contract] Disputes Act was to induce resolution of contract disputes with the government by negotiation rather than litigation." (internal quotation marks omitted)).

Submitting an REA is a routine part of government contracts.  This administrative process is contemplated by the contract though the "Changes" clause (FAR 52.243-4), the "Changes and Changed Conditions" clause (FAR 52.243-5), and the "Differing Site Conditions" clause (FAR 52.236-2).  The determination of an equitable adjustment under these clauses is governed by DFARS 252.243-7002 (requests for equitable adjustment).  If a contractor cannot successfully make itself "whole" through an REA and is dissatisfied with the REA negotiation and lack of resolution, the contractor may then convert its REA to a CDA claim for a formal decision by the contracting officer and possible litigation.  What remains clear throughout is that it is a contractor's choice whether to submit its demand(s) as an REA or a CDA claim.  *See* 41 U.S.C. § 7103(a)("[e]ach claim by a contractor against the Federal Government relating to a contract shall be *submitted* to the contracting officer for a decision") (emphasis added));  *Creative Times Dayschool, Inc.*, ASBCA No. 59507, 16-1 BCA ¶ 36,535 (the Board lacked jurisdiction after the contractor withdrew the FAR 33.207 certification of its previously submitted claim, and replaced it with the DFARS 252.243-7002 certification, indicating an intent to no longer treat its submission as a claim.); *Zafer Taahhut Insaat ve Ticaret, A.S. v. United States,* 129 Fed. Cl. 454, 456–57 (2016) (an REA that merely asked to review and evaluate the matter at earliest convenience, was not enough to put the contracting officer on notice that contractor was requesting a final decision on its claim.  While a claim need not take any particular form, the REA did not request a final decision, and thus the court did not have subject matter jurisdiction); *Agility Def. & Gov't Servs., Inc. v. United States*, 103 Fed. Cl. 366, 368-69 (2012) (the contractor's submission was not viewed as a defective CDA claim, but as a properly-certified REA.   The contractor even states in its submission that it is certifying its REA "[p]ursuant to DFAR 252.243–7002").

Equitable adjustments were never designed to be adversarial proceedings.  The intricacies of the equitable adjustment process as set forth in the DFARS spells out when and how the proposal should be submitted, the types of costs and breakdown of direct costs, markups and time, and how presented.  DFARS 252.243-7002 (requests for equitable adjustment).  Unlike a CDA claim, it also provides for the recovery of proposal preparation costs.  *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995), *overruled in part on other grounds, Reflectone, Inc. v. Dalton,* 60 F. 3d 1572 (Fed. Cir. 1995).  All these factors lead to the realization that the equitable adjustment process is part of the administration of contracts.

REAs can be resolved at the lowest levels which allows prompt and amicable resolution of contractor issues that does not involve the Board or the courts.  REAs can be resolved by negotiation and then formalized in a bilateral modification without ever reaching the claims stage.  The request for equitable adjustment allows the parties to quickly address and move past any issues which may arise during contract performance and to help maintain a healthy working relationship.  If, however, the contracting officer and the contractor are unable to reach agreement, the contracting

61

officer may then decide the equitable adjustment unilaterally. DFARS 252.243-7002 (Requests for equitable adjustment).

Unfortunately, there are also situations where even with the best efforts of the parties the differences between the contractor and the government are unresolved, and the dispute cannot be settled at the lowest level. Enter the "claim." Contract Dispute Act (CDA) claims, on the other hand, often turn into contentious, expensive, and time-consuming legal battles. The formality and adversarial nature of the claim are noted in the FAR defining a claim as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." *See* FAR 2.101. The CDA was enacted by Congress to implement a comprehensive statutory scheme for the resolution of government contract claims. The CDA provides the framework for asserting and handling claims by either the government or a contractor. Once a contractor submits a claim to a contracting officer meeting all of the criteria as set forth in a CDA claim, the contracting officer must issue a final decision on that claim, typically within 60 days. Once a COFD is issued, the contractor may then appeal within 90 days to the Armed Services Board of Contract Appeals (ASBCA) or within one year to the U.S. Court of Federal Claims (COFC). 41 U.S.C. § 7104. If a final decision is not issued, the contractor may appeal based upon a deemed denial. 41 U.S.C. § 7103(f)(5); *Vox Optima, LLC*, ASBCA No. 62313, 20-1 BCA ¶ 37,625; *Suh'dutsing Techs., LLC*, ASBCA No. 58760, 14-1 BCA ¶ 35,596.

While we recognize that REAs and claims often ask for the same thing – money and time, they are distinctly different with each having its unique qualities and consequences including purpose, timing, certification, allowable administrative costs, collection of interest, recovery of attorneys' fees, and avenues of appeal. *See, e.g., CDA,* 41 U.S.C. §§ 7101-7109; FAR 52.243-1 - 52.243-3; FAR 43.103; FAR 43.204; FAR 31.205-47(f)(1); CERTIFICATION: 41 U.S.C. § 7103(b); *Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed. Cir. 1984); DFARS 243.204-71(c); DFARS 252.243-7002, 7002(b); 41 U.S.C. § 134; TIMING: CDA, 41 U.S.C. §§ 7101-7109; FINAL DECISION: 41 U.S.C. § 7103(f); REA PREPARATION ADMINISTRATIVE COSTS ARE ALLOWABLE: FAR 31.205-33; *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995).

*a. How a REA is properly converted to a claim?*

In reaching our determination in ASBCA Nos. 61793, 61794, 61796, and 61797, whether JAAAT properly converted its REAs into claims, the Federal Circuit has provided much guidance. In *Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed. Cir. 1995), an REA was submitted to the contracting officer demanding $266,840 for costs

related to government-caused delays. Reflectone's President and CEO certified the REA and requested a decision from the contracting officer. On March 19, 1991, the contracting officer rendered a final decision and advised Reflectone of its right to appeal. Reflectone appealed the contracting officer's final decision to the Board, which held that the REA was not a "claim" within the meaning of the CDA and, therefore, it did not have jurisdiction over the appeal. The Board relied on language from *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 878 (Fed.Cir.1991), stating "'[a] contractor and the government contracting agency must already be in dispute over the amount requested.'" *Reflectone,* 60 F.3d at 1574 (quoting *Dawco*). The Court of Appeals reversed the Board's holding stating that Reflectone's REA "clearly" satisfies all of the elements of a claim: "Reflectone, a contracting party, submitted a written document to the [contracting officer] demanding the payment of $266,840 which it asserted the government owed for delaying performance of the contract by furnishing defective goods. The submission was certified and requested a CO decision." *Id.* at 1578. So, while an ideal example of a REA being converted to a claim is set forth in ASBCA No. 61792, we are reminded that *Reflectone* clearly provides that the language of a "request for equitable adjustment" is not determinative and we must weigh the entirety of the document or documents.

A year later the Federal Circuit decided *James M. Ellett Const. Co.,* 93 F.3d 1537. The Forest Service terminated Ellett's contract for convenience. By letter dated November 17, 1988, Ellett submitted a letter to the contracting officer for the stated purpose "to file [a] formal notice of claim pursuant to the Contract Disputes Act of 1978 (CDA)," to recover $545,157.19. *See Ellett*, 93 F.3d at 1540. The contracting officer responded that Ellett needed to submit a settlement proposal on Standard Form 1436, which Ellett submitted on March 3, 1989. The parties entered into settlement negotiations which continued into January 1990. Finally, in a January 12, 1990, letter to the contracting officer, Ellett observed that it had been "nearly 14 months" since the November 17, 1988, CDA "claim" and one year since the settlement proposal. Ellett stated "that unless the 'outstanding claim' was resolved satisfactorily within thirty days, it would file suit in the United States Court of Federal Claims." The agency responded with a settlement offer that was rejected on March 31, 1990. The agency was told that a suit would be filed unless a settlement of $250,000 was reached within two weeks. *Id.* at 1540–41. On July 13, 1990, Ellett filed a complaint in the Court of Federal Claims, and the government moved to dismiss for lack of subject matter jurisdiction arguing that the November 17, 1988, letter did not qualify as a valid claim under the CDA. The COFC dismissed stating "that the November 17, 1988, letter did not request a final determination by the contracting officer, but was only an invitation to enter negotiations. *Id.* at 1541. The Federal Circuit disagreed and reversed the COFC decision finding that the parties agreed that they would try to reach a mutually agreeable settlement. However, if they were unable to do so, the contracting officer would issue a final decision consistent with the FAR's requirements. The Federal Circuit found that "After ten months of fruitless negotiations, *Ellett* explicitly

requested that the contracting officer settle its claim. This demand is tantamount to an express request for a contracting officer's decision." *Id.* at 1544. Finding that *Ellett's* claim "read as a whole, was submitted for the purposes of obtaining a final decision," *id.*, the Federal Circuit reminds us that the "law does not require an explicit demand or request for a contracting officer's decision, 'as long as what the contractor desires by the submissions is a final decision, that prong of the CDA claim test is met.'" *Id.* (quoting *Transamerica*, 973 F.2d at 1576).

Nevertheless, the facts and guidance provided in *Ellett* are distinctly different from the facts in these appeals. In each instance, JAAAT treated its submissions as an REA; never implicitly or explicitly seeking to convert those submissions into claims by asking for a final decision. JAAATs actions under the "stormwater" REA reveal its clear understanding of how to convert its REAs into proper claims. So, while an ideal example of a REA being converted to a claim is set forth in ASBCA No. 61792, the correspondence in ASBCA Nos. 61793, 61794, 61796, 61797, being read as broadly as practicable do not demonstrate that JAAAT wanted a contracting officer's decision.

Further guidance can be found in *M. Maropakis Carpentry, Inc. v. United States,* 609 F.3d 1393 (Fed. Cir. 2010). On August 20, 2001, Maropakis sent a letter requesting a contract extension of 447 days. On August 28, 2001, the contracting officer responded that Maropakis did not submit sufficient justification to warrant the time extension, rejected the request, invited Maropakis to submit additional information in support of its request, and stated that "this letter is not a Final Decision of the Contracting Officer." *Maropakis*, 609 F.3d at 1325-26. On June 28, 2002, the contracting officer sent another letter to Maropakis stating it has not received a response to the Navy's August 28, 2001 letter and stated that Maropakis would owe liquidated damages for the 467 days of delay. Maropakis responded in a letter on July 22, 2002 reiterating its earlier request for an extension but mentioning specifically only the 107–day extension for the removal of lead contaminated windows. This letter referred to multiple delays but did not specify a total number of days of extension requested. The letter then stated, "we will dispute ... the liquidated damages amount of $303,550.00 and will indicate that M. Maropakis was not responsible for the delays." *Maropakis*, 609 F.3d at 1326. On December 20, 2002 the Navy issued a final decision which reiterated the government's demand for liquidated damages (*id.*).

Maropakis filed a complaint in the COFC "alleging (1) breach of contract due to government delay and seeking resulting time extensions, and (2) breach of contract due to the government's assessment of liquidated damages and seeking remission" of the full amount of liquidated damages withheld. *Id.* The COFC granted the government's motion to dismiss finding that Maropakis had not submitted a "claim" as required under the CDA. *Id.* Maropakis appealed, arguing that its July 22, 2002, letter was sufficient to constitute a claim under the CDA. *Id.* at 1327. The Federal Circuit found the July 22nd letter was not a CDA claim, stating:

64

The letter did not state the total number of days requested in extension and did not request a final decision. In fact, the letter appears to *promise a forthcoming written claim*, which never materialized. A claim cannot be based merely on intent to assert a claim without any communication by the contractor of a desire for a contracting officer decision.

*Id.* at 1328 (Emphasis added).

An explicit request for a final decision is not required, "'as long as what the contractor desires by its submissions is a final decision. . . .'" *Id.* at 1327-28 (quoting *Ellett*, 93 F.3d at 1543). However, the failure to request a final decision remains a jurisdictional impairment for a claim under the CDA (*Maropakis*, 609 F.3d at 1329).

Most recently, the Federal Circuit issued its decision in *Hejran Hejrat Co. Ltd,* 930 F.3d at 1354. The underlying facts reveal that after the USACE's July 2012 decision not to exercise an option, Hejran informed the government that it was due additional payments. *Hejran Hejrat Co. LTD*, ASBCA No. 61234, 18-1 BCA ¶ 37,039. Hejran submitted invoices for the additional compensation to which the contracting officer responded, "This letter is in response to your three (3) invoices . . . . Although you used the word 'claim' and 'compensation' in your email and invoices, I have treated this as a request for equitable adjustment (REA) because it is not clear that you were seeking a contracting officer's final decision." *Hejran Hejrat,* 18-1 BCA ¶ 37,039 at 180,321. The contracting officer asked Hejran whether it intended to submit a claim or seek a contracting officer's final decision. Hejran responded in a January 31, 2014, email that:

We therefore ask you to treat this email together with the supporting documents as a[n] REA. In the event that you decide to treat this email as [an] REA and still reject our request for the adjustment of payments, we would then proceed with issuing a certified claim. . . . We reiterate that this email together with the supporting documents be treated as a[n] REA.

*Id*. at 180,321-22. The correspondence continued including the submission by Hejran of revised invoices. None of the communication requested a contracting officer's final decision or provided a certification. *Id*. at 180,322. However, on March 5, 2015, Hejran submitted to the contracting officer another request for additional payment, providing similar statements of fact for each, and provided a "Sworn Statement in reference to (REA)." *Id.* The sworn statement included a signed affidavit that the following statement is true: "The clauses and points reflected in REA (Request for

65

Equitable Adjustment) in reference to contract . . . to the best of my knowledge are true." *Id.*.

In May 2015, not having received a response, Hejran again contacted the contracting officer. The contracting officer "responded by email telling [Hejran] 'We should be providing you the Contracting Officer's final decision by the end of this week.'" *Id*. Immediately following that message, the contracting officer sent an email that contained a PDF document titled "Response to REA" to Hejran. *Id*. Hejran appealed. The Board held it did not have subject matter jurisdiction as a valid claim under the CDA was not submitted to the contracting officer. *Id.* at 180,323.

The Federal Circuit reversed the Board and found that Hejran did request a final decision. The Federal Circuit determined that the March 5 submission provided specific amounts of compensation for each of the alleged grounds, included detailed factual bases for its alleged losses, and claimed a sum certain based on the losses. More importantly, the Federal Circuit determined that last submission contained an attempted certification. *Hejran Hejrat*, 930 F.3d at 1357-58. The court relied on two facts pointing to a valid claim under the CDA: (i) "The March 5 submission was sworn unlike earlier submissions, and thus had a formality lacking in the earlier submissions. '[C]ertification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim [and is] designed to discourage the submission of unwarranted contractor claims and to encourage settlement.'" *Id.* at 1358 (quoting *Skelly & Loy v. United States*, 685 F.2d 414, 418 n.11 (Ct. Cl. 1982)). (ii) "It is also important that the contracting officer treated the denial of [Hejran's] REA as a 'final determination' in the matter." *Hejran*, 930 F.3d at 1358. The totality of these facts demonstrated to the Federal Circuit that while the submission may have started as an REA, it was converted to a claim when Hejran attempted certification through a sworn affidavit. Equally important is the fact that this action was interpreted by the contracting officer as a request for a final decision on its claim and he responded by stating that a final decision was forthcoming. The court concluded that "[t]his [March 5] submission bears all of the hallmarks of a request for a final decision on a claim . . . ." and that "[t]he contracting officer could not retroactively turn a qualifying claim document into something else." *Id.*

The Federal Circuit in *Hejran* did not diminish the significance of the REA, but instead recognized its import to the entire regulatory and statutory scheme and the necessity that they work in concert. *Hejran* may have lowered the threshold necessary to convert an REA to a CDA claim, but a request for a final decision remains a jurisdictional prerequisite to any subsequent action before the Board or the COFC. The purpose of this requirement is "'to create opportunities for informal dispute resolution at the contracting officer level and to provide contractors with clear notice as to the government's position regarding contract claims.'" *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (quoting *Applied Cos. v. United States*,

144 F.3d 1470, 1478 (Fed. Cir. 1998)). The issuance of the final decision is controlled by the contractor's claim. While a claim need not be submitted in any particular format or use any particular wording; the contractor need only submit "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). The Federal Circuit recognizing that a request for a final decision may be implied from the context of the submission. *See Maropakis*, 609 F.3d at 1327-28; *Ellett*, 93 F.3d at 1543; *Hejran Hejrat*, 930 F.3d at 1357-58; *Rex Systems, Inc. v. Cohen*, 224 F.3d 1367, 1372 (Fed. Cir. 2000); *Transamerica Insurance Corp.*, 973 F.2d at 1578-79.

In reaching a decision on whether JAAAT requested a final decision, directly or indirectly, we examine the course of negotiations between the parties, examining the totality of the correspondence in determining the sufficiency of a claim. *See generally*, *Ellett,* 93 F.3d 1537; *Hejran Hejrat,* 930 F.3d 1354*; D.L. Braughler Co. v. West,* 127 F.3d 1476 (Fed. Cir. 1997). *See SAB Const., Inc. v. United States*, 66 Fed. Cl. 77, 91 (2005), *aff'd*, 206 F. App'x 992 (Fed. Cir. 2006); *Johnson v. Advanced Eng'g & Planning Corp.*, 292 F. Supp. 2d 846 (E.D. Va. 2003); *Lael Al Sahab & Co.*, 15- 1 BCA ¶ 35,809 at 175,129; *Vibration & Sound Solutions Ltd.*, 09-2 BCA ¶ 34,257 at 169,270. As we examine the facts in Appeal Nos. 61793, 61794, 61796, and 61797, we simply cannot find, based upon the totality of the correspondence that JAAAT either directly or by implication, requested a final decision. The details of each REA and our decision are addressed below.

### b. *ASBCA NOS. 61794 (WEATHER DELAYS), 61796 (COMMUNICATION GROUNDING), 61797 (NEC SWITCH DELAY)*

The government argues that these three appeals "should be dismissed because JAAAT failed to request a final decision by the contracting officer" (gov't mot. at 15). The government asserts that JAAAT's request for ASBCA No. 61794 asks about "settlement for adverse weather delays," which "appears to be in the nature of settlement discussions as opposed to a claim" (gov't mot. at 15). Similarly, for ASBCA Nos. 61796 and 61797, the government states that the submissions were "styled as Requests for Equitable Adjustment and appeared to be for the purpose of settlement discussions" (*id.* at 16). The government argues that the parties never treated the "Request for Equitable Adjustment" in ASBCA Nos. 61794, 61796, and 61797 as claims (*id.*). JAAAT argues that "[e]ach of the corresponding REAs were less than $100,000 and again were verbally summarily rejected by the CO at the 10 August 2017 settlement meeting. . ." and JAAAT appealed to the Board after the contracting officer failed to issue a formal decision within a reasonable time (app reply at 7). JAAAT does not elaborate on the "August 2017 settlement meeting," other than acknowledging a settlement meeting occurred (app. resp. at 6-7).

Our discussion of this argument is generous as it consists of a single conclusory sentence that contains no citation to the record or case law for its proposition. JAAAT does not describe why this August 10, 2017, meeting converted each of its REAs to claims. The Board rejects the notion that the contracting officer entertaining and/or discussing the contractor's request for equitable adjustment automatically converts its REA to a claim. Where possible, a contracting officer should attempt to resolve disputes by mutual agreement. *See* FAR 33.204 ("The Government's policy is to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level. Reasonable efforts should be made to resolve controversies prior to the submission of a claim."); FAR 33.210 ("[C]ontracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the Disputes statute."); *Pathman Constr. Co.,* 817 F.2d at 1578 (stating that a "major purpose" of the CDA is to "induce resolution of contract disputes with the government by negotiation rather than litigation" (citation omitted)).

Not only would JAAAT's position circumvent the procedures outlined in both the Disputes clause, 52.233-1 and the certification requirements of 41 U.S.C. § 7103(b), but it would thwart rather than aid the policy of negotiation. A theme coursing through each of the contracting officer's letters in response to JAAAT's REAs (SOFs ¶¶ 15, 20, 22, 24, 43) is that additional information is required to evaluate the equitable adjustment (ASBCA No. 61794: documents provided "do[] not indicate the critical path activity that was delayed more than 50 percent during your scheduled workday nor does it indicate which workdays you were delayed. . . no activity numbers were provided to verify your schedule. . . . If you have any additional documentation on the topics above, please submit to this office. . . ." (SOF ¶ 15; R4, tab 9b at 2587-88); 61796: "No backup information was provided to explain how the original design meets code" (SOF ¶ 20; R4, tab 11c at 2648); 61797: "Government review is not possible due to lack of critical information . . . . The REA provides no supporting information to demonstrate a schedule impact. Provide a time impact justification as required by specification section. . . ." (SOF ¶ 22; R4, tab 12b at 2667); 61798: "Provide the requested supporting documentation as soon as possible . . ." (SOF ¶ 24; R4, tab 13b at 2688); 61800: "The Government is unable to review due to a lack of critical information. . . . The REA provides no supporting information to demonstrate a schedule impact. . . . Please provide this missing documentation as soon as possible" (SOF ¶ 43; R4, tab 15b at 2779)).

We are guided by the Federal Circuit in determining whether these REAs were properly converted to a CDA claim prior to appealing to the ASBCA. Here, the record is devoid of any reference to a request for final decision from JAAAT. Instead, the documentation for each of these appeals leads to only one conclusion which is JAAAT's desire was to negotiate with the contracting officer as reflected in the REA process set forth in the DFARS 252.243-7002. Discussions were held between the

parties as envisioned by that process. It was incumbent upon JAAAT, as they did in ASBCA No. 61792, to convert the REA to a claim and request a final decision before filing its Notice of Appeal to the Board. While we do not dictate the content or eloquence of the appellant's request for a final decision it must still be made, whether provided directly or by implication. The fact that JAAAT labeled each submission as an equitable adjustment, and made no attempt to request a final decision by direct or circuitous routes, leads to a conclusion that it did not intend to convert the REA into a claim. Even after the contracting officer denied the REAs based upon the submissions presented, and requested additional information, JAAAT languished in converting its REAs into claims. (SOF ¶¶ 15, 20, 22) Unlike JAAAT's actions in ASBCA No. 61792, where the REA was denied by the contracting officer but later converted to a claim pursuant to CDA, 41 U.S.C. §7103(b)(1)(SOF ¶¶ 11-12), there was no such attempt here, direct or otherwise (SOF ¶¶ 14, 18-19, 21).

"The fact that appellant is a pro se. . . contractor, whose personnel are likely to be unfamiliar with government contract law . . . does not excuse the failure to comply with jurisdictional prerequisites. We have routinely required similarly situated appellants to comply with our jurisdictional prerequisites." *Elham Ahmadi Constr. Co.*, ASBCA No. 61031, 17-1 BCA ¶ 36,861; *see also Pamir Zameen Constr. and Logistic Co.*, ASBCA No. 60597, 17-1 BCA ¶ 36,683; *Golden Build Constr. Co.*, ASBCA No. 60652, 17-1 BCA ¶ 36,654; *Washington Star Constr. Co.*, ASBCA No. 60644, 16-1 BCA ¶ 36,556; *Genuine Constr. Co.*, ASBCA No. 60626, 16-1 BCA ¶ 36,553; *Lael Al Sahab & Co.*, ASBCA No. 58346, 13 BCA ¶ 35,394 at 173,663. But here, it is obvious that JAAAT is familiar with the distinctions between the request for equitable adjustment process and CDA claim process. Mr. Barnhill's declaration states that JAAAT had previous experience converting REAs to claims. Its actions in ASBCA No. 61792 demonstrate JAAAT's familiarity with the nuances associated with converting an REA to a CDA claim (SOF ¶¶ 8, 10-12). That knowledge is reflected in its July 7, 2015, correspondence where JAAAT makes a formal request for a COFD, and states that while amenable to further discussion and potential resolution "please accept this correspondence as JAAAT's formal request for a Contracting Officer's final decision" (SOF ¶ 11). Likewise, JAAAT understands that continuing discussions with the contracting officer can ultimately lead to the resolution of its REA:

> I and the company had prior experience with disputes concerning unilateral modifications by the government being successfully resolved through the REA process, and I and JAAAT expected that this would be the manner we would have to proceed in this case. . . .[W]e did not file this as a claim.
>
> . . . .

69

> We had the expectation that an REA would resolve the
> financial matters fairly once the practical issues were
> resolved.

(App. br. dtd. June 30, 2020, ex. A, Declaration of Rickey Barnhill at 1-2)

The choice to continue with those discussions or convert the REA to a claim by requesting a final decision is a choice that is in the hands of the contractor. Nonetheless, we cannot allow a contractor after the fact to attempt to change the basic nature of those facts, as JAAAT attempts to do here. The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits. *See* FED. R. CIV. P. 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 (1990) ("The object of this provision [Rule 56(c)(4)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290 (1968) for the proposition that "the plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint'").

A contractor's words and actions cannot proceed down the REA path to only later say that those same words and actions meant something else entirely. JAAAT has failed to demonstrate through its documentation that it even implied that they wanted a final decision. *See, e.g.*, *Andrews Contracting Services*, LLC, 17-1 BCA ¶ 36,766 (REA submittal was not a claim when it did not implicitly or explicitly request a contracting officer's final decision); *Creative Times Dayschool, Inc.*, 16- 1 BCA ¶ 36,535 (Contractor withdrew the REA's FAR 33.207 certification, and certified the REA under DFARS 252.243-7002, indicating its intent that the REA no longer be treated as a claim, thereby converting it to a non-claim REA); *Air Servs., Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146 at 176,426-27 (The Board reviewing the totality of the parties' correspondence and finding that the contractor's submission was indeed a CDA claim as the contractor sent a letter revising an earlier REA and indicated that it was seeking a final decision, and an expected timeline for which the contracting officer would issue the final decision. The contractor's submission of a DFARS certification was in response to the contracting officer's erroneous instruction. "[DFARS] certification provided by the contractor was one piece of evidence in determining whether a proper CDA claim had been submitted"); *Certified Constr. Co. of Kentucky, LLC*, ASBCA No. 58782, 14-1 BCA ¶ 35,662 (letter was not a claim but was in fact an REA when letter failed to implicitly request a contracting officer's

decision, a foundational requirement for any contractor claim); *Madison Lawrence, Inc.*, 09-2 BCA ¶ 34,235 (contractor explicitly stated that it was converting its REA into a claim and it submitted a proper CDA claim certification); *DTS Aviation Services, Inc.*, ASBCA No. 56352, 09-2 BCA ¶ 34,288 (contractor submitted a letter converting REA to a CDA claim); *Engineered Demolition, Inc.*, ASBCA No. 54924, 06-1 BCA ¶ 33,125 (Board was unable to conclude there was a proper claim before the contracting officer; as contractor indicated, its REA was not a CDA claim).

There is no indication in the record that the contracting officer treated JAAAT's submission as anything other than a request for equitable adjustment.[25] As demonstrated in many of the contracting officer's responses to the REAs, the contracting officer appeared to be operating under the guise of DFARS 252.243-7002 and cited JAAAT to missing support for its REA, and asking to "provide additional documentation on the topics" (SOF ¶ 15); no backup information was provided to explain how the original design meets code (SOF ¶ 20); "[p]rovide a time impact justification as required by specification section 01 32 01. 00 10 paragraph 3.7" (SOF ¶ 22). While not determinative, the contracting officer did not treat the request for equitable adjustments dated February 24, 2017 (ASBCA No. 61794, SOF ¶¶ 14-15) and February 28, 2017 (ASBCA Nos. 61796 and 61797, SOF ¶¶ 19, 21) as a claim and issue final decisions on the requests (SOF ¶¶ 15, 20, 22). The contracting officer's response to each of JAAAT's REA refers to the requests in the same language employed by JAAAT, "request for equitable adjustment" or "adverse weather delays" (SOF ¶¶ 15, 20, 22). In denying each of JAAAT's requests, the contracting officer uses language encouraging appellant to provide supplemental material. (*Id.*; FAR 33.211(contracting officer's decision)). While the Federal Circuit concluded in *Hejran* that the contracting officer created the impression that he understood that the later submitted request and attached affidavit to be a claim through issuing "a final

---

[25] "If a contractor fails to submit a proper CDA claim to the [contracting officer], any purported [contracting officer's] decision on the matter is a nullity." *Suodor Al-Khair Co - Sakco for Gen. Trading*, ASBCA Nos. 59036, 59037, 15-1 BCA ¶ 35,964 at 175,726 (citing *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed. Cir. 1983)). The parties cannot confer jurisdiction to the Board; yet, the contracting officer's behavior and treatment of the contractor's correspondence can be instructive whether the contractor intended to submit a claim and whether the contracting officer's actions are consistent that a claim has been submitted. *See, e.g., Transamerica Ins. Corp.*, 973 F.2d at 1579 n.2 ("The fact that the Government referred to the operative submission(s) as 'claims' was found persuasive by this court in its *Contract Cleaning* analysis" [811 F.2d at 592]); *James M. Ellett Const. Co.*, 93 F.3d at 1542, 44-46; *Hejran Hejrat*, 930 F.3d at 1358 ("It is also important that the contracting officer treated the denial of HHL's REA as a 'final determination' in the matter.")

decision," the contracting officer in these appeals treated JAAAT's "requests for equitable adjustment" as REAs throughout. *See Hejran Hejrat*, 930 F.3d at 1358; There is nothing in the contracting officer's correspondence that can be used to help support a finding that appellant sought a final decision.

Again, while the request for a final decision need not be explicit, and may be implied from the context of the submission, there needs to be something more than an after-the-fact assertion that the contractor meant it to be a claim. *Rex Systems,* 224 F.3d at 1372; *Ellett,* 93 F.3d at 1543; *Transamerica,* 973 F.2d at 1576-77. *Air Services*, 15-1 BCA ¶ 36,146 at 176,425-26. JAAAT's REAs did not indicate, either expressly or implicitly, that it was seeking a final decision (SOF ¶¶ 14, 19, 21). The document dated February 24, 2017, for ASBCA No. 61794 is stylized as an REA, and a reading of the one paragraph document in its entirety would not lead a contracting officer to believe that JAAAT was seeking to file a claim and desire a final decision on that claim: "[JAAAT] became aware that there was never a settlement for adverse weather delays. . . . [W]e therefore ask that 50 days be added to our contract." (SOF ¶ 14). Similarly, the court in *Maropakis* rejected a similar request as insufficient to be a CDA claim. *Maropakis,* 609 F.3d at 1328.

Similarly, the documents dated February 28, 2017 (SOF ¶ 19, ASBCA No. 61796; SOF ¶ 21, ASBCA No. 61797), do not expressly or implicitly seek a final decision. Each document provides a description stating that the submission is a "Request for Equitable Adjustment," it identifies the amount sought, and provides supporting details for the request (*id.*). The documents repeatedly state the submissions are "Request for Equitable Adjustment" with bold typeface for emphasis (*id.*). Consistent with DFARS 252.243-7002, each submission is accompanied by a "Change Order and REA Cost Sheet" that is an "ESTIMATE FOR CONTRACT MODIFICATION" (*id.*). In addition, JAAAT has not argued nor provided any evidence that the parties treated the documents as claims for each of ASBCA Nos. 61794, 61796, and 61797 (app. reply at 7-8).

In contrast to ASBCA Nos. 61794, 61796, and 61797, JAAAT's representative, Mr. Eddie Cummings, who signed all of the request documents and engaged the contracting officer throughout, chose to only convert ASBCA No. 61792 into a claim after failed negotiations *(*SOF ¶¶ 10-12). The formality observed by JAAAT for ASBCA No. 61792 in converting the other REA into a claim suggests that JAAAT understood the differences and nuances between REAs and claims. *See Reflectone*, 60 F.3d 1572; *Ellett*, 93 F.3d 1537; *Maropakis*, 609 F.3d 1323. The facts clearly demonstrate that JAAAT made a decision in ASBCA Nos. 61794, 61796, and 61797 to pursue the REA process as set forth in DFARS 552.243-71, "Equitable Adjustments."

JAAAT bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Suodor al-Khair Co - Sakco for Gen. Trading*, 15- 1 BCA ¶ 35,964 at 175,725 (citing *Baghdadi Swords Co.*, ASBCA No. 58539, 13 BCA ¶ 35,395 at 173,664); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. [26] JAAAT has failed to advance facts that support that the REAs set forth in ASBCA Nos. 61794, 61796, and 61797 were properly converted into claims. JAAAT has failed to meet its burden. For these reasons, the Board concludes that it lacks the jurisdiction over ASBCA Nos. 61794, 61796, and 61797.

### c. ASBCA NO. 61793 (RELOCATE PROJECTOR SCREEN)

While the same jurisdictional issues raised in ASBCA Nos. 61794, 61796, and 61797 are present here, we separate out this appeal because of the nature in which it found its way to the Board[27]. The government asserts that the Board does not have jurisdiction over this appeal because "no records can be found . . . that this REA was ever filed" (gov't mot. at 1) and no written claim was submitted to the contracting officer (*id.* at 14). JAAAT counters that the REA was submitted to USACE on November 8, 2016, provided a copy of the document and cites to JAAAT's Supplemental Rule 4, tab 2 (app. reply at 1). The Board accepts that JAAAT submitted the November 8, 2016 document to the contracting officer, but finds that for similar reasons as identified in ASBCA Nos. 61794, 61796, and 61797, the document is not a claim. First, the November 8, 2016 document states it is a request for an "equitable adjustment" of $1,753 and requests "that a contract modification [should] be created to cover this amount." The document does not indicate that JAAAT views the submission as a claim nor does JAAAT request a final decision. (SOF ¶ 13) There is no indication from JAAAT in the November 8, 2016 document or any other document concerning this request that they will exercise its appeal rights if the USACE does not approve their request. JAAAT relies on no other document, communication between the parties, or argument to support its position that the November 8, 2016 document is a claim under the CDA (app. reply at 6, 7). Like the

---

[26] "Jurisdiction is an absolute concept, it either exists or it doesn't. The Board has no discretion with respect to jurisdiction." "It is well established that without a formal claim and final decision by the contracting officer [or a deemed denial] there can be no appeal under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109." *Elham Ahmadi Constr. Co.*, 17-1 BCA ¶ 36,861 (citing *Milmark Services, Inc. v. United States*, 231 Ct. Cl. 954, 956 (1982)); *Envtl. Safety Consultants, Inc.*, ASBCA No. 54615, 07-1 BCA ¶ 33,483 at 165,980; *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816.

[27] *See* n.7.

facts in ASBCA Nos. 61794, 61796, and 61797, there is no suggestion here that JAAAT intended this document to be anything other than an REA at the time of submitting it to the contracting officer or thereafter. *See Maropakis*, 609 F.3d at 1328; *Andrews Contracting Services, LLC*, 17-1 BCA ¶ 36,766; *cf. Reflectone*, 60 F.3d at 1578. For these reasons, the Board concludes that it lacks jurisdiction over ASBCA No. 61793.

### 5. *GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT*

Having found jurisdiction over ASBCA Nos. 61792 and 61799, we now proceed to the government's motion for summary judgment. Having dismissed ASBCA Nos. 61793-61798, and 61800 for lack of jurisdiction, consideration of the government's entitlement to summary judgment on these appeals is moot.

### a. *Standard of Review for Motion for Summary Judgment*

The applicable provisions are well settled. Summary judgment is appropriate only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Colonna's Shipyard, Inc.*, ASBCA No. 59987 *et al.*, 16-1 BCA ¶ 36,518 at 177,901. In the course of the Board's evaluation of a motion for summary judgment, our role is not "'to weigh the evidence and determine the truth of the matter,' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249). A material fact is one that may affect the outcome of the decision. *Liberty Lobby,* 477 U.S. at 248-49; *Colonna's Shipyard*, 16-1 BCA ¶ 36,518 at 177,901. Finally, in deciding a motion for summary judgment, our task is not to resolve factual disputes, but to ascertain whether material disputes of fact are present. *General Dynamics Corp.*, ASBCA Nos. 32660, 32661, 89-2 BCA ¶ 21,851.

It is the moving party's burden to establish the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors,* 812 F.2d at 1390-91; *Colonna's Shipyard*, 16-1 BCA ¶ 36,518 at 177,901. Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Mingus Constructors,* 812 F.2d at 1390-91; *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984); *Colonna's Shipyard*, 16-1 BCA ¶ 36,518 at 177,901. Where a party opposes summary judgment they must provide a clear challenge with support to demonstrate material facts in dispute.

74

b. *Are there any genuine issue(s) of material fact(s)?*

Throughout its motion the government maintains that there are no material facts in dispute with respect to each of JAAAT's requests for equitable adjustment.[28] To support the government's position, it has put forth 19 "Statement of Undisputed Material Facts" (SUMF) that outline and recite the clauses within the JAAAT/Safeco/Tetra Tech Settlement and the POA (gov't mot. at 3-8). JAAAT initially contested some of the SUMFs in its response brief to the government's motion (app. resp. at 1-5); but, later in its brief dated June 30, 2020, addressing whether its appeal for ASBCA No 61799 was timely, JAAAT reverses and utilizes many of the government's SUMFs in support of its arguments. (*See* App. br. dtd. June 30, 2020 at 2-3, 6-7) In making a determination whether any genuine issue of material fact exists that would preclude us from summary judgment, we have considered each of the government's SUMFs 1-19, and appellant's corresponding responses (SOF ¶¶ 81-100). *See Mingus Constructors,* 812 F.2d at 1390-91; *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) (The Court summarizing the undisputed facts, drawing all inferences in favor of the non-moving party).

The government relies on (i) representations by JAAAT's agent and attorney-in-fact, Tetra Tech (SOF ¶¶ 50, 54, 60, 75), (ii) the signed settlement agreement (in principle) (SOF ¶¶ 50-63, 65-66), (iii) JAAAT's August 31, 2018, acceptance of the government's adjustment to the settlement amount (SOF ¶ 73), (iv) the $2,800,000 payment by Tetra Tech to the surety pursuant to the terms of the POA (SOF ¶ 63), (v) the Central District of California Court's Order granting the *Ex parte* Application for emergency relief (SOF ¶¶ 74-75), and (vi) the government's payment of $3,100,000 pursuant to Modification No. 08 (SOF ¶¶ 77-80) to advance its' position.

The government argues that JAAAT is barred from relief under the affirmative defenses of either accord and satisfaction or release:

> Operative for all appeals are the defenses of accord and satisfaction and release. Either theory serves as a basis for summary judgment in favor of the [government].
>
> . . . .
>
> Modification DQ0108 [Modification No. 08] with release of claims is all-encompassing and clearly covers the subject matter of these appeals as well as any other future

---

[28] We previously concluded that the Board does not have jurisdiction to entertain appeal Nos. 61793-61798, and 61800, leaving only Appeal Nos. 61792 and 61799.

75

claims and shows a meeting of the minds of the parties. Further, consideration was provided as the Government received the release of claims and settlement and the government issued a payment in the amount of $3.1 million.

(Gov't mot. at 8-12)

JAAAT, with the surety's concurrence, executed a POA which provided Tetra Tech the right to "to act for and/or on JAAAT's behalf as true and lawful agent and attorney. . . as needed to make, endorse, sign, and deliver any and all documents or things necessary for finalizing and/or otherwise securing payment" and settle on JAAAT's behalf "contract adjustments and/or claims" against the Army under the task order for "the project commonly referred to as the 'SOF Brigade Headquarters Facility'" (SOF ¶ 60; gov't mot. at 4-5; *see* ex. G-3 at 1-2).  Attached to its motion is a copy of the notarized POA signed by JAAAT's Director and Safeco, as surety for the payment and performance bonds posted under the Brigade contract (SOF ¶¶ 54, 56; gov't mot., ex. G-3).  The POA states that JAAAT and the surety, Safeco, have agreed, in principle, to settle with the government JAAAT's claims against the government for $3,200,000:

> R1.    JAAAT and the Brigade Project's surety, Safeco. . . have agreed, in principal [sic], to settlement with the Government the Brigade Project adjustment claims submitted previously by JAAAT to the Government for the total amount of $3,200,000 . . . .
>
> R2.    The Brigade Project Settlement will be divided between Safeco and JAAAT by agreement between them, with Safeco receiving $2,800,000 and with JAAAT receiving the remainder.

(Gov't mot., ex. G-3 at 1, ¶¶ R1, R2; SOF ¶¶ 58-59)

The POA states further:

> Tetra Tech is entitled, but not required, to act for and/or on JAAAT's behalf as true and lawful agent and attorney for and in JAAAT's name . . . as needed to make, endorse, sign, and deliver any and all documents or things necessary for finalizing and/or otherwise securing payment respecting JAAAT's settlement of contract adjustments

76

and/or claims . . . [against] the Government [under] "SOF
Brigade Headquarters Facility . . . "

(SOF ¶ 60)

The government has produced information that appears to establish that no factual dispute exists. Now, JAAAT, the responding party, must come forward to show that there indeed is a genuine issue of material facts. *San Antonio Mgmt. Corp.*, ASBCA No. 40415, 95-2 BCA ¶ 27,785. If JAAAT fails to meet this burden, summary judgment may be granted.[29] *Alutiiq Commercial Enterprises, LLC*, ASBCA No. 61503, 20-1 BCA ¶ 37,506.

JAAAT responds that the Central District of California Order granting the *Ex parte* Application for emergency relief "changes nothing as it merely tracks the language of the POA . . . . [T]he Order gives Tetra Tech no more power than it has under the POA. It merely confirms the power in the form of a court order" (app. resp. at 4). JAAAT maintains that there is a genuine issue of material fact in dispute with respect to at least the interpretation of the POA document and whether Tetra Tech may act as JAAAT's agent to negotiate and settle its claims against the government (app. resp. at 6-7).

JAAAT does not contest SUMF 1, 8, 11, 13, and 14 (app. resp. at 3-4; SOFs ¶¶ 81, 88, 91, 93, 94), while providing only general denials for the remaining SUMFs (SOFs ¶¶ 82-87, 89-90, 92, 95-100). JAAAT's responses to each of the government's SUMFs are woefully inadequate, largely do not address the government's SUMFs, and more importantly, do not show that any material facts are in dispute. (SOFs ¶¶ 81, 85-90, 92, 95, 99-100) *See GSC Constr., Inc.,* ASBCA No. 61380, 20-1 BCA ¶ 37,626

---

[29] Conclusory statements or completely insupportable, specious, or conflicting explanations or excuses will not suffice to raise a genuine issue of fact. *Paragon Podiatry Laboratory, Inc.*, v. KLM Laboratories, Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993). The evidence must be credible. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). If there is a failure to contradict the evidence, the Board may accept the government's undisputed version of the facts. *See Sinil Co., Ltd.*, ASBCA No. 55819, 09-2 BCA ¶ 34,213 at 169,131 ("[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient . . . A non-movant runs the risk of a grant of summary judgment by failing to disclose the evidentiary basis for its claim.") (internal citations omitted; citing to *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) and *Pure Gold, Inc.*, 739 F.2d at 627).

at 182,666 (non-moving party denying 62 SUMFs, "but generally in ways insufficient to establish that a dispute actually exists."). Indeed, JAAAT fails to raise any material facts that may make a difference in the outcome of the case. (SOFs ¶¶ 81-100) *See Liberty Lobby*, 477 U.S. at 248; *see also Kelly v. United States*, 924 F.2d 355, 357–58 (1st Cir. 1991) ("Proof based on arrant speculation, optimistic surmise or farfetched inference will not suffice. . . . By the same token, 'evidence [that] is merely colorable, or [ ] not significantly probative' cannot impede an otherwise deserved summary disposition."). Later, in response to the Board's Order requesting the parties to brief questions surrounding the events of Modification No. 07 (SOF ¶ 38), JAAAT entered a notice of appearance for counsel and filed its brief (SOF ¶ 39) which was signed by the same counsel. JAAAT's brief alters its course and adopts SUMFs 8-19 to demonstrate that its appeal for ASBCA No. 61799 was timely:

> But if *Placeway* is used, it would be more appropriate to look to when the government "declined to pay [Appellant] the balance due on the contract" as a result of the modification. In fact, the events that occurred between June 25 and September 7, 2018, **as described in the Statement of Undisputed Material Facts ¶¶ 8-19 in the Respondent's Motion** for Summary Judgment would be when the government "effectively made a final decision on the government claim . . . when he declined to pay [Appellant] the balance due on the contract."
>
> . . .
>
> [T]he events of June 25 and September 7, 2018, **as described in the Respondent's Statement of Undisputed Material Facts ¶¶ 8-19** serves as an effective final decision on the matter, making the appeal timely.
>
> . . .
>
> [T]he events of June 25 and September 7, 2018, **as described in the Respondent's Statement of Undisputed Material Facts ¶¶ 8-19**, would constitute an "effectively . . . final decision" under *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990), making this appeal timely.

(App. br. dtd. June 30, 2020 at 2, 6-7) (emphasis added)

JAAAT's utilization of the government's SUMFs 8-19 in its favor, support the Board's use of the same SUMFs for purposes of the summary judgment. "If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . (2) consider the fact undisputed for purposes of the motion . . . ." FED. R. CIV. P. 56(e)(2). Irrespective of JAAAT's change of position with SUMFs 8-19 in its June 30, 2020 brief, and its challenges, JAAAT has not sufficiently raised any material facts with the JAAAT/Safeco/Tetra Tech Settlement (SOF ¶ 50), the POA (SOF ¶¶ 54, 55), the triggering events for Tetra Tech to act as JAAAT's agent and to finalize settlement (SOF ¶¶ 52, 58, 60, 62, 63, 75), the interpretation of the settlement terms (SOF ¶¶ 51, 52), interpretation of the release of claims clauses (SOF ¶ 66), interpretation of the waiver clauses (SOF ¶ 66), and JAAAT's subsequent acceptance of the $3.1 million settlement amount (SOF ¶¶ 68, 70, 73). Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment. *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006).

*The JAAAT and USACE Settlement*

We begin this discussion with an examination of what lead to Tetra Tech's execution of Modification No. 08. Critical to this analysis is a determination of whether Tetra Tech had the power to sign Modification No. 08 in the first place, and the extent of that power. For that we turn to the agreements between JAAAT, its surety Safeco, and Tetra Tech. We recognize that the settlement between JAAAT and the USACE was part of a larger omnibus agreement entered into by several participants (SOF ¶¶ 48, 50-53). Settlement agreement disputes are governed by contract principles. *See Williams v. United States*, 144 Fed. Cl. 218, 230 (2019); *Cunningham v. United States*, 748 F.3d 1172, 1176 (Fed. Cir. 2014); *Slattery v. Dep't of Justice*, 590 F.3d 1345, 1349 (Fed. Cir. 2010); *Lutz v. United States Postal Serv.*, 485 F.3d 1377, 1381 (Fed. Cir. 2007); *Musick v. Dep't of Energy*, 339 F.3d 1365, 1369 (Fed. Cir. 2003) ("A settlement agreement is a contract, the interpretation of which is a question of law."); *Kasarsky v. Merit Sys. Prot. Bd.*, 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("Disputes involving Settlement Agreements are governed by contract principles."); *Conant v. Office of Personnel Mgmt.*, 255 F.3d 1371, 1376 (Fed. Cir. 2001) ("A settlement agreement is a contract . . . ."); *Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract."); *Rebish v. United States*, 134 Fed. Cl. 308, 315 (2017); *Eby v. United States*, 133 Fed. Cl. 706, 709 (2017).

The rules of contract interpretation are well known. When interpreting a contract, "'the language of [the] contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.'" *TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (quoting *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999)). The interpretation

of a contract requires that the document be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts. *NVT Tech. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996)). In determining reasonableness it is only necessary that the interpretation be in the "zone of reasonableness." *States Roofing Corp. v. Winter*, 587 F.3d 1364, 1369 (Fed. Cir. 2009).

It is readily apparent from a reading of the JAAAT/Safeco/Tetra Tech Settlement agreement that the Brigade Project Settlement was instrumental to the parties reaching an agreement at all. (SOF ¶¶ 50-53, 59, 61-63) Safeco issued performance and payment bonds on five federal government construction projects awarded to JAAAT, including the SOF Brigade Headquarters contract. (SOF ¶¶ 3, 44, 56) During the performance of those contracts, Safeco received numerous claims under its payment bond from unpaid subcontractors and suppliers of JAAAT (SOF ¶¶ 44, 45). Safeco paid out a total of $7,459,124.41 in claims and related expenses as a direct result of JAAAT's actions or inactions during performance of the government contracts (SOF ¶ 45). Several other disputes and/or litigation arose relating to the Bonded Projects; 17 of those cases are listed in Section 1.7 of the JAAAT/Safeco/Tetra Tech Settlement agreement (SOF ¶ 49).

As a result of the $7,459,124.41 in payments, Safeco filed suit against JAAAT and Tetra Tech for satisfaction of the surety bonds (SOF ¶¶ 46, 47).[30] As reflected in the JAAAT/Safeco/Tetra Tech agreement at paragraph 1.10, a meeting was held on August 30, 2017 to mediate the disputes. With the assistance of a mediator, the parties entered into a memorandum of settlement on August 30, 2017, "in which they agreed to execute a formal agreement of settlement and release containing the material terms of the Memorandum of Settlement . . ." The JAAAT/Safeco/Tetra Tech Settlement was executed on or about October 30, 2017 and formalized that memorandum of settlement. (SOF ¶ 50) Safeco agreed to settle its claims with JAAAT and Tetra Tech for a total payment of $6,650,000. The $6,650,000 settlement amount was to be funded from a payment by Tetra Tech in the amount of $3,850,000, with the remaining balance of $2,800,000 to be paid from proceeds of the settlement between JAAAT and the USACE under the task order. (SOF ¶¶ 52, 63; Gov't mot., ex. G-2 at 5, ¶¶ 2.2-2.5) Any excess proceeds over and above the $2,800,000 were to be paid to JAAAT in accordance with the settlement agreement (SOF ¶¶ 51, 58, 61). In exchange, and upon full payment, Safeco agreed to dismiss the litigation against JAAAT and Tetra Tech that was pending in the District Courts of California and Virginia (SOF ¶¶ 47, 52, 66).

---

[30] Suit was filed by Safeco against JAAAT in the United States District Court for the Eastern District of Virginia (Case No. 3:15-cv-00019-JAG) and against Tetra Tech in United States District Court for the Central District of California (Case No. 2:15-cv-03386-SJO-JEMx).

The path to the execution of Modification No. 08 began with a meeting held in August 2017, between Safeco, JAAAT and the government along with respective counsel. Whether that meeting was the same August 30, 2017 meeting identified in the JAAAT/Safeco/Tetra Tech agreement at paragraph 1.10, we are unsure. The JAAAT/USACE agreement in principle, appears to be the direct result of that meeting. As we look to the JAAAT/Safeco/Tetra Tech agreement that was the result of the mediation referenced therein, it is undeniable that JAAAT and USACE agreed to a settlement in principle, the details of which can be found in the agreement itself (SOF ¶¶ 51-63, 65-66). Our examination of the JAAAT/Safeco/Tetra Tech Settlement leads to the conclusion that JAAAT and USACE reached an agreement in principle on or before August 30, 2017, that was documented in the October 30, 2017 JAAAT/Safeco/Tetra Tech Settlement agreement. The settlement included the payment of $3.2 million (later amended to $3.1) by the government from which Safeco was to receive $2.8 million, with the balance to be paid to JAAAT. In exchange for the government payment, JAAAT released "all contract claims, confirms project completion and voids the Bond for the specific contract . . . " (SOF ¶ 51). JAAAT admits that "the term claim in the POA and elsewhere clearly refers to claims that might have been made, and/or REAs converted to claims . . .." (SOF ¶ 64) The only two things that remained as of October 30, 2017 was the completion of the Brigade Project Settlement documentation consistent with the terms set forth in the JAAAT/Safeco/Tetra Tech Settlement, and the government's payment to Safeco on JAAAT's behalf. Still, JAAAT contends that there was no JAAAT settlement for Tetra Tech to accept (app. resp. at 4, 6-7). Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule. *See, e.g. Liberty Lobby*, 477 U.S. at 256–57; *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[W]e draw all justifiable inferences in favor of the nonmoving party," but JAAAT has not provided any reasonable, alternative interpretation of the JAAAT/Safeco/Tetra Tech Settlement, the POA, or the triggering events for Tetra Tech to act as JAAAT's agent to finalize settlement to raise even a scintilla that a material fact could be in dispute. *See Conquistador Dorado Joint Venture*, ASBCA No. 60042 *et al.*, 20-1 BCA ¶ 37,628 at 182,677 (citing *CI 2, Inc.*, ASBCA Nos. 56257, 56337, 11-2 BCA ¶ 34,823 at 171,353.)).

We hold that there existed an omnibus settlement inclusive of an agreement to resolve the Brigade Project. The terms and conditions of the Brigade Project Settlement were clearly set forth in the JAAAT/Safeco/Tetra Tech Settlement. We now move on to our examination of the powers enumerated in the POA.

ii. *Power of Attorney (POA)*

JAAAT contends that the California Court Order gives Tetra Tech no more power than it has under the POA (app. resp. at 4). We agree with JAAAT that Tetra

81

Tech's powers are limited to what was set forth in the POA, and no more (SOF ¶ 74). Yet, we conclude that the action taken by Tetra Tech to complete the Brigade Project Settlement was within the confines of the POA. Our interpretation of the JAAAT/Safeco/Tetra Tech Settlement and POA is a question of law. Where a contract can be construed within its four corners, interpretation of the contract presents a question of law that can be decided on summary judgment. *LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1310, 1314 (Fed. Cir. 2009); *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795 (Fed. Cir. 2002); *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1578–79 (Fed. Cir. 1993); *Fry Commc'ns, Inc. v. United States*, 22 Cl. Ct. 497, 503 (1991)("[C]ontract interpretation is clearly a question of law and, as here, may be appropriately resolved by a decision on summary judgment" (citing *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984)). Our interpretations of the JAAAT/Safeco/Tetra Tech Settlement and POA documents are considered as a whole and interpreted to give reasonable meaning to all of their parts. *See Teg-Paradigm Envtl., Inc.*, 465 F.3d at 1338; *Metric Constructors, Inc.*, 169 F.3d at 752; *NVT Technologies*, 370 F.3d at 1159; *McAbee Constr., Inc.*, 97 F.3d at 1434-35; *States Roofing Corp.*, 587 F.3d at 1369.

The language of the POA is undeniably clear in its granting of powers to Tetra Tech and leaves little, if any room for interpretation. The POA accepts that both JAAAT and Safeco (Brigade Project's surety) agreed in principle to a settlement with USACE and that Tetra Tech would be granted the power to execute "any and all documents or things necessary for finalizing and/or otherwise securing payment respecting JAAAT's settlement of contract adjustments and/or claims. . . ." upon the trigger of certain events. (SOF ¶ 60) The Board has long recognized the legitimacy of powers of attorney. *Bell Helicopter Textron Inc.& The Boeing Company,* 15-1 BCA ¶ 36,111; *TPS, Inc.* ASBCA No. 52421, 01-1 BCA ¶ 31,375; *Rudolf Bieraeugel, Stahl- und Metallbau Gesellschaft mit beschranenkter Haftung,* ASBCA No. 47145, 95-1 BCA ¶ 27,536.

The JAAAT/Safeco/Tetra Tech Settlement delineated the arrangement for payment of JAAAT's share and provided Tetra Tech to step-in should the government not make payment of the $3,200,000 by December 31, 2017 (SOF ¶ 52). In the event the USACE did not make payment by the date established in the agreement, Tetra Tech provided a guarantee of the $2,800,000 payment to Safeco, with reimbursement once the Brigade Project Settlement was consummated and payment made by the government (SOF ¶ 52). The POA was not revocable by JAAAT, and would only become null and void if the government made timely payment to Safeco such that Tetra Tech's guaranty obligation became pointless (SOF ¶¶ 57, 62).

As contemplated by the agreement, the Brigade Project Settlement was not consummated in time for the government to make the payment by December 31, 2017 (SOF ¶ 63). Subsequently, Tetra Tech paid to Safeco its payment of $3,850,000, along

with the $2,800,000 under its guarantee obligation (SOF ¶ 52, SOF ¶ 63). It is this event that triggered the ability of Tetra Tech to exercise the powers under the POA (SOF ¶¶ 54, 62, 63). While we acknowledge that JAAAT was free to execute the documentation to finalize the settlement with the government, in the event JAAAT did not, the POA provided a mechanism for the settlement with the government to be finalized, and Tetra Tech to be reimbursed for the $2.8 million paid on JAAAT's behalf from the proceeds of the government payment. The events that have brought the parties to this litigation before the Board are exactly the reason that an irrevocable POA was necessary. It is obvious that as part of the agreement, Tetra Tech wanted to ensure the reimbursement of the $2.8 million it paid to Safeco; and did not want to rely upon JAAAT after the fact for the repayment of monies it paid out on JAAAT's behalf.

The government argues that "[t]he clear language of the POA allowed Tetra Tech to take the very actions it took on behalf of JAAAT when settling the claims" (gov't mot. at 10). JAAAT responds with the position that Tetra Tech did not have the right to execute Modification No. 08, as it did (app. resp. at 4-6). JAAAT's argument is premised on a position that cannot be found in or interpreted from the JAAAT/Safeco/Tetra Tech Settlement or the POA. When opposing parties tell two different stories, one of which is contradicted by the record, so that no reasonable fact finder could believe it, the Board should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *See Scott*, 550 U.S. at 380-81 (noting that one party's version of the events was captured in a videotape); *see also* Liberty Lobby, 477 U.S. at 247-248; *McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020). We find that the government's position is more consistent with the facts. To create an ambiguity, and ultimately a material fact in dispute, JAAAT would need to provide us with an interpretation that is also reasonable. *Teg-Pardigm Envtl.,* 465 F. 3d 1329 at 1338 (quoting *Metric Constructors, Inc.,* 169 F.3d at 752). If it did, we could reach a finding that there was an ambiguity in the language. JAAAT simply fails to support its position with any language that could provide a reasonable interpretation that conflicts with the government's interpretation that under the terms of the POA, Tetra Tech had the right to execute whatever documents it needed to in order to finalize the settlement. Tetra Tech's exercise of its powers under the POA appropriately included the signing of Modification No. 08. *See TPS, Inc.*, 01-1 BCA ¶ 31,375. Modification No. 08 allowed for the payment of the settlement funds by the government to Safeco, thus providing for the ultimate reimbursement of the $2.8 million that Tetra Tech paid to Safeco on JAAAT's behalf. Tetra Tech's exercise of its powers was within the broad powers granted by the POA. JAAAT's challenge to the powers given to Tetra Tech by its own hand, without a challenge to the validity of the POA, is unconvincing. A similar situation was addressed in *Seaboard Air Line Railway v. United States*, 53 Ct. Cl 107 (Ct. Cl. 1918), where the plaintiff, having properly granted a power of attorney, and after payment to the person holding the power of attorney, then sued the United States asserting that the payment was

improper because the POA was void under federal law.  The Claims Court found that any attempt by plaintiff as the person having given the power of attorney, where it is unrevoked and payment made by the government, the plaintiff would not be allowed to question the propriety of the payment.  *Id.* at 113.  Having failed to provide an interpretation that can be read harmoniously with the agreement, we find the government's interpretation to be the only reasonable interpretation.  *Manhattan Hunt A Joint Venture*, ASBCA No. 61477, 19-1 BCA ¶ 37,386 at 181,756-57.  The language of the JAAAT/Safeco/Tetra Tech agreement and the POA provides a clear path toward the only conclusion that provides meaning to the whole of the documents; a settlement was reach in principle between JAAAT and USACE, and that Tetra Tech could act to finalize that agreement once certain conditions were met.

The POA affords Tetra Tech the absolute authority to take whatever steps are necessary to "finalize and/or otherwise secure payment" respecting the Brigade Project Settlement.  Acting on that authority, Tetra Tech could act in "JAAAT's name, place, and stead . . . to make, endorse, sign, and deliver any and all documents or things necessary for finalizing and/or otherwise securing payment respecting JAAAT's settlement of contract adjustments and/or claims" under "Contract No. W912HN-10-D-0063 DQ01, and relating to the project . . . ."  (SOF ¶ 60)  If finalizing the settlement and/or securing the payment requires Tetra Tech to execute a contract modification, as it did here, then that is one of the enumerated powers inherent in the language of the POA.

### iii. *Settlement Amount*

Having found that JAAAT and USACE reached a settlement in principle and the POA authorized Tetra Tech to execute documents to finalize that settlement, we acknowledge that Modification No. 08 was not executed in the amount of $3.2 million as set forth in the JAAAT/Safeco/Tetra Tech Settlement agreement.  Instead, the settlement amount in Modification No. 08 was $3.1 million.  (SOF ¶¶ 68, 77, 80)  We must examine the JAAAT/Safeco/Tetra Tech Settlement agreement to determine whether Tetra Tech had the power under the POA to modify the settlement amount.

Significant to our inquiry is the language in both the JAAAT/Safeco/Tetra Tech Settlement and the POA that contemplates an adjustment to the Brigade Project Settlement amount once the government's audit was complete (SOF ¶ 59).  The parties specifically note that the "finalization of the agreement and payment of the monies by the Government for the SOF Brigade Headquarters Contract has been delayed pending resolution of a recent Government audit" (*id.*; gov't mot., ex. G-2 at 4, ¶ 1.9).  Further acknowledgement of a potential adjustment to the settlement amount is found in Section 2.2 of the agreement.  The parties planned for several contingencies, all of which when taken together support the understanding that the settlement amount of $3.2 million could be adjusted.  (SOF ¶¶ 52, 59)  The parties contemplated that Safeco

could receive more or less[31] than the $2.8 million from the government.  There was also a contingency for Safeco receiving two payments, one from Tetra Tech and one from the government.  (SOF ¶ 52)  The agreement provides for Tetra Tech to receive a "return of any payment advance it has made on the guarantee." (SOF ¶ 52)  As well as providing for any remaining settlement proceeds after payment of the $2.8 million to Safeco, those funds in whatever amount would go to JAAAT in accordance with Section 2.1 and 2.2 of the JAAAT/Safeco/Tetra Tech Settlement (SOF ¶ 52).

Under the JAAAT/Safeco/Tetra Tech Settlement agreement, JAAAT was obligated to continue working with the government to "facilitate, and to cooperate and not interfere or prevent the consummation of, the SOF Brigade settlement and the payments as contemplated" (SOF ¶ 52).  In May 2018, after irregularities in payment estimates were identified, the government advised JAAAT that it would adjust the settlement amount from $3.2 million to $3.0 million and later adjusted it upwards to $3.1 million (SOF ¶¶ 59, 68; gov't mot. at 5; app. resp. at 3-4).  Tetra Tech was ready to execute the documents to finalize the Brigade Project Settlement pursuant to the POA, but in contravention of the provision to "cooperate and not interfere or prevent the consummation of, the SOF Brigade Settlement and the payments as contemplated by this Agreement," JAAAT objected (SOF ¶¶ 52, 69).  Tetra Tech filed an *Ex Parte* Application for Emergency Relief in the United States District Court, Central District of California, on June 25, 2018, asking for the court to review the POA and confirm/deny Tetra Tech's rights to accept the government's settlement offer (SOF ¶ 69).  Yet, prior to the issuance of the Court's Order, JAAAT accepted the adjustment of the settlement amount to $3.1 million following the completion of the government's audit, and confirming that acceptance in an email dated July 17, 2018 (SOF ¶¶ 68, 70).

Despite the acceptance, on August 30, 2018, JAAAT then raised a question about what was resolved during the negotiations that lead to the signing of the October 31, 2017 JAAAT/Safeco/Tetra Tech Settlement, the POA, and ultimately the payment by Tetra Tech of the $2.8 million to Safeco on behalf of JAAAT (SOF ¶ 71).  While there was much discussion back and forth, JAAAT again confirmed its acceptance of the $3.1 million on August 31, 2018 (SOF ¶¶ 72-73).  As a result, even if Tetra Tech did not have the power to accept an amount other than $3,200,000 under the POA, which we think it did, that issue is moot since JAAAT itself accepted the adjusted amount of $3.1 million (SOF ¶ 73).

---

[31] In the event Safeco received less than $2.8 million from the government from the Brigade Project Settlement, Tetra Tech was to make up the difference so that Safeco received $2.8 million pursuant to the guarantee set forth in Section 2.2 of the JAAAT/Safeco/Tetra Tech settlement.

*iv. Release*

Pursuant to paragraph 1 of the POA, Tetra Tech had the ability to execute whatever documents where necessary to consummate the settlement reached in principle during the negotiations that lead to the JAAAT/Safeco/Tetra Tech Settlement (SOF ¶¶ 54, 60). The government argues in reliance on the POA, the settlement agreement, and the Central District of California Court's granting of the *Ex parte* application, that it issued Modification No. 08 in the amount of $3,100,000, and it was signed by Tetra Tech's CEO on September 5, 2018 (SOF ¶¶ 51, 52, 54-55, 74-75, 77, 80; gov't mot. at 6-8). The government further argues that "[i]n signing a final bilateral modification to the subject contract, and executing a full release of claims on behalf of JAAAT, Tetra Tech was acting as an agent and attorney-in-fact for JAAAT and its actions are binding on JAAAT" (gov't mot. at 10). As we found above, Tetra Tech was acting as JAAAT's agent and attorney-in-fact in signing the final bilateral modification. Our final inquiry relates to the release language set forth in Modification No. 08, which provides, in part:

> Provide for the full settlement of the Storm Water Management Claim, dated 1 October 2014, submitted by the contractor on behalf of it and its subcontractors. This modification adds an additional 255 Calendar Days to the contract with a revised completion date of 23 June 2015.
>
> Provides for the full settlement of Modification 04 issued unilaterally on 17 April 2014.
>
> Provides for the full settlement of Modification 07 issued on 12 December 2017.
>
> . . . .
>
> The total cost of this contract was increased by $3,100,000.000 . . . ..

(SOF ¶ 77) The government argues further that the release language contained in bilateral Modification No. 08 releases the government from all liability and equitable adjustments under this contract (gov't mot. at 17-18) and provides:

> RELEASE: In consideration of the modification agreed to herein as complete, equitable adjustments for all existing or potential claims or appeals of the contractor and its subcontractors and suppliers arising under this contract, the Contractor hereby releases the Government from any and

86

all liability under this contract for further equitable
adjustments attributable to such facts or circumstances
which gave rise to the times outlined above.

The Contractor hereby agrees to release, waive and forever
abandon all claims arising under the Equal Access to
Justice Act to attorney fees and other expenses arising
from the above stated contract claims under the contract.

(SOF ¶ 78)

JAAAT does not identify any ambiguity in the terms or provisions of the release;
rather, it responds with challenges to the efficacy of its execution by its agent. JAAAT
responds to the government's argument by stating:

[it] rejected the final Modification P00008 and has not
released its' [sic] claims on the project contract; and has
notified the government that it retains its' rights to full
payment under the contract and the nine (9) submitted
REAs. The government has unlawfully signed project
releases and made project payments to unauthorized
representatives claiming to represent JAAAT.

(App. resp. at 7)

As we set forth above, Tetra Tech had the power to execute Modification
No. 08 in accordance with the terms and conditions set forth in the
JAAAT/Safeco/Tetra Tech Settlement and the POA. JAAAT challenges bring into
question whether Tetra Tech had the ability to execute the modification with release
language that resolves all claims as the government contends. The government
maintains that the release set forth in Modification No. 08 resolved all claims relating
to the contract and prevents JAAAT from pursuing any further entitlement under the
contract. "A release is a contract whereby a party abandons a claim or relinquishes a
right that could be asserted against another." *Colorado River Materials, Inc. d/b/a
NAC Constr.*, ASBCA No. 57751, 13 BCA ¶ 35,233 at 172,991. Consequently, the
scope of a release is a question of contract interpretation. *Id.* Because a release is
contractual in nature, it is interpreted in the same manner as any other contract term or
provision. *See Metric Constructors, Inc. v. United States,* 314 F.3d 578, 579 (Fed. Cir.
2002) ("This case, like many contract disputes, turns on the interpretation of [the
release]"); RESTATEMENT (SECOND) OF CONTRACTS § 284 cmt. c (1981) ("The rules
of interpretation that apply to contracts generally apply also to writings that purport to
be releases."). Our first step in interpreting any provision is to examine the language
used by the parties. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir.

2009); *Dureiko v. United States*, 209 F.3d 1345, 1356 (Fed. Cir. 2000); *Tri-O, Inc. v. United States*, 28 Fed. Cl. 463,470-71 (1993). We look to the plain language of the release, as "if the 'provisions are clear and unambiguous, they must be given their plain and ordinary meaning'" *Bell BCI Co.*, 570 F.3d at 1435 (quoting *Alaska Lumber & Pulp Co. v. Madigan,* 2 F.3d 389, 392 (Fed.Cir.1993)); *see Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004). The release language set forth in Modification No. 08 demonstrates the parties' intention to bring finality to this contract and resolve all matters arising under or by virtue of the contract. *E.g., Augustine Med. Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371-72 (Fed. Cir. 1999). "[A] general release precludes a party to the contractual armistice from renewing or initiating further combat . . . ." *H.L.C. & Assocs. Constr. Co. v. United States*, 367 F.2d 586, 590 (Ct. Cl. 1966) (citing *United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. 118 (1907)). Generally, a release which is complete on its face and reflects the contractor's unqualified acceptance and agreement with its terms is binding on both parties. *Inland Empire Builders, Inc. v. United States,* 424 F.2d 1370, 1376 (1970); *J.G. Watts Constr. Co. v. United States,* 161 Ct. Cl. 801, 805 (1963); *INCA Contracting Co..,* ASBCA No. 52697, 01-1 BCA ¶ 31,255.

JAAAT argues that the release signed by Tetra Tech was invalid (app. resp. at 5, 7). We disagree. The release set forth in Modification No. 08 is consistent with the agreement as prescribed in the JAAAT/Safeco/Tetra Tech Agreement. We reach that conclusion from our review of Sections 1.9, 2.1, 2.2 and 2.3 (SOF ¶¶ 51, 52, 54, 59), which provides for the finalization of all aspects of the settlement agreement, inclusive of the settlement reached between JAAAT and USACE of the "Requests for Equitable Adjustment submitted to the Government respecting the SOF Brigade Headquarters Contract which resolves all contract claims, confirms project completion and voids the Bond for the specific contract, and which includes the Government's agreement to pay $3.2 million. . . ." This language unambiguously reaches beyond the REAs submitted by JAAAT and also provides for the closeout of the contract and a release of the Bond under the contract. The language clearly articulates that the Brigade Project Settlement resolves all disputes under the contract. By confirming contract completion, the government was accepting all work under the contract and likewise releasing liquidated damages to allow for completion that occurred over 1000 days beyond the original completion date.

Further support of JAAAT's release of all claims by Tetra Tech's hands can be found in section 2.6 of the JAAAT/Safeco/Tetra Tech Agreement. It provides that JAAAT could pursue other claims but specifically excluded claims related to the Brigade Project by providing that JAAAT "shall be responsible and assumes all further risks and costs for close out of the Bonded Projects and to the extent JAAAT opts to prosecute at its own cost and expense **any non-Brigade** or other requests for equitable adjustments . . . JAAAT may do so at its own risk and cost . . . ." (SOF ¶ 65)

88

(emphasis added)). If there were potential claims remaining under the Brigade project this provision supports a finding that JAAAT would need to reserve those claims. *Whiting-Turner Contracting Co.,* ASBCA No. 56319, 10-1 BCA ¶ 34,436; *See William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. at 128 (noting that "[i]f parties intend to leave some things open and unsettled, their intent so to do should be made manifest."). There is no such reservation here. Without a reservation of claims JAAAT waives any rights to pursue additional claims associated with the Brigade Project. To hold otherwise would require that we ignore the settlement language to provide for the resolution of "all contract claims, confirms project completion and voids the Bond for the specific contract. . ."

Lastly, we look to Section 3 of the JAAAT/Safeco/Tetra Tech Settlement, for further amplification of the intention between JAAAT and USACE to release all claims. Section 3 JAAAT/Safeco/Tetra Tech Settlement provides for all the parties to release "any and all present and future claims, demands, causes of action, rights . . . arising out of or relating in any way to the Bonds, the Bonded Projects, the Teaming Agreements, the Subcontracts, and the Settled Litigation." (SOF ¶ 66) The parties identified the "Settled Litigation" to include "any other payment bond or Project Contracts litigation previously or currently filed" (SOF ¶ 53). We know that each of the REAs (ASBCA Nos. 61793, 61794, 61795, 61796, 61797, 61798, 61800), JAAAT's claim (ASBCA No. 61792), and the government's claim (ASBCA No. 61799) that are currently before this Board were submitted to the contracting officer or to JAAAT prior to the execution of the October 30, 2017 settlement, making them all subject to the release (SOF ¶¶ 6, 12-13, 31). In addition, as late as October 30, 2017, the parties represented that "they are not aware of any other claims." (SOF ¶53) We conclude that the release contained in Modification No. 08 was in every respect consistent with the release terms agreed to by JAAAT in the JAAAT/Safeco/Tetra Tech Settlement. While JAAAT would have us disregard the legitimacy of the POA, we will not do so. *Bell Helicopter Textron Inc.& The Boeing Company,* 15-1 BCA ¶ 36,111; *TPS, Inc.* 01-1 BCA ¶ 31,375; *Rudolf Bieraeugel, Stahl-und Metallbau Gesellschaft mit beschranenkter Haftung,* 95- 1 BCA ¶ 27,536. The government had every right to include a full release in Modification No. 08 in exchange for the $3.1 million to Safeco. Likewise, Tetra Tech had every right under the POA to sign Modification No. 08 containing a release of all claims.

We do not have a situation here where JAAAT seeks the recovery of a claim excepted from the release. If a party who executes a general release has knowledge of facts sufficient to constitute a claim at the time of executing the general release and wishes to make an exception for such a claim, that party bears the burden of manifesting his intent to do so with an explicit reservation. *See Baha v. United States*, 144 Fed. Cl. 500, 505 (2019); *see also Augustine Med., Inc* 194 F.3d at 1373; *Mingus*, 812 F.2d at 1393-94. As we look back at the term "Settled Litigation" of which the contract is a part, both the omnibus settlement and the Brigade Project Settlement in

89

principle included a release of Safeco's performance and payment bonds. The release of the surety bond and the government's acceptance of project completion, release of the surety bond, and close out included a full relinquishment of any and all assertions of additional compensation and a full release given by JAAAT. If JAAAT was aware of claims related to the Brigade Project that it wished to preserve, and did not reserve those claims for all to consider, the omnibus negotiation might have produced different results. Instead, other than the reservations set forth in paragraph 2.6, there were no reservations by JAAAT of claims related to the Brigade Project. In fact, every reference leads to an opposite conclusion.

While JAAAT argues that there are genuine issues of material facts in dispute that preclude summary judgment (app. resp. at 6), it fails to provide any support for its position. Merely suggesting conflicting facts without more will not defeat summary judgment. JAAAT must set forth specific facts showing that there is a genuine issue for trial. *Liberty Lobby,* 477 U.S. at 248 (quoting *First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288 (1968)). The opposing party must assert facts sufficient to show a dispute as to a material fact of an element of the argument. *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849 at 175,291-92 (citing *Mingus*, 812 F.2d at 1390-91) ("To ward off summary judgment, the non-moving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact."); *see Lee's Ford Dock. Inc.*, ASBCA No. 59041, 16-1 BCA ¶ 36,298 at 177,010. Appellant fails to proffer any facts that demonstrate a material issue for trial. (SOF ¶¶ 81, 85-90, 92, 95, 99-100) JAAAT's interpretation of the JAAAT/Safeco/Tetra Tech Settlement agreement cannot be read harmoniously with other provisions in the agreement and is unsupported by any language or other facts in the record.

As we compare Modification No. 08 with the Brigade Project Settlement expressed in the JAAAT/Safeco/Tetra Tech agreement, we find the terms as agreed to by JAAAT to be identical in form and function with the terms of the Brigade Project Settlement outlined in the JAAAT/Safeco/Tetra Tech agreement executed on or about October 30, 2017. To argue now, as appellant does, that there was no "JAAAT settlement to accept" is unpersuasive. We hold that there was a settlement for Tetra Tech to accept that provided for a full release of all claims, existing or potential, including government claims, and that Tetra Tech had the authority pursuant to the POA to execute Modification No. 08, as written, to finalize the settlement as JAAAT's agent.[32] We conclude that the language in Modification No. 08 is unambiguous, and plainly states that JAAAT released the government from *adjustments for all existing or potential claims or appeals* attributable to the contract (SOF ¶ 78). When a release is

---

[32] Safeco, as surety, provided its consent to both the execution of the POA and the execution of Modification No. 08. (SOFs ¶¶ 56, 79).

clear, unequivocal, and unconditional, the release "must be given its plain meaning and effect." *New Iraq AHD Co.*, 15-1 BCA ¶ 35,849 at 175,292 (citing *Bell BCI Co.*, 570 F.3d 1337). When such a release exists, it "bars any and all claims for additional compensation based upon events occurring prior to the execution of the release." *New Iraq AHD*, 15-1 BCA ¶ 35,849 at 175,292 (citing *Todd Pacific Shipyards Corp.*, ASBCA No. 55126, 08-2 BCA ¶ 33,891 at 167,759). Further, the government's payment of $3,100,000 in Modification No. 08 constitutes adequate consideration for JAAAT's release. *See* RESTATEMENT (SECOND) OF CONTRACTS § 79 cmt. c (1981); *see also Aviation Contractor Ems., Inc. v. United States,* 945 F.2d 1568, 1573-74 (Fed. Cir. 1991). Tetra Tech's signing a final release disposes of these appeals (SOFs ¶¶ 77-78).

For the reasons stated above, we grant the government's motion for summary judgment of ASBCA No. 61792 upon finding that JAAAT released all claims pursuant to Modification No. 08. Similarly, the issues surrounding the punch list dispute addressed in JAAAT's REA under ASBCA No. 61799 and the corresponding government claim related to Modification No. 07 are also covered by the release language.[33] Having found in the government's favor on summary judgment on the issue of release in ASBCA No. 61792, there is no need to address the defense of accord and satisfaction. Consideration of the defense of accord and satisfaction as it relates to ASBCA Nos. 61793-61798, 61800 is likewise outside our jurisdiction.

---

[33] We determined above that the Board does not have subject matter jurisdiction over ASBCA Nos. 61793-61798, 61800, and while we cannot rule on those appeals now, the findings in ASBCA No. 61792 and 61799 relating to the release language in the agreements will apply to any future attempt at refiling of those claims. A "final release followed by final payment to a contractor generally bars recovery of the contractor's claims under the contract except for those excepted on the release." *Tri- County Contractors, Inc.*, ASBCA No. 58167, 13 BCA ¶ 35,310 at 173,346 (citing *Mingus Constructors*, 812 F.2d at 1394). "[I]t is a fundamental rule that a contractor who executes a general release is thereafter barred from claiming additional compensation under the contract on the basis of events that occurred prior to the execution of the release unless there are special circumstances present which vitiate the release." *Shams Walizada Constr. Co.*, ASBCA No. 61411, 18-1 BCA ¶ 37,008 at 180,241 (citing *Mary Lou Fashions, Inc.*, ASBCA No. 29318, 86-3 BCA ¶ 19,161 at 96,845).

CONCLUSION

Accordingly, we grant the government's motion to dismiss for lack of jurisdiction for ASBCA Nos. 61793, 61794, 61795, 61796, 61797, 61798, and 61800. We grant the government's motion for summary judgment in ASBCA Nos. 61792 and 61799 on the defense of release, and deny all else. ASBCA Nos. 61792 and 61799 are denied.

Dated: June 7, 2021

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61792, 61793, 61794, 61795, 61796, 61797, 61798, 61799, 61800, Appeals of JAAAT Technical Services, LLC, rendered in conformance with the Board's Charter.

Dated: June 17, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals